## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., a private limited company organized in the country of Singapore,<br><br>    Plaintiff,<br><br>v.<br><br>WHALECO, INC., a Delaware corporation,<br><br>    Defendant. | CASE NO.<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Roadget Business Pte. Ltd. ("Roadget" or "Plaintiff"), by and through its attorneys, brings this action to enjoin and seek other relief for the unlawful and infringing conduct of Defendant WhaleCo, Inc. ("Defendant" or "Temu"). Temu has willfully and flagrantly infringed Roadget's exclusive and valuable trademark rights and copyright rights and has engaged in unfair competition and false and deceptive business practices, including by impersonating Roadget's well-known SHEIN brand on social media, trading off of the well-known SHEIN trademarks, and using copyrighted images owned by Roadget as part of Temu's product listings. Temu has used the SHEIN trademarks, and the goodwill associated with that brand, to unlawfully promote Temu's products and services, including its new online retail store, and to trick consumers into downloading Temu's mobile application. Roadget seeks injunctive relief and all other remedies available under the laws of the United States and the State of Illinois. Based on its knowledge of Temu's actions and upon information and belief as to other conduct, Roadget alleges as follows:

## NATURE OF ACTION

1.    This is an action for (i) trademark counterfeiting in violation of the Trademark Act of 1946, 15 U.S.C. § 1114; (ii) trademark infringement in violation of the Trademark Act of 1946, 15 U.S.C. § 1114; (iii) the use of false designations of origin and unfair competition in violation

1

of the Trademark Act of 1946, 15 U.S.C. § 1125(a); (iv) the use of false and misleading descriptions and representations in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a); (v) contributory false advertising in violation of Trademark Act of 1946, 15. U.S.C. § 1125(a); (vi) copyright infringement under 17 U.S.C. § 101 *et seq*.; (vii) trademark dilution in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(c); (viii) trademark dilution under the Illinois Trademark Registration and Protection Act, formerly the Anti-Dilution Act, 765 ILCS 1036/65; (ix) deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.; (x) deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.; (xi) unfair competition in violation of Illinois common law; (xii) product disparagement and trade libel under Illinois common law; and (xiii) unjust enrichment.

## THE PARTIES

2.      Plaintiff Roadget Business Pte. Ltd. is a private limited company organized under the laws of the country of Singapore. Roadget is the owner of the famous SHEIN trademarks in the United States (and worldwide) and owns the website located at https://us.shein.com and the corresponding mobile application.

3.      Defendant WhaleCo, Inc. is a Delaware corporation with a principal place of business at 31 St. James Avenue, Boston, Massachusetts 02116. On information and belief, WhaleCo, Inc. operates an online retail store under the TEMU brand at https://www.temu.com.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1337, and 1338(a) and (b), because the claims arise out of federal questions concerning trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, federal unfair competition pursuant to 15 U.S.C. § 1125(a), copyright infringement pursuant to 17 U.S.C. § 101, and dilution pursuant to 15 U.S.C. § 1125(c).

5.      This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to § 28 U.S.C. § 1367(a), because the state law claims are so related

to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6.     This Court has personal jurisdiction over Defendant because Defendant offers for sale and sells its products to consumers in Illinois, through its website at https://www.temu.com and its corresponding mobile application. Specifically, Defendant purposely directs its business activities toward Illinois residents, through its website and corresponding mobile application, and various unlawful social media accounts and actions, as described below, and Defendant derives substantial revenue from its services in Illinois. Additionally, Roadget's claims for trademark infringement, unfair competition, dilution, deceptive trade practices, copyright infringement, and product disparagement arise from acts conducted and harm sustained in the State of Illinois. Defendant conducts continuous and systematic business within the State of Illinois and played an integral part in the infringement of Roadget's trademark rights using fraudulent Twitter accounts directed at residents in this judicial district. Defendant is committing acts that have wrongfully caused Roadget and its affiliate harm in the State of Illinois.

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claims occurred in this district. Particularly, Defendant is targeting consumers, and specifically the customers of Roadget's affiliate, nationwide—including those customers located within this district.

## FACTUAL BACKGROUND

### A.     The SHEIN Brand and Roadget's Valuable Intellectual Property Rights

8.     Roadget's SHEIN trademarks are used to sell a wide variety of products around the world, including in the United States, where the SHEIN-branded goods and services are primarily sold by Roadget's affiliate and licensee, Shein Distribution Corporation ("SDC") through the website at https://us.shein.com (the "SHEIN Website") and through the corresponding mobile application (the "SHEIN Mobile App"). The SHEIN trademarks are now associated with one of the most popular online fashion and lifestyle retailers in the world. In the U.S., SDC offers a wide range of products under the SHEIN trademarks and domain name, including apparel for women,

men, and children, as well as everything from home goods to pet supplies. The immense and diverse products offered in connection with the SHEIN trademarks allow consumers to stay trendy without spending a fortune on apparel and essential goods.

9.      A significant contributor to the success of the SHEIN brand has been online marketing strategies on social media platforms and fashion blogs, appealing to consumers who prefer to shop online. Specifically, the SHEIN brand has partnered with thousands of influencers, celebrities, fashion bloggers and contestants on reality shows, and has started viral trends.

10.     The popularity of the SHEIN brand among consumers has skyrocketed in the last several years. In May 2021, the SHEIN Mobile App became the most downloaded shopping mobile application in the U.S. on both iOS and Android, overtaking even downloads of Amazon's mobile application. In May 2022, that same mobile application became the most downloaded mobile application in the U.S. in *any category*, outperforming both TikTok and Instagram. The SHEIN brand also has a significant presence on social media, with over 26 million followers on Instagram, 5.5 million followers on TikTok and over 500,000 followers on Twitter (collectively, the "Genuine SHEIN Social Media Accounts"). A screen capture of the official Twitter account for the SHEIN brand, @SHEIN_Official is shown below and attached as Exhibit 1 (the "Genuine SHEIN Twitter Account"):



11.     SDC offers a wide variety of SHEIN-branded goods for sale in the United States on the SHEIN Website and the SHEIN Mobile App. The SHEIN brand is extraordinarily popular, particularly with young adult consumers. A screen capture of the SHEIN Website is attached as Exhibit 2.

12.     Through the substantial growth of the SHEIN brand over the last several years, that brand has developed global name recognition and goodwill. A significant component of the success of the business associated with the SHEIN brand has been the investment in building brand recognition, including through the methods of reaching consumers outlined above, as well as through registration of various intellectual property rights.

13.     For example, Roadget owns the following "SHEIN" trademarks registered on the U.S. Principal Register:

| Mark/Name/AN/RN | Full Goods/Services |
|---|---|
| SHEIN (Stylized) **SHEIN** RN: 6224013 SN: 88776666 Registered 12/15/2020 | (Int'l Class: 14) Jewelry; costume jewelry; necklaces; earrings; bracelets; rings; jewelry brooches; watches; hat jewelry; jewelry pins for use on hats; pins being jewelry; precious metals, unwrought or semi-wrought; jewelry accessories, namely, jewelry clips for adapting pierced earrings to clip-on earrings; jewelry findings; jewelry boxes, jewelry charms, alarm clocks, split rings of precious metal for keys |
| SHEIN (Stylized) **SHEIN** RN: 6649062 SN: 87857183 Registered 2/22/2022 | (Int'l Class: 25) Scarves; dresses; kimonos; shirts; tank tops; camisoles; blouses; t-shirts; knitwear, namely, knit tops, knit bottoms; sweaters; jumpers; coats; vests; parkas; capes; sweatshirts; lingerie; negligees; swimwear; jackets; blazers; leggings; jumpsuits; pants; trousers, shorts; shoes; shoes, namely, flats and pumps; heels; sandals; boots; shawls; socks; bikinis; night gowns; pajamas; bathrobes; gloves; bras; bustiers; rainwear; aprons; belts for clothing; hats |
| SHEIN (Stylized) **SHEIN** RN: 5689042 SN: 87857147 Registered 3/5/2019 | (Int'l Class: 09) Cell phone cases; eyeglasses; digital photo frames; bathroom scales; sunglasses; downloadable computer software in the nature of applications for purchases of clothes and fashion accessories; spectacle cases; spectacle frames; remote control apparatus for the control of televisions which the remote is designed to control; counters, namely, thread counters |

| Mark/Name/AN/RN | Full Goods/Services |
|---|---|
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5944948<br>SN: 87857222<br><br>Registered 12/24/2019 | (Int'l Class: 16)<br>Posters; printed matter, namely, photographs in the field of fashion; paper; steel pens; drawing materials, namely, brushes; ink, namely, ink for pens, stamping ink; stationery; gummed tape for stationery or household use; stamps in the nature of stamp pads and ink stamps; seals; coasters of paper |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 6649063<br>SN: 87857188<br><br>Registered 2/22/2022 | (Int'l Class: 35)<br>Advertising agency services; advisory in business management; import and export agency services; providing online marketplace for buyers of products and services; organization of exhibitions for commercial or advertising purposes; employment agency services; relocation services for companies; compiling indexes of information on the internet for commercial or advertising purposes; business auditing; sponsorship services, namely, sponsorship search, financial sponsorship search |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5893348<br>SN: 87857247<br><br>Registered 10/22/2019 | (Int'l Class: 21)<br>Battery-powered applicators for applying cosmetics to eyelashes; daily used enamel plastic wares, namely, basins in the nature of receptacles, bowls, plates, pots, cups; daily use glassware, namely, cups, plates, pots, butter crocks; daily use chinaware, namely, basins in the nature of receptacles, bowls, plates, pots, coffee services in the nature of tableware, butter crocks, candle jars, trash cans; basting brushes; beverage glassware for serving liqueur; boxes for dispensing paper towels for household use; toothbrushes; toothpicks; combs |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5893349<br>SN: 87857249<br><br>Registered 10/22/2019 | (Int'l Class: 24)<br>Bed liners in the nature of mattress covers; table liners in the nature of textile tablecloths; bed sheets; towels of textile; silk fabrics for printing patterns; travelling rugs; lap robes; pillowcases; fitted furniture covers of textile; linen cloth; canvas for tapestry or embroidery |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5893350<br>SN: 87857258<br><br>Registered 10/22/2019 | (Int'l Class: 26)<br>Hair clips; hair accessories, namely, jaw clips; hair pins; hat pins; belt buckles; bobby pins; hat ornaments not of precious metal, namely, hat trimmings |

| Mark/Name/AN/RN | Full Goods/Services |
|---|---|
| SHEIN (Stylized)<br><br>**SHEIN**<br><br>RN: 5840545<br>SN: 87857225<br><br>Registered 8/20/2019 | (Int'l Class: 18)<br>Bags, namely, suit bags; pocket wallets; rucksacks; attaché cases; handbags; travelling trunks; key cases; bags for sports; umbrellas; imitation leather; wallets; purses; knapsacks; suitcases; beach bags; all-purpose sports bags; book bags; travel cases; shopping bags, namely, leather shopping bag, textile shopping bag; travel kits, namely, travel cases sold empty; string bags for shopping |

Copies of these trademark registrations are attached as Exhibit 3 (the "SHEIN Marks").

14.     The trademark registrations for the SHEIN Marks are valid and subsisting.

15.     The SHEIN Marks serve as unique source identifiers for the online retail store services and products offered and sold through the SHEIN Website and the SHEIN Mobile App.

16.     The SHEIN Marks have become well known by Illinois and U.S. consumers through extensive investments in advertising. As a result of the success and popularity of the SHEIN brand and through extensive promotional efforts, the SHEIN Marks are famous, distinctive, and widely recognized by the general consuming public of both the State of Illinois (or of a geographic area within this State), and the United States.

17.     To further protect the investment in the SHEIN brand, Roadget also owns a number of copyrights, including the following copyrights registered with the U.S. Copyright Office for promotional images on the SHEIN Website and/or the SHEIN Mobile App:

| Copyright Reg. Number | Deposit Copy of Work |
|---|---|
| VA0002320444 |  |

| Copyright Reg. Number | Deposit Copy of Work |
|---|---|
| VA0002320442 |  |
| VA0002320439 |  |
| VA0002325368 |  |

Copies of copyright registration certificates for the above registrations are attached as Exhibit 4.

18.     In addition to the many images that have been registered with the U.S. Copyright Office, Roadget owns several copyright applications for other images that are, or have been, displayed on the SHEIN Website and/or the SHEIN Mobile App that are pending with the U.S. Copyright Office, including the following:

| Copyright Appl. Number | Deposit Copy of Work | |
|---|---|---|
| Pending case number 1-11856789081 |  | |
| **Copyright Appl. Number** | **Deposit Copy of Work** | |
| Pending case number 1-11857010711 |  | |
| Pending case number 1-11857095562 |  | |

19.     The copyright registrations referenced in Paragraph 17 and the applications referenced in Paragraph 18 are collectively referred to herein as the "SHEIN Copyrights."

20.     The copyright registrations for the SHEIN Copyrights are valid and enforceable.

9

21.     The images associated with the SHEIN Copyrights are included as part of product listings on the SHEIN Website and/or the SHEIN Mobile App.

**B.      Defendant and Its Wrongful Conduct**

22.     Defendant Temu launched its U.S. online shopping website called TEMU on September 1, 2022, which is available at https://www.temu.com and through a mobile application. Like the SHEIN Website and the SHEIN Mobile App, the TEMU-brand website and app offer a wide variety of products for sale, including apparel and footwear, beauty and health, home and garden, electronics, office products, and pet supplies.

23.     On information and belief, Temu entered the U.S. market with the specific intent to directly compete with the SHEIN brand. In fact, as soon as Temu launched in the U.S., multiple independent publications compared Temu to SHEIN and one even called Temu "a Shein imitator," as shown below:



(Exhibit 5 RetailWire, https://retailwire.com/discussion/will-temu-have-shein-like-success-as-it-goes-online-in-the-u-s/.)



(Exhibit 6, PingWest, https://en.pingwest.com/a/10723.)

DIRECT-TO-CONSUMER

## Shein's New Rival, Explained

Pinduoduo is a giant in China but relatively unknown in America. It's looking to change that with a new app, Temu, that sells ultra-cheap clothing, with thousands of new items added daily. Sound familiar?

(Exhibit 7 Business of Fashion, https://www.businessoffashion.com/articles/direct-to-consumer/sheins-new-rival-explained/.)

24. The characterization of Temu as "a Shein imitator" has turned out to be prescient, with Temu actively and deliberately imitating and *pretending to be* the SHEIN brand using imposter social media accounts and posts to divert consumers and business away from purchasing SHEIN-branded goods in favor of purchasing goods from Temu.

25. Before Temu launched in the U.S., Temu was aware of the well-known SHEIN brand, and the extensive investment in that rapidly growing brand. On information and belief, Temu has actual knowledge of the SHEIN Marks and SHEIN Copyrights, and has visited the SHEIN Website, the SHEIN Mobile App, the Genuine SHEIN Twitter Account and the Genuine SHEIN Social Media Accounts on multiple occasions, while developing, planning to launch, and since launching its online retail store in the U.S.

26. On information and belief, Temu considers the SHEIN brand to be one of the biggest competitors – if not *the* biggest competitor – for the newly-introduced TEMU brand. On information and belief, Temu's chief marketing strategies include persuading customers of SDC to purchase products from Temu instead of purchasing SHEIN-branded products, and attempting to persuade loyal customers of the SHEIN brand to switch their loyalty to Temu—and Temu has decided to carry out these marketing strategies by actively deceiving consumers and by pretending to be the SHEIN brand through online platforms such as Twitter. Competing with the SHEIN brand is central to Temu's marketing strategies and its infringement of the SHEIN Marks and SHEIN Copyrights is a willful, tactical, and strategic choice, deliberately made by Temu in an effort to divert consumers of SHEIN-branded products to Temu.

27.     Instead of Temu fairly competing by, for example, offering comparable products at a lower price or by offering a more diverse array of products for selection and purchase by consumers, Temu has deliberately been engaging in unfair competition by exploiting the SHEIN brand and pretending to be the SHEIN brand online to promote Temu's own brand, products, and services. Temu's unlawful activity includes trademark infringement, counterfeiting, copyright infringement, false advertising, and unlawful business practices, with the intent to divert customers for SHEIN-branded goods and deceive them into downloading Temu's app or buying from Temu instead.

### i.     Temu's Fraudulent Twitter Accounts

28.     Temu has embarked on a deliberate scheme of impersonating, or aiding and abetting the impersonation of, the SHEIN brand.

29.     To accomplish this goal, Temu and/or third parties acting at Temu's direction and on its behalf have created and operated or controlled, directly or indirectly, false, fake, and fraudulent Twitter accounts that incorporate the SHEIN Marks and that have pretended to be the SHEIN brand in the eyes of consumers, such as @SHEIN_DC, @SHEIN_USA_, and @SHEIN_NYC (the "Imposter Twitter Accounts"), as shown below, and attached as Exhibit 8:







30.     Temu has used the Imposter Twitter Accounts to falsely suggest that it is associated with the SHEIN brand or that it *is* "SHEIN" (i.e., the official Twitter outlet/handle for the SHEIN brand), by using spurious marks that are identical to or substantially indistinguishable from the SHEIN Marks (the "Counterfeit SHEIN Marks").

31.     Temu has been attempting to impersonate the SHEIN brand by using the Counterfeit SHEIN Marks with the Imposter Twitter Accounts, including through the use of the Counterfeit SHEIN Marks in the handles for the Imposter Twitter Accounts and through providing links in the profile sections of the Imposter Twitter Accounts to authentic domain names owned by Roadget, such as <shein.com>, and through the use of the same profile icons and profile photos in the Imposter Twitter Accounts as the Genuine SHEIN Twitter Account.

32.     Temu has even gone so far as to intentionally and deliberately create the false impression that the Imposter Twitter Accounts have as many followers as the Genuine SHEIN Twitter Account in its efforts to impersonate the SHEIN brand, by displaying in the profile section of the Imposter Twitter Accounts the number of followers of the Genuine SHEIN Twitter Account using the same formatting that Twitter uses to display the real statistic for each account – even

though the Imposter Twitter Accounts only have a few followers. An example of this is highlighted below in a side-by-side comparison chart:



33.     Temu has also attempted to impersonate the SHEIN brand and trick consumers into believing Temu is associated with that brand by retweeting authentic posts from the Genuine SHEIN Twitter Account and using authentic hashtags associated with the SHEIN brand, such as #SHEIN, #SHEINforall, and #SHEINSS22:



34.    Temu created and has used the Imposter Twitter Accounts and the Counterfeit SHEIN Marks to unlawfully promote its own fledgling e-commerce website and mobile application and to trick consumers into downloading the Temu mobile application.

35.    Temu has lured consumers, including customers or potential customers of SDC, into viewing and interacting with the Imposter Twitter Accounts through the use of the Counterfeit SHEIN Marks. Temu then took advantage of this attention with posts on the Imposter Twitter Accounts that are intended to divert consumers from buying SHEIN-branded products to using Temu instead for their purchases (the "Deceptive Twitter Posts"). In some cases, the Deceptive Twitter Posts have told consumers to join Temu while prominently using and displaying the Counterfeit SHEIN Marks, and while "winking" at those consumers about its appreciation for "supporting the new twitter [account] of SHEIN":



36.    Other Deceptive Twitter Posts have deceived consumers into downloading the Temu application by embedding innocuous links in them that only display the Counterfeit SHEIN Marks. Those posts, which do not have any Temu branding, direct consumers to "Download APP from link":

Those links, however, did not direct consumers to download the SHEIN Mobile App, but instead directed them to *Temu's* website to download *the Temu app*, as shown in the screen capture below:



37.     The Counterfeit SHEIN Marks used by Temu on the Imposter Twitter Accounts are identical to and confusingly similar to the SHEIN Marks in appearance, sound, meaning, and commercial impression.

38.     The Counterfeit SHEIN Marks, as used by Temu on the Imposter Twitter Accounts, falsely suggest that Temu is affiliated with, or is, the SHEIN brand.

39.     Temu created and has used the Imposter Twitter Accounts to trade off the recognition and goodwill of the SHEIN Marks in order to capture the attention of actual and potential customers of SHEIN-branded goods, and to divert those people into becoming customers of Temu.

40.     Consumers who encountered Temu's Imposter Twitter Accounts would be likely to falsely believe that those accounts were operated by Roadget or an authorized affiliate of Roadget. As a result, such consumers may believe that Temu's website and mobile application, which appear to have been advertised and promoted by "SHEIN" on the Imposter Twitter Accounts, is sponsored by, or associated with, the SHEIN brand.

41.     On information and belief, Temu has earned significant profits from this wrongful conduct, with ongoing ripple effects that continue to this day. Temu's U.S.-based website and

mobile application did not even exist a mere six months ago – and the TEMU brand was completely unknown to U.S. consumers at that time. Temu deliberately and strategically launched its website and mobile application in the U.S. while riding off the coattails of the SHEIN brand. Temu did this, for example, by, directly or indirectly, impersonating the SHEIN brand through the Imposter Twitter Accounts, and by using those accounts to direct consumers to buy products on Temu.com and/or to download the Temu mobile application, all the while suggesting to consumers that "SHEIN" (i.e., the Imposter Twitter Accounts, whom consumers believe to be associated with the SHEIN brand) is actively promoting the newly-launched Temu website and mobile application. On information and belief, this unlawful conduct caused U.S. consumers who would otherwise never have heard of Temu to purchase goods through Temu's website or mobile application, instead of purchasing SHEIN-branded goods through the SHEIN Website or the SHEIN Mobile App. Moreover, on information and belief, at least some of those diverted consumers (who only heard of Temu by virtue of its wrongful and infringing conduct) later spread the word to other U.S. consumers about their purchases through Temu. On information and belief, Temu would not be as successful or recognized today if Temu's fraudulent misuse of the SHEIN brand was not foundational to Temu's initial launch in the U.S.

42.     Temu's infringement of the SHEIN Marks has been knowing and willful. Temu was on constructive notice of the SHEIN Marks by virtue of their federal registrations. Further, because Temu considers the SHEIN brand to be its biggest competition, Temu had actual knowledge of Roadget's trademark rights in the SHEIN Marks, regardless of their status of registration. In fact, Temu has actively tried to hire at least some employees of Roadget and/or its affiliate(s).

43.     Temu has deliberately used counterfeit imitations of the SHEIN Marks on its Imposter Twitter Accounts. Temu knows it never asked Roadget for permission to use any of the SHEIN Marks. Temu also knows that Roadget would never agree to allow a company like Temu, which directly competes with the SHEIN brand, to use Roadget's SHEIN Marks to pretend to be "SHEIN" on social media. These days, social media is where businesses and brands can most

efficiently reach their consumers. Temu knows this, which is why Temu deliberately created the Imposter Twitter Accounts – to confuse and divert consumers of SHEIN-branded goods away from the SHEIN brand, to instead purchase from Temu.

44.     On November 1, 2022, Roadget sent Temu a letter demanding that it immediately and permanently cease and desist from any further infringement of Roadget's intellectual property rights. A copy of that letter is attached as Exhibit 9. Temu ignored that letter.

45.     On November 18, 2022, Roadget resent the demand letter to Temu and began contacting Temu's trademark counsel via email and telephone. Despite repeated follow-ups with Temu's counsel, Temu and its counsel have continued to ignore Roadget.

### ii.     Temu's Infringement of the SHEIN Copyrights

46.     Without the permission or authorization of Roadget, Temu has also used and continues to use copyrighted images owned by Roadget in connection with the sale and distribution of goods on Temu's website.

47.     Specifically, without the permission or authorization of Roadget, and with access and knowledge of the material covered by U.S. Copyright No. VA0002320444, Temu has directly reproduced, distributed, and displayed the copyrighted image with the sale and distribution of a "Girls Casual Patchwork Striped Embroidered Pullover T-Shirt." A comparison of the copyrighted material and Temu's product listing is below and attached as Exhibit 10:

| Copyrighted Material | Temu's Product Listing |
|---|---|
|  | |

48.     Without the permission or authorization of Roadget, and with access and knowledge of the material covered by U.S. Copyright No. VA0002320442, Temu has directly reproduced, distributed, and displayed the copyrighted image with the sale and distribution of a "Girls Khaki Belt Tunic Trench Coat." A comparison of the copyrighted material and Temu's product listing is below and attached as Exhibit 10:

| Copyrighted Material | Temu's Product Listing |
|---|---|
|  | |

49.     Without the permission or authorization of Roadget, and with access and knowledge of the material covered by U.S. Copyright No. VA0002325368, Temu has directly reproduced, distributed, and displayed the copyrighted image with the sale and distribution of a "2pc Boys Autumn Long Sleeve Set Kids Fashion Sports Casual Set." A comparison of the copyrighted material and Temu's product listing is below and attached as Exhibit 10:

| Copyrighted Material | Temu's Product Listing |
|---|---|
|  | |

50.     Without the permission or authorization of Roadget, and with access and knowledge of the material covered by U.S. Copyright No. VA0002320439, Temu has directly reproduced, distributed, and displayed the copyrighted image with the sale and distribution of "Girls' Casual Skinny Buttoned Trousers Flared." A comparison of the copyrighted material and Temu's product listing is below and attached as Exhibit 10:



51.     Without the permission or authorization of Roadget, and with access and knowledge of images on the SHEIN Website and/or the SHEIN Mobile App, Temu has also reproduced, distributed, and displayed works that are subject to currently pending copyright applications at the U.S. Copyright Office, namely pending Case Nos. 1-11856789081, 1-11857010711, and 1-11857095562. Roadget intends to amend the Complaint once the Copyright Office acts on these copyright applications. A comparison of that material and Temu's product listings is below and attached as Exhibit 10:



52.     Temu is using copyrighted images that are owned by Roadget, without a license from Roadget.

53.     Temu's infringement has at all times been knowing and willful. As a direct competitor, Temu has knowledge of the SHEIN Website and the SHEIN Mobile App, and it actively monitors each of same to sell competing (and sometimes identical) products. Moreover, Roadget sent Temu a cease-and-desist letter addressing infringement of the SHEIN Copyrights. (*See* Exhibit 9.) Temu ignored that letter and continued to infringe the SHEIN Copyrights.

54.     On or around November 8, 2022, SDC, as Roadget's affiliate and licensee, sent a DMCA takedown notice pursuant to 17 U.S.C. § 512(c) to the registered DMCA agent for Temu. (*See* Exhibit 11.) As of this filing, several of the webpages containing infringing images listed in that DMCA takedown notice are still available on Temu's website. Thus, at least in part (if not entirely), Temu ignored that notice and continued to infringe the SHEIN Copyrights.

55.     On information and belief, Temu intends to continue using the infringing material from the SHEIN Copyrights without the authorization of Roadget.

56.     Temu is intentionally using the infringing images to profit off the original, creative works over which Roadget has exclusive rights.

### iii.     Temu's Unlawful Influencer Pitch

57.     On information and belief, Temu has also been inducing influencers to make false and deceptive statements in connection with the promotion of Temu's goods and services. In particular, Temu is providing influencers with guidelines that require them to make the following statements (the "Influencer Statements"):

> "Shein is not the only cheap option for clothing! Check Temu.com out, cheaper and way better quality"; and

> "Looking for clothes better than Shein but cheaper than revolve? Check Temu.com out."

A copy of the Influencer Guidelines is attached as Exhibit 12.

58.     The Influencer Statements are false and misleading because the clothes sold on Temu.com are not less expensive and not of higher quality than those sold on the SHEIN Website and/or through the SHEIN Mobile App.

59.     On information and belief, influencers have posted these statements on social media at the direction of Temu.

60.     On information and belief, Roadget has been harmed by the Influencer Statements. By disseminating the Influencer Statements to the influencers, Temu committed false advertising by telling the influencers that Temu products are cheaper and higher quality than SHEIN-branded products. Roadget was also harmed by the Influencer Statements because Temu induced influencers to further disseminate the Influencer Statements.

## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING
### (15 U.S.C. § 1114)

61.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

62.     Plaintiff owns the SHEIN Marks.

63.     The SHEIN Marks are fanciful and arbitrary and are associated in the minds of the public and consumers with Plaintiff.

64.     Defendant is using marks that are identical to or indistinguishable from genuine SHEIN Marks in association with the promotion of its online retail store services, without Plaintiff's approval, authorization, or consent.

65.     Defendant's use of the Counterfeit SHEIN Marks with the Imposter Twitter Accounts has been likely to cause confusion in the minds of the public, leading the public to falsely believe that Defendant's online retail store services originate from Plaintiff and/or that Plaintiff has approved, sponsored, or otherwise associated itself with the goods and services offered for sale and/or distributed by Defendant.

66.     Defendant's use of the Counterfeit SHEIN Marks without Plaintiff's authorization or consent constitutes a willful and intentional infringement of the SHEIN Marks.

67.     Defendant's conduct is intended to exploit the strong reputation and goodwill that is exclusively associated with the SHEIN Marks, to take an unfair competitive advantage of the SHEIN Marks' goodwill without any expenditure of Defendant's own resources.

68.     Plaintiff has no control over the quality of the goods or services marketed and/or sold by Defendant. Because of the likelihood of confusion as to the source of Defendant's goods and/or services, or as to whether Defendant's goods and/or services are sponsored or endorsed by, or affiliated with, Plaintiff, in view of Defendant's blatant use of the SHEIN Marks to lure in consumers and hype up Defendant using the Imposter Twitter Accounts, Plaintiff's valuable goodwill in the SHEIN Marks is at the mercy of, and being irreparably harmed by, Defendant.

69.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

70.     Plaintiff has no adequate remedy at law.

71.     As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

**COUNT II**
**FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1114)**

72.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

73.     Defendant is using marks that are identical to or indistinguishable from genuine SHEIN Marks in association with the promotion of its online retail store services, without Plaintiff's approval, authorization, or consent.

74.     Defendant's use of the Counterfeit SHEIN Marks with the Imposter Twitter Accounts has been likely to cause confusion in the minds of the public, leading the public to falsely believe that Defendant's online retail store services originate from Plaintiff and/or that Plaintiff

25

has approved, sponsored, or otherwise associated itself with the goods and services offered for sale and/or distributed by Defendant.

75.     Defendant's use of the Counterfeit SHEIN Marks without Plaintiff's authorization or consent constitutes a willful and intentional infringement of the SHEIN Marks in violation of 15 U.S.C. § 1114.

76.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

77.     Plaintiff has no adequate remedy at law.

78.     As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

### COUNT III
### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATIONS OF ORIGIN
### (15 U.S.C. § 1125(a)(1)(A))

79.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

80.      Defendant's use of the Counterfeit SHEIN Marks constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that Defendant's online retail services, as well as variety of goods for sale, are associated with or sponsored by Plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81.     Upon information and belief, Defendant intentionally adopted and used the Counterfeit SHEIN Marks to create consumer confusion and traffic off the reputation and goodwill associated with the SHEIN Marks.

82.     Plaintiff has no control over the quality of the goods or services marketed and/or sold by Defendant. Because of the likelihood of confusion as to the source of Defendant's goods and/or services, or as to whether Defendant's goods and/or services are sponsored or endorsed by, or affiliated with, Plaintiff, in view of Defendant's blatant use of the SHEIN Marks to lure in

consumers and hype up Defendant using the Imposter Twitter Accounts, the valuable goodwill in the SHEIN Marks is at the mercy of, and being irreparably harmed by, Defendant.

83.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff. Among other things, Defendant's actions have caused and are continuing to cause monetary harm (through lost sales) as well as harm to Plaintiff's brands, goodwill, and reputation.

84.     Plaintiff has no adequate remedy at law.

85.     As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

**COUNT IV**
**FEDERAL FALSE ADVERTISING**
**(15 U.S.C. § 1125(a)(1)(B))**

86.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

87.     Upon information and belief, Defendant intentionally disseminated the Influencer Statements to an audience of influencers and others, thereby falsely stating to that audience that the clothes sold on Temu.com are less expensive and of higher quality than those sold on the SHEIN Website and/or through the SHEIN Mobile App. The Influencer Statements were false or misleading, and had the capacity to deceive, and that deception had a material effect on the purchasing decision of the audience of influencers and others. The Influencer Statements also have a material effect on interstate commerce by persuading consumers (including the influencers) to purchase from Defendant instead of SHEIN-branded products. As a result of Temu disseminating the Influencer Statements to at least the influencers, Plaintiff has been injured, or is likely to be injured by the Influencer Statements.

88.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff. Among other things,

Defendant's actions have caused and are continuing to cause monetary harm (through lost sales) as well as harm to Plaintiff's brands, goodwill, and reputation.

89.     Plaintiff has no adequate remedy at law.

90.     As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT V
## CONTRIBUTORY FALSE ADVERTISING
## (15 U.S.C. § 1125(a))

91.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

92.     On information and belief, Defendant disseminated the Influencer Statements to third-party influencers and others, who are believed to have published the Influencer Statements. The Influencer Statements were false or misleading to consumers, and had the capacity to deceive consumers, where that deception had a material effect on the consumer's purchasing decision. The Influencer Statements have a material effect on interstate commerce by persuading consumers to purchase from Defendant instead of SHEIN-branded products. As a result of the Influencer Statements, Plaintiff has been injured, or is likely to be injured by the Influencer Statements.

93.     Defendant directly engaged with the third-party influencer's false advertising by drafting the false and misleading statements and, on information and belief, contracting with third party influencers to publish and disseminate those statements to consumers.

94.     Defendant contributed to the third-party influencer's conduct by knowingly inducing the third-party influencers to publish false and misleading representations of fact, and by materially participating in that conduct by drafting the false and misleading representations of fact, and by encouraging third-party influencers to disseminate the Influencer Statements via social media posts.

95.     Through its relationship with the third-party influencers, Defendant had direct control over the false and misleading Influencer Statements posted by the influencers.

96.     Defendant's inducement of third parties to post false and misleading statements has injured Plaintiff.

97.     Defendant's aforesaid acts have caused, and unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff. Among other things, Defendant's actions have caused and are continuing to cause monetary harm (through lost sales) as well as harm to Plaintiff's brands, goodwill, and reputation.

98.     Plaintiff has no adequate remedy at law.

99.     As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

**COUNT VI**
**COPYRIGHT INFRINGEMENT**
**(17 U.S.C. § 101 *et seq.*)**

100.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

101.     Plaintiff is the exclusive owner of the copyright registrations for images of Plaintiff's products. (Exhibit 4.) Those copyright registrations are valid and enforceable.

102.     Defendant had access to the SHEIN Copyrights by virtue of the SHEIN Website and/or SHEIN Mobile App, which are publicly available.

103.     Defendant directly copied and/or materially derived the SHEIN Copyrights for its infringing products offered for sale by Defendant.

104.     In copying the SHEIN Copyrights, Defendant has violated the copyright laws of the United States, under 17 U.S.C. § 101 et seq.

105.     By reason and as a direct result of these acts of copyright infringement by Defendant, Plaintiff has suffered great and irreparable damage, the full extent of which is currently unknown, while Defendant position itself for unjust enrichment at Plaintiff's substantial expense. Plaintiff is suffering, and will continue to suffer, great and irreparable damage unless and until Defendant is enjoined by this Court.

## COUNT VII
## FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

106.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

107.     Through the longstanding and widespread use of the SHEIN Marks in the United States, the SHEIN Marks have become impressed upon the minds of the relevant trade and consuming public as identifying the SHEIN brand, owned by Roadget. As a result, the SHEIN Marks are famous, distinctive, and widely recognized by the general consuming public in the United States, and the SHEIN Marks were famous and distinctive prior to Defendant's acts set forth above. Defendant's acts have diluted the distinctive quality of the famous SHEIN Marks, in violation of 15 U.S.C. § 1125(c).

108.     Defendant engaged in the aforesaid acts with the intent to trade off Plaintiff's reputation and/or to cause dilution of the famous SHEIN Marks.

109.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

110.     Plaintiff has no adequate remedy at law.

111.     As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT VIII
## TRADEMARK DILUTION UNDER THE
## ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT
### (765 ILCS 1036/65)

112.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

113.     Through the longstanding and widespread use of the SHEIN Marks in Illinois and in the United States, the SHEIN Marks have become impressed upon the minds of the relevant trade and consuming public as identifying the SHEIN brand, owned by Roadget. As a result, the SHEIN Marks are famous, distinctive, and widely recognized by the general consuming public in

the State of Illinois, and/or within a geographic area in the State of Illinois. The SHEIN Marks were famous and distinctive prior to Defendant's acts set forth above. Defendant's acts have diluted the distinctive quality of the famous SHEIN Marks, in violation of the Illinois Trademark Registration and Protection Act, formerly known colloquially as the "Anti-Dilution Act," 765 ILCS 1036/65.

114.     Defendant engaged in the aforesaid acts with the intent to trade off Plaintiff's reputation and/or to cause dilution of the famous SHEIN Marks.

115.     Defendant's aforesaid acts are greatly diminishing and blurring the source-identifying capability of the SHEIN Marks.

116.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

117.     Plaintiff has no adequate remedy at law.

118.     As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial, insofar as Defendant willfully intended to cause dilution of the SHEIN Marks, and Plaintiff is entitled to the remedies set forth in 765 ILCS 1036/65.

## COUNT IX
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510)

119.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

120.     On information and belief, Defendant's acts of creating and operating the Imposter Twitter Accounts, as described above, and using the Counterfeit SHEIN Marks with those accounts to trick consumers into buying products from Defendant or downloading Defendant's mobile application, were made with the intent to cause a likelihood of confusion, or of a misunderstanding as to the source, ownership and/or association with SHEIN-branded goods and services.

121.     On information and belief, Defendant has willfully engaged in the deceptive trade practices complained of herein.

122.     Defendant's acts constitute unlawful and unfair competition in violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510, in that such acts were and are unlawful, unfair, deceptive, and/or fraudulent business acts.

123.     On information and belief, Defendant has willfully engaged in the deceptive trade practices complained of herein.

124.     Defendant's aforesaid acts has caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

125.     Defendant's statutory violations and other wrongful acts have injured and threaten to continue to injure Plaintiff, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its intellectual property.

126.     Defendant has unjustly gained revenue and profits by virtue of its wrongful acts that it otherwise would not have obtained and to which it is not entitled.

127.     Plaintiff has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

128.     Plaintiff has no adequate remedy at law for the wrongful actions of Defendant.

## COUNT X
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
## (815 ILCS 505)

129.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

130.     On information and belief, Defendant's acts of creating and operating Imposter Twitter Accounts, as described herein, and using the Counterfeit SHEIN Marks with those accounts to trick consumers into buying products from Defendant or downloading Defendant's mobile application, have been made with the intent of causing a likelihood of confusion, or of a misunderstanding as to the source, ownership and/or association with SHEIN-branded goods and services.

131. Defendant knew, or in the exercise of reasonable care should have known, that the posts on its Imposter Twitter Accounts relating to its association with Plaintiff were false and/or misleading.

132. Defendant's acts constitute a violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510.

133. On information and belief, Defendant has willfully engaged in the deceptive trade practices complained of herein.

134. Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

135. Defendant's aforesaid acts have also caused injury to consumers.

136. Defendant's statutory violations and other wrongful acts have injured and threaten to continue to injure Plaintiff, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its intellectual property.

137. Defendant has unjustly gained revenue and profits by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled.

138. Plaintiff has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

139. Plaintiff has no adequate remedy at law for the wrongful actions of Defendant.

**COUNT XI**
**UNFAIR COMPETITION**
**(ILLINOIS COMMON LAW)**

140. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth herein.

141. Defendant has unfairly and intentionally used the SHEIN Marks to misrepresent its online retail services as originating from or having the sponsorship, affiliation, or approval of Plaintiff.

142. Defendant has engaged in such unfair and improper conduct to trade off of, and benefit from, the reputation and goodwill in the SHEIN Marks.

143. Defendant has derived, and continues to derive, unfair and illicit profits by trading off of the respective reputation and goodwill of the SHEIN Marks.

144. Through its use of the Counterfeit SHEIN Marks, Defendant has unfairly caused prospective and actual customers of the SHEIN Website and/or SHEIN Mobile App to be confused as to whether Defendant is associated with the SHEIN brand. As a result, Plaintiff has lost sales and profits. Defendant has also harmed the SHEIN brand, goodwill, and reputation.

145. The acts described above constitute unfair competition under Illinois common law.

146. Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

147. Plaintiff has no adequate remedy at law.

148. Defendant's conduct was oppressive, fraudulent, and malicious, entitling Plaintiff to an award of punitive damages.

## COUNT XII
## PRODUCT DISPARAGEMENT AND TRADE LIBEL
## (ILLINOIS COMMON LAW)

149. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth herein.

150. Defendant has contracted with and induced influencers to publish false and misleading representations of fact that have disparaged the goods and services offered by Plaintiff, as well as the overall reputation of Plaintiff's business.

151. The Influencer Statements made by Defendant to influencers and made, on information and belief, by influencers to their followers, as induced by Defendant, were directed at the quality of products sold under the SHEIN brand.

152. The acts described above, constitute product disparagement and trade libel under this State's common law.

153.     Defendant's aforesaid acts have caused actual and special damages.

<u>**COUNT XIII**</u>
**UNJUST ENRICHMENT**
**(ILLINOIS COMMON LAW)**

154.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth herein.

155.     Plaintiff has invested substantial time, resources, and money developing, growing, and promoting the SHEIN Marks and the respective goodwill and reputation associated therewith.

156.     Defendant has unfairly and intentionally used the SHEIN Marks to deceive consumers into downloading its mobile application, which directly competes with the SHEIN Website and SHEIN Mobile App.

157.     Defendant has engaged in such unfair and improper conduct in order to trade off of, and benefit from, Plaintiff's reputation and goodwill in the SHEIN Marks.

158.     Defendant has derived, and continue to derive, unfair and illicit profits by trading off of the respective reputation and goodwill of the SHEIN Marks.

159.     By trading off of and using Plaintiff's SHEIN Marks and the respective goodwill and reputation associated therewith to lure customers away from Plaintiff for Defendant's benefit, Defendant has been unjustly enriched.

160.     It would be unjust for Defendant to be permitted to retain the illicit profits they earned through the sales they made from the downloads of the Temu application that originated from consumers viewing posts created by the Imposter Twitter Accounts.

161.     The acts described above constitute unjust enrichment under Illinois common law.

162.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

163.     Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows:

1.    That Defendant and its respective agents, servants, employees, attorneys, successors, and assigns, and any and all persons acting in concert or participating with them, or any of their successors or assigns, be preliminarily and permanently enjoined and restrained from directly or indirectly:

    a.    using the SHEIN Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks, in connection with any manner likely to cause other to believes that Defendant's goods and services are connected with Plaintiff or the SHEIN brand;

    b.    making any false or misleading statements regarding Plaintiff or SHEIN-branded goods and services, or the relationship between Plaintiff or its affiliates and Defendant;

    c.    engaging in deceptive trade practices;

    d.    engaging in consumer fraud and deceptive trade practices;

    e.    infringement of the SHEIN Copyrights; and

    f.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (e).

2.    That this Court find that Defendant has unlawfully, and without authorization, infringed upon and counterfeited the SHEIN Marks, committed false designation of origin, engaged in unfair competition, false advertising, dilution and contributory false advertising, all in violation of the Lanham Act, 15 U.S.C. § 1125, *et seq.*

3.    That this Court find that Defendant has unlawfully, and without authorization, infringed the material in U.S. Copyright Registration Nos., VA0002320444, VA0002320442, VA0002320439, and VA0002325368, together with additional copyrighted material whose registrations are pending.

4. That this Court find that Defendant engaged in unfair competition in violation of the common law of the State of Illinois.

5. That this Court find that Defendant engaged in trademark dilution under the Illinois Trademark Registration and Protection Act, formerly the Anti-Dilution Act, 765 ILCS 1036/65.

6. That this Court find that Defendant is in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

7. That this Court find that Defendant is in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.

8. That this Court find that Defendant engaged in product disparagement and trade libel in violation of the common law of the State of Illinois.

9. That this Court find that Defendant has been unjustly enriched.

10. That Defendant be required to account to Plaintiff for Defendant's profits from the sale of products or downloads of the Temu application and subsequent sales of products originating from the Imposter Twitter Accounts, the Influencer Statements, or any other advertisement in which Defendant unlawfully used the SHEIN Marks or Roadget's brands.

11. That this case be found exceptional and Plaintiff awarded its attorney's fees pursuant to 15 U.S.C. § 1117(a).

12. That Plaintiff be awarded damages arising out of Defendant's wrongful acts in a sum equal to three times the actual damages suffered by Plaintiff, as provided in 15 U.S.C. § 1117(b).

13. That Defendant be found to have intentionally used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services and Plaintiff be awarded its attorney's fees pursuant to 15 U.S.C. § 1117(b).

14. That Plaintiff be awarded statutory damages in lieu of actual damages, as provided in 15 U.S.C. § 1117(c).

15. That Defendant be required to disgorge its profits and other ill-gotten gains.

16. That an accounting be held and judgment rendered for damages sustained by Plaintiff on account of Defendant's false designation of origin, trademark infringement, and unfair competition.

17. That, pursuant to 17 U.S.C. §§ 504, Plaintiff be awarded statutory damages for Defendant's willful copyright infringement.

18. That Plaintiff have and recover taxable costs of this action, including reasonable attorney's fees and interest.

19. That Plaintiff be awarded punitive damages in view of Defendant's wanton and deliberate illegal acts committed with oppression, fraud, or malice.

20. That Plaintiff be awarded such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury as to all issues triable to a jury.

ROADGET BUSINESS PTE. LTD.

Dated: December 16, 2022

By: /s/ *Barry R. Horwitz*_____

Barry R. Horwitz
Barry.Horwitz@gtlaw.com
Marc H. Trachtenberg
TrachtenbergM@gtlaw.com
Jacqueline Brousseau
Jacqueline.Brousseau@gtlaw.com
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-456-8400
Facsimile: 312-456-8435

*Counsel for Plaintiff Roadget Business Pte. Ltd.*