**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Roadget Business Pte. Ltd.,**<br><br>Plaintiff,<br><br>v.<br><br>**Whaleco, Inc.,**<br><br>Defendant. | **CIVIL ACTION NO. 1:22-cv-07119**<br><br>**Hon. Franklin U. Valderrama** |

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND LIMITED EXPEDITED DISCOVERY

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. Whaleco, Inc. Launches Temu—A New Online Marketplace ..... 3

B. The Temu Referral Program ..... 3

C. Temu's Use Of The Google Ads Service ..... 4

III. PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS ..... 6

A. Temu Did Not Create The Fake Twitter Accounts, But Merely Operated A Referral Program That In No Way Violates Trademark Laws ..... 6

B. The Use Of Google Ads To Target Advertisements And Compete Is Not Likely to Cause Confusion And Does Not Violate Trademark Laws ..... 7

IV PLAINTIFF FACES NO IRREPARABLE HARM TO WARRANT A PRELIMINARY INJUNCTION ..... 12

A. Plaintiff Improperly Presumes Irreparable Harm When The Facts Show That The Harm, If Any, Was De Minimis ..... 12

B. The Four-Month Delay In Seeking This Preliminary Injunction Disproves Any Irreparable Harm To Justify Injunctive Relief ..... 14

C. Plaintiff Has Not Established Any Real Risk Of Future Harm; The Facts Indicate That The Complained-Of Activity Has Already Ceased ..... 15

V. PLAINTIFF CAN GET RELIEF TO ADDRESS ANY FUTURE INCIDENTS WITHOUT ANY NEED FOR A PRELIMINARY INJUNCTION ..... 16

VI THE BALANCE OF HARDSHIPS DOES NOT SUPPORT A PRELIMINARY INJUNCTION ..... 17

VII. PLAINTIFF HAS NOT ESTABLISHED GOOD CAUSE FOR EXPEDITED DISCOVERY AGAINST TEMU ..... 19

VIII. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*A La Carte v. Culinary Enters.*,
No. 97 C 3958, 1997 U.S. Dist. LEXIS 12755 (N.D. Ill. Aug. 21, 1997) .......................... 13

*A.J. Canfield Co. v. Vess Beverages, Inc.*,
796 F.2d 903 (7th Cir. 1986) .......................... 19

*Alzheimer's Disease and Related Disorders Assoc., Inc. v. Alzheimer's Found. Of Am., Inc.*,
307 F. Supp. 3d 260 (S.D.N.Y. 2018) .......................... 7, 9

*Am. Hosp. Assoc. v. Harris*,
477 F. Supp. 665 (N.D. Ill. 1979) .......................... 12

*Ameritox, Ltd. v. Millennium Health, LLC*,
No. 13-cv-832, 2015 U.S. Dist. LEXIS 79675 (W.D. Wis. June 19, 2015) .......................... 18, 19

*Aon PLC v. Infinite Equity, Inc.*,
No. 19 C 7504, 2020 U.S. Dist. LEXIS 72661 (N.D. Ill. Apr. 23, 2020) .......................... 20

*Arjo, Inc. v. Handicare USA, Inc.*,
No. 18 C 2554, 2018 U.S. Dist. LEXIS 183037 (N.D. Ill. Oct. 25, 2018) .......................... 15

*Beacon Hill Staffing Grp., LLC v. Beacon Res., LLC.*,
No. 19 C 4121, 2020 U.S. Dist. LEXIS 222461 (N.D. Ill. Nov. 30, 2020) .......................... 6

*Benisek v. Lamone*,
138 S. Ct. 1942 (2018) .......................... 12

*Best Vacuum, Inc. v. Ian Design, Inc.*,
No. 04 C 2249, 2005 U.S. Dist. LEXIS 9795 (N.D. Ill. Jan. 18, 2005) .......................... 19

*Bidi Vapor, LLC v. Vaperz LLC*,
543 F. Supp. 3d 619 (N.D. Ill. 2021) .......................... 12, 13

*Brandt v. Schal Assoc., Inc.*,
960 F.2d 640 (7th Cir. 1992) .......................... 3

*Brithric Enters., LLC v. Bay Equity LLC*,
No. 20 C 4696, 2021 U.S. Dist. LEXIS 61752 (N.D. Ill. Mar. 31, 2021) .......................... 10

*Brookwood Funding, LLC v. Avant Credit Corp.*,
No. 1:14-CV-2960, 2015 U.S. Dist. LEXIS 191679 (N.D. Ga. July 28, 2015) .......................... 11

*Burda v. M. Ecker Co.*,
2 F.3d 769 (7th Cir. 1993) .......................... 3

*Camelot Banquet Rooms, Inc. v. U.S. SBA*,
24 F.4th 640 (7th Cir. 2022) .......................... 16

*CollegeSource, Inc. v. Academyone, Inc.*,
No. 10-cv-3542, 2012 U.S. Dist. LEXIS 153197 (E.D. Pa. Oct. 25, 2012) ........................9

*EEOC v. AutoZone, Inc.*,
707 F.3d 824 (7th Cir. 2013) ........................18

*Gen. Steel Domestic Sales, LLC v. Chumley*,
No. 10-cv-01398, 2013 U.S. Dist. LEXIS 64932
(D. Colo. May 7, 2013) ........................8, 9

*Gidatex, S.r.L. v. Camaniello Imports, Ltd.*,
13 F. Supp. 2d 417 (S.D.N.Y. 1998) ........................14

*Glaxo Grp. Ltd. v. Leavitt*,
481 F. Supp. 2d 434 (D. Md. 2007) ........................19

*Greenberg v. Perfect Body Image, LLC*,
No. 17-CV-5807, 2019 U.S. Dist. LEXIS 111721
(E.D.N.Y. July 2, 2019) ........................8, 9, 10

*Grubhub Inc. v. Kroger Co.*,
No. 21 C 5312, 2022 U.S. Dist. LEXIS 130009 (N.D. Ill. May 25, 2022) ........................10

*Hard Drive Prods. v. Doe*,
283 F.R.D. 409 (N.D. Ill. 2012) ........................19

*Hard Rock Cafe Licensing Corp. v. Concession Servs. Inc.*,
955 F.2d 1143 (7th Cir. 1992) ........................7

*Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*,
497 F. Supp. 3d 319 (N.D. Ill. 2020) ........................16

*In re Clearview AI, Inc.*,
No. 21 C 135, 2021 U.S. Dist. LEXIS 238264 (N.D. Ill. May 6, 2021) ........................20

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
735 F.3d 735 (7th Cir. 2013) ........................12, 13

*Lawson Prods., Inc. v. Avnet, Inc.*,
782 F.2d 1429 (7th Cir. 1986) ........................16

*Liquid Controls Corp. v. Liquid Control Corp.*,
802 F.2d 934 (7th Cir. 1986) ........................10

*Lorillard Tobacco Co. v. Engida*,
213 F. App'x 654 (10th Cir. Jan. 8, 2007) ........................13

*MB Fin. Bank, N.A. v. MB Real Estate Servs., L.L.C.*,
No. 02 C 5925, 2003 U.S. Dist. LEXIS 10578 (N.D. Ill. June 20, 2003) ........................13

*Mead Johnson & Co. v. Abbott Labs.*,
201 F.3d 883 (7th Cir. 2000) ........................19

*Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*,
194 F.R.D. 618 (N.D. Ill. 2000) .......... 19

*Michigan v. U.S. Army Corps of Eng'rs*,
667 F.3d 765 (7th Cir. 2011) .......... 15

*Monotype Imaging, Inc. v. Bitstream Inc.*,
376 F. Supp. 2d 877 (N.D. Ill. 2005) .......... 7

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
804 F.3d 930 (9th Cir. 2015) .......... 8

*Nw Indus., Inc. v. B.F. Goodrich Co.*,
301 F. Supp. 706 (N.D. Ill. 1969) .......... 18

*Omron Healthcare v. Kaiser*,
No. 93 C 1108, 1993 U.S. Dist. LEXIS 2752 (N.D. Ill. Mar. 4, 1993) .......... 15

*Orlando v. CFS Bancorp, Inc.*,
No. 2:13-CV-261, 2013 U.S. Dist. LEXIS 202864 (N.D. Ind. Oct. 10, 2013) .......... 20

*Overstock.com, Inc. v. Nomorerack.com, Inc.*,
No. 2:13-CV-1095, 2014 U.S. Dist. LEXIS 89620 (D. Utah June 30, 2014) .......... 13

*Packman v. Chicago Tribune Co.*,
267 F.3d 628 (7th Cir. 2001) .......... 10

*Pampered Chef v. Alexanian*,
804 F. Supp. 2d 765 (N.D. Ill. 2011) .......... 19

*Park Ridge Sports, Inc. v. Park Ridge Travel Falcons*,
No. 20 C 2244, 2022 U.S. Dist. LEXIS 97970 (N.D. Ill. Jan. 5, 2022) .......... 13

*Park Ridge Sports v. Park Ridge Travel Falcons*,
No. 20 C 2244, 2020 U.S. Dist. LEXIS 200094 (N.D. Ill. Aug. 20, 2020) .......... 14

*Passport Health, LLC v. Avance Health Sys. Inc.*,
823 F. App'x 141 (4th Cir. 2020) .......... 8, 9, 10

*Perfect 10, Inc. v. Rapidshare A.G.*,
No. 09-CV-2596, 2010 U.S. Dist. LEXIS 146053
(S.D. Cal. May 18, 2010) .......... 17

*Philip Morris Inc. v. Star Tobacco Corp.*,
879 F. Supp. 379 (S.D.N.Y. 1995) .......... 19

*Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*,
149 F.3d 722 (7th Cir. 1998) .......... 9, 18

*Porta-Fab Corp. v. Allied Modular Bldg. Sys.*,
No. 8:20-cv-01778, 2022 U.S. Dist. LEXIS 185040
(C.D. Cal. July 24, 2022) ........................................................................11, 12

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*,
988 F. Supp. 2d 1047 (D.Minn. 2013)........................................................................8, 9

*SFG, Inc. v. Musk*,
No. 19 C 2198, 2021 U.S. Dist. LEXIS 50614 (N.D. Ill. Feb. 10, 2021)..........................12

*Shaffer v. Globe Prot., Inc.*,
721 F.2d 1121 (7th Cir. 1983) ........................................................................14

*Sorenson v. WD-40 Co.*,
792 F.3d 712 (7th Cir. 2015) ........................................................................8

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
No. 86 C 6159, 1987 U.S. Dist. LEXIS 781 (N.D. Ill. Jan. 30, 1987) ........................14, 18

*Traffic Tech, Inc. v. Kreiter*,
No. 14 C 7528, 2015 U.S. Dist. LEXIS 169248 (N.D. Ill. Dec. 18, 2015) .......................14

*Tranchita v. Callahan*,
511 F. Supp. 3d 850 (N.D. Ill. 2021)........................................................................14

*Valencia v. City of Springfield*,
883 F.3d 959 (7th Cir. 2018) ........................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)........................................................................12

**STATUTES**

15 U.S.C. § 1114........................................................................6

15 U.S.C. § 1116(a) ........................................................................12

15 U.S.C. § 1125........................................................................6

**RULES**

Fed. R. Civ. P. 11(c) ........................................................................3

Fed. R. Civ. P. 65(c) ........................................................................19

**TREATISES**

Charles Alan Wright & Arthur R. Miller, 11A Federal Practice and Procedure
§ 2948.1 (3d ed. 2022) ........................................................................12, 16

## I. INTRODUCTION

Plaintiff Roadget Business Pte. Ltd. (d.b.a. "Shein") seeks a preliminary injunction against Defendant Whaleco, Inc. (d.b.a. "Temu") based on events that Temu was not responsible for, caused no harm, and stopped four months ago. Shein did not seek an injunction back in October 2022, but does so now after Temu has become a top download in both the Apple App and Google Play stores. The motion targets entirely lawful practices that Shein itself engages in and should be denied. It is based on no evidence implicating Temu, deals with no emergency, and accomplishes no purpose other than to distract Temu as it launches a competing service.

The motion is based on two complaints, neither of which have merit. First, Shein complains about three fake Twitter accounts imitating Shein that contained referral links for new users to create Temu accounts. Temu did not create these Twitter accounts, and Temu did not induce others to create them. The URL links make clear they were made by someone attempting to game Temu's referral programs. The rules for those programs, however, clearly prohibit these "imposter" accounts. Temu did not benefit from these posts—the three Twitter accounts resulted in de minimis traffic and only a single U.S. download. Twitter deactivated these accounts months ago and Temu has deactivated the referral links. There is no need for any injunction. Temu (like Shein) has every right to operate a referral program, and Temu is no more responsible for third-party imposters than Shein is for the imposters Temu contends with.

Second, Shein complains about certain Google search ads that appeared back in October 2022. Google—not Temu—determines the specific ads that are displayed based on a user's search and the terms an advertiser "bids" on. Temu includes "Shein" among thousands of other keywords when setting up its Google Ads campaigns. Doing so does not violate trademark laws, even if they infrequently result in ads that refer to the competitor. Targeting keyword ads in this way is an accepted practice—Shein does the same thing and continues to bid on "Temu" to

advertise its products. These ads did not cause confusion; they barely garnered any attention at all. That said, Shein's complaint has been addressed. As Google explains, once its algorithm recognizes the "Shein" trademark, it no longer inserts that keyword into ads. That is why Shein can find no post-October examples. Regardless, Temu (like Shein) has the right to use Google search ads to compete even if they sometimes result in ads that refer to competitor trademarks.

Shein says there should be no objection because all it wants is for Temu to compete lawfully. Nonsense. Temu does object—just as any innocent would object to an order to "stop stealing" and for the same reasons courts disfavor "obey the law" injunctions. There is no need for such injunctions, which are more likely to lead to mischief than to prevent harm. An injunction here serves only to stigmatize, shackle, and distract a new competitor.

It is telling that this motion is based on stale events from four months ago. When Shein announced its intent to file this motion, we immediately sought to meet and confer. Shein was reluctant, saying there was no obligation to talk and, unless Temu was willing to cave, Shein was filing the motion anyway.[1] We explained that Temu was not responsible, asked if there was any present threat to address, and offered to cooperate. Shein could point to no evidence implicating Temu. Shein insisted there were recent incidents, promised to provide them, but sent the same stale examples they offer today. Cooperation also did not matter; Shein's counsel said they were under client pressure to proceed because Shein was "at war" with Temu.

Any motion has to be based on actual facts and not be filed for an improper purpose. This is especially important for preliminary injunction requests, which is reserved for real emergencies. It is even more worrisome when a party is "at war" with a new competitor. A

[1] Details of the meet and confer are provided in the Declaration of Kelly H. Yin ("Yin Decl.").

motion based on such an anemic showing should not only be denied but is sanctionable.[2] Even if Temu prevails and the Court denies the motion, Shein has unfortunately succeeded in distracting Temu personnel during the launch and diverting resources to defending this unnecessary motion.

## II. FACTUAL BACKGROUND

### A. Whaleco, Inc. Launches Temu—A New Online Marketplace

Defendant Whaleco, Inc. launched Temu in the United States on September 1, 2022. Declaration of Yao Wu ("Wu Decl.") ¶ 3. Through the Temu website (https://temu.com) and mobile app, customers can purchase everyday goods from clothing to electronics at competitive prices from third-party sellers. *Id.* ¶ 2. Since launch, the Temu app has been downloaded over 20 million times. *Id.* ¶ 3. It became the most-downloaded e-commerce app in the fourth quarter of 2022, with average daily installs greater than Shein's in November and December 2022.[3]

### B. The Temu Referral Program

Like Shein, Temu uses customer referral programs to promote its platform and attract new customers. Wu Decl. ¶ 9. These programs reward users for sharing Temu with others through unique referral links. *Id.* Temu offers multiple referral programs, including the Cash Reward and Redeem Coins programs. *Id.*

Any Temu user can participate in these programs. Wu Decl. ¶ 10. Each participant is given a unique link where prospective users can create new Temu accounts. *Id.* The link expires

---

[2] Fed. R. Civ. P. 11(c) authorizes district courts to impose sanctions against parties. *Burda v. M. Ecker Co.*, 2 F.3d 769, 774-75 (7th Cir. 1993); *Brandt v. Schal Assoc., Inc.*, 960 F.2d 640, 646 (7th Cir. 1992) (a motion filed "'without reasonable inquiry' and without being 'well grounded in fact'" warrants sanction). If the Court is so inclined, Temu can provide further information to set the appropriate amount of sanctions.

[3] *See* Juozas Kaziukenas, *Temu is Most-Downloaded Shopping App in the US*, Marketplace Pulse (Oct. 20, 2022), https://www.marketplacepulse.com/articles/temu-is-most-downloaded-shopping-app-in-the-us; Michelle Toh, *New Online Superstore Surpasses Amazon and Walmart to Become Most Downloaded App in US*, CNN Business (Feb. 19, 2023), https://www.cnn.com/2023/02/16/tech/temu-shopping-app-us-popularity-intl-hnk/index.html.

after a limited timeframe, from 24 hours to 3 days. *Id.* To qualify for a reward, enough new users must create Temu accounts before the link expires. *Id.* If the threshold is not met, there are no rewards. *Id.* If it is, participants need to provide their identifying information, such as a PayPal account, in order to receive the reward. *Id.*

Temu encourages participants to promote their referral links in accordance with Temu's strict rules. Wu Decl. ¶ 11. Temu forbids participants from gaming the referral program by using "multiple, fictitious, or fake" accounts. *Id.* Temu also forbids users from violating any law, infringing the rights of any third party, or acting in an unfair or disruptive manner when participating in the referral programs. *Id.*

These rules clearly prohibit the posting of the Temu referral links by the three imposter Twitter accounts @SHEIN_DC, @SHEIN_USA, and @SHEIN_NYC. The links in these posts are associated with Temu's Cash Reward and Redeem Coins referral programs. Wu Decl. ¶ 12. Temu did not know and did not encourage anyone to create "imposter" accounts or to post these referral links, nor are such posts helpful to Temu. *Id.* ¶¶ 6, 11, 13-14. Based on Temu's records, there was only a single account created in the United States using any of these referral links. *Id.* ¶ 14. These links did not generate enough activity to qualify for any rewards, and Temu has since deactivated the links. *Id.* ¶¶ 13-14.

**C. Temu's Use Of The Google Ads Service**

Advertisers use Google Ads advertisements to promote their websites. To determine which ads appear on which results page, advertisers bid on various (oftentimes thousands of) "keywords." Wu Decl. ¶¶ 15-16. Keywords (or variations thereof) allow Google advertisers to display targeted advertisements identified in bold with "Ad" or "Sponsored" alongside organic search results from a user's search query. *Id.* ¶¶ 15-17.

Both Temu and Shein use Google Ads to market their products. Wu Decl. ¶ 17; Declaration of George Chiao ("Chiao Decl.") Ex. 11, ECF No. 24-3. Temu has not purchased ads on any other domestic search engine (*e.g.*, Bing or Yahoo). Wu Decl. ¶ 15 n.1. Temu has not purchased any Google Ads outside of North America. *Id.* Temu does bid on "Shein" as a keyword, which allows its advertisement to appear when Google users search for "Shein" or the like. *Id.* ¶¶ 19-20, 22. Likewise, Shein bids on the keyword "Temu." *Id.* ¶ 17.

The Google Ads advertisements at issue stem from two domestic ad campaigns: one that ran from October 24-27, 2022, and another that ran from October 26-27, 2022. Wu Decl. ¶¶ 18-20. The campaigns were assigned the following Ad ID numbers, which can be seen on the "Landing Page" URL of the examples appended to the motion: 140633077617 and 142258983265. *Id.* ¶¶ 19-20; *see also* Chiao Decl. Ex. 9. In Campaign ID 140633077617, Temu bid on over 3,000 keywords, less than 1% contained Shein. *Id.* ¶ 19. In Campaign ID 142258983265, Temu bid on over 7,500 keywords, less than 0.5% contained Shein. *Id.* ¶ 20.

Some ads in these campaigns displayed headlines that contained the term "Shein." Motion at 6-7, ECF No. 24. These headlines were the result of Google's keyword insertion function. Wu Decl. ¶ 21. Under this function, Google automatically inserts keywords in the ad itself. *Id.* For example, an ad could contain a headline: "{keyword:Clothing}: Find Great Deals Now." *Id.* If a Google user searched for "yellow scarf," Google would insert that keyword term into the ad itself: "Yellow Scarf: Find Great Deals Now." *Id.*

Based on Google's reports, these ads containing "Shein" in the text had a de minimis effect. For Campaign ID 140633077617, ads that contain "Shein" in the ad text appeared 68,135 times and only resulted in 1,257 clicks. Wu Decl. ¶ 23. For Campaign ID 142258983265, ads that contain "Shein" in the ad text only appeared 432 times and only resulted in 21 clicks. *Id.*

All of the ads attached to the motion are from October 26 or 27, 2022. Wu Decl. ¶ 24; Chiao Decl. Ex. 9 (dates within URLs from "Screenshot of search results page" and "Landing page screenshot" columns). Shein provides no examples of ads with a Shein headline after these dates. Temu tried to find recent examples, but has not been able to. Wu Decl. ¶ 24. Based on Google's online documentation, it appears that the Google Ads algorithm now recognizes "Shein" as a protected trademark and prevents it from being inserted into ads. *Id.* ¶ 25.

## III. PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS

The motion for preliminary injunction is based on Shein's trademark claims (15 U.S.C. §§ 1114, 1125). Motion at 7-14. Assuming, for purposes of this motion, that Shein holds protectible trademarks, these claims still require Shein to establish a likelihood of confusion. *See Beacon Hill Staffing Grp., LLC v. Beacon Res., LLC.*, No. 19 C 4121, 2020 U.S. Dist. LEXIS 222461, at *4-5 (N.D. Ill. Nov. 30, 2020). Shein, however, is unlikely to prevail on trademark claims against Temu for either the Twitter accounts or the Google Ads.

### A. Temu Did Not Create The Fake Twitter Accounts, But Merely Operated A Referral Program That In No Way Violates Trademark Laws

Temu did not create the fake Twitter accounts. Wu Decl. ¶ 6. Shein has no evidence otherwise. It merely assumes it because the posts contain referral links to Temu. Motion at 5-6. Those links show that a third party seeking to game Temu's referral programs was responsible, not Temu itself. That third party is responsible for using Shein's trademarks and violating Temu's rules. *See Beacon Hill Staffing Grp.*, 2020 U.S. Dist. LEXIS 222461, at *5 (likelihood of confusion must be based on defendant's use).

Temu can only be held responsible here if it intentionally induced the third party to infringe, or contributed to the third party's activities with knowledge that the third party would

infringe. *Hard Rock Cafe Licensing Corp. v. Concession Servs. Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992); *Monotype Imaging, Inc. v. Bitstream Inc.*, 376 F. Supp. 2d 877, 890 (N.D. Ill. 2005).

First, Temu did not induce the creation of the "imposter" Twitter accounts. All Temu did was operate referral programs to encourage growth. Wu Decl. ¶ 9. Shein itself has a similar program. *Id.* Temu does not condone or encourage the creation of imposter accounts or trademark infringement with those programs. *Id.* ¶ 11. Its policies clearly prohibit users from creating fake accounts or from infringing anyone's intellectual property rights. *Id.*

Second, Temu also did not contribute to any infringement. Wu Decl. ¶ 11. All Temu did was provide links to Temu users who wish to take part in its referral rewards programs. *Id.* ¶ 10. Those links did not assist in the creation of the Twitter accounts or the use of Shein's trademarks. Temu cannot preemptively control the conduct of users in its referral programs. The creators of the Twitter accounts also never received any financial benefit from Temu, since the links did not generate sufficient activity to earn any rewards; even if they had, Temu would not have rewarded any user who violated the rules for the referral programs. *Id.* ¶ 11, 14. Similarly, Temu received de minimis financial benefit, if any, from the Twitter accounts because the referral links only resulted in one U.S. app download. *Id.* ¶ 14.

### B. The Use Of Google Ads To Target Advertisements And Compete Is Not Likely to Cause Confusion And Does Not Violate Trademark Laws

By now, the use of Google Ads, bidding on competitor names as keywords, and keyword insertion are well-accepted and ubiquitous. "Virtually no court has held that, on its own, a defendant's purchase of a plaintiff's mark as a keyword term is sufficient for liability." *Alzheimer's Disease and Related Disorders Assoc., Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 284 (S.D.N.Y. 2018). This is true even when there may be Google Ads that <u>insert</u> a competitor's name while promoting what you offer instead.

- *Passport Health, LLC v. Avance Health Sys. Inc.*, 823 F. App'x 141 (4th Cir. 2020) (rejecting infringement claim for ad headline "North Carolina Travel Clinic | Passport Health," even though it referred to Passport Health while advertising Avance services);

- *Greenberg v. Perfect Body Image, LLC*, No. 17-CV-5807, 2019 U.S. Dist. LEXIS 111721 (E.D.N.Y. July 2, 2019) (rejecting infringement claim for ad with headline "Dr greenberg - Award Winning laser Treatments - perfectbodylaser.com," even though it mentioned Dr. Greenberg when advertising for Perfect Body Image's treatments);

- *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 988 F. Supp. 2d 1047 (D.Minn. 2013) (rejecting infringement over ad headline "Select Comfort – Mattress firm," even though headline led with Select Comfort while advertising Mattress Firm's mattresses);

- *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398, 2013 U.S. Dist. LEXIS 64932 (D. Colo. May 7, 2013) (rejecting infringement over ad headline "General Steel building—Steel framed buildings | Armstrong Steel," that mentioned General Steel when advertising Armstrong Steel's products), *aff'd*, 627 F. App'x 682 (10th Cir. 2015).

In applying the likelihood of confusion factors,[4] courts have identified three as "especially important" in finding no infringement: the similarity of the marks, any evidence of actual confusion, and the intent of the defendant. *Id.* All three negate likely confusion.

<u>Similarity of the Marks</u>. In assessing similarity of the marks, Shein errs by only analyzing the SHEIN marks without any context. Courts should not analyze the use of the trademarks in isolation. *Sorenson*, 792 F.3d at 727; *see also Passport Health, LLC*, 823 F. App'x at 149. This is particularly true in search-page advertising, where confusion will stem from how the mark is used in the context of the search-results webpage. *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 937 (9th Cir. 2015).

In the search-results context, those that viewed Temu's ads are the least likely to be confused by Shein's mark: they have searched for Shein by name. The Temu ads at issue only appeared when users typed Shein into the Google search queue. Those Google users know what

[4] *See Sorenson v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) (factors are (1) similarity of marks; (2) similarity of products; (3) the area and manner of use; (4) degree of consumer care; (5) the strength of the plaintiff's mark; (6) actual confusion; and (7) the intent of the defendant).

Shein is and, presumably, know what Shein is not. *See CollegeSource, Inc. v. Academyone, Inc.*, No. 10-cv-3542, 2012 U.S. Dist. LEXIS 153197, at *53-54 (E.D. Pa. Oct. 25, 2012) (modern internet users have experience with search sites and are less likely to be confused by advertisements), *aff'd*, 597 F. App'x 116 (3d Cir. 2015). And, Google users will expect to see non-Shein entries on the search results page. Search engines are designed to "present users with information they seek as well as related information the user may also find helpful or interesting." *Gen. Steel Domestic Sales*, 2013 U.S. Dist. LEXIS 64932, at *34.

While "Shein" appears in the headline of certain Temu ads, the surrounding context dispels any notion that Shein is affiliated with Temu. *See* Motion at 12-13 (example ads). The Temu ad is labeled as "Ad," which segregates it from the non-sponsored search results. *Id.* It clearly contains Temu's own URL in a link right above the headline. *Id.* And the ad description is specific to Temu: "Awesome Price With Good Quality Here On Temu"; "Unbelievably Low Price For High-Quality Storage On Temu." *Id.*; *see Greenberg*, 2019 U.S. Dist. LEXIS 111721 at *32-33 (finding no infringement based on these three facts); *Gen. Steel Domestic Sales, LLC*, 2013 U.S. Dist. LEXIS 64932 at *29-30 (no likelihood of confusion in light of ad's surrounding information). Any confusion from the ad will be dispelled when the consumer reaches Temu's website. *See Passport Health, LLC*, 823 F. App'x at 149-50; *Select Comfort Corp.*, 988 F. Supp. 2d at 1053-54. Because internet users can so quickly jump back to the Google search results page, initial interest confusion is not viable absent evidence of intentional deception, which is not present here. *Alzheimer's Disease & Related Disorders Ass'n*, 307 F. Supp. 3d at 297.

Evidence of Actual Confusion. Shein admits that it does not have any evidence of actual confusion. Motion at 13-14. Even though actual confusion is not always necessary, its absence in the Google Ads context negates likely confusion. There is no possibility of anything greater than *de minimis* confusion here. *See Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*,

149 F.3d 722, 729 (7th Cir. 1998) (de minimis evidence of actual confusion did not establish likelihood of confusion). Shein had four months to compile evidence of actual confusion and has not come up with anything. The reason is plain: there was little consumer engagement with these ads. Wu Decl. ¶ 23; *see Passport Health*, 823 F. App'x at 152 (no consumer confusion when clicks on internet ads were minimal); *Greenburg*, 2019 U.S. Dist. LEXIS 111721, at *26-27 ("clicks" do not mean confusion absent a causal link).

Intent of the Defendant. To satisfy this element, a plaintiff must show that the defendant acted in bad faith. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001); *Brithric Enters., LLC v. Bay Equity LLC*, No. 20 C 4696, 2021 U.S. Dist. LEXIS 61752, at *24-25 (N.D. Ill. Mar. 31, 2021). A defendant acts in bad faith if it tries "to steal sales from a competitor by making consumers think they are dealing with that competitor." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 940 (7th Cir. 1986); *Grubhub Inc. v. Kroger Co.*, No. 21 C 5312, 2022 U.S. Dist. LEXIS 130009, at *21 (N.D. Ill. May 25, 2022).

Temu did not act in bad faith. It did not create the specific ads with the Shein headlines. Temu included Shein as a keyword so it could advertise to those searching for Shein. Wu Decl. ¶ 22. It was seeking to bring attention to Temu as an alternative to Shein; it was not trying to pretend to be Shein. The fact that certain ads had the word "Shein" inserted does not suggest otherwise, when every other part of the advertisement clearly identifies Temu. Temu neither intended for any specific headline configuration on Google Ads, nor could it control what the ads displayed with granularity. *See Passport Health, LLC*, 823 F. App'x at 151-52 (no evidence of intent from purchase of keywords in search-engine advertising). The few ads identified in Exhibit 9 are no more indicative of "bad faith" than Shein's recent ads that say "Shop temu store" but sell Shein products. Wu Decl. ¶ 17. Shein's attempts to manufacture bad intent by pointing to the Twitter accounts and Temu's continued use of Google Ads prove nothing; Temu

did not create the Twitter accounts and no additional ads with a "Shein" headline have recurred, despite both parties' efforts to conjure them. *Id.* ¶¶ 6, 24.

While some courts have allowed Google Ads cases to go to trial over likelihood of confusion, they in no way suggest that those confusion concerns would justify a preliminary injunction. *See Brookwood Funding, LLC v. Avant Credit Corp.*, No. 1:14-CV-2960, 2015 U.S. Dist. LEXIS 191679, at *17-19 (N.D. Ga. July 28, 2015) (permitting claims to survive pleadings motion is not commentary on viability). For example, a court recently acknowledged a triable issue over an infringement claim based on keyword insertion in *Porta-Fab Corp. v. Allied Modular Bldg. Sys.*, No. 8:20-cv-01778, 2022 U.S. Dist. LEXIS 185040 (C.D. Cal. July 24, 2022). But, the court acknowledged that the ad generated only 85 to 102 clicks, none of which led to sales. *Id.* at *3. Even allowing this case to go past the pleadings has been met with academic criticism. Professor Eric Goldman—in a blog post aptly titled *Yet More Evidence That Keyword Advertising Lawsuits Are Stupid*—questions why such a lawsuit was even filed:

> So, what exactly is the trademark owner fighting for here? Few consumers are clicking through the ads, and no consumer has yet spent any money on Allied, so there is no evidence of ACTUAL confusion or "diversion" or whatever fictional legal doctrine about consumer behavior the trademark owner is advancing. Some math: if Allied paid $10 for each click–an extremely high CPC–the total economic value of the ads at issue is about $1k. This is a bad ad buy by Allied, AND it's a bad trademark enforcement decision by Porta-Fab. As I teach my students, Porta-Fab should have spent its enforcement budget on more marketing instead of more lawyers, which almost certainly would produce a higher ROI than this lawsuit did.[5]

---

[5] Goldman, Eric, *Yet More Evidence That Keyword Advertising Lawsuits Are Stupid - Porta-Fab v. Allied Modular*, Technology & Marketing Law Blog (Nov. 28, 2022), https://blog.ericgoldman.org/archives/2022/11/yet-more -evidence-that-keyword-advertising-lawsuits-are-stupid-porta-fab-v-allied-modular.htm.

That said, *Porta-Fab* held only that there was a triable issue; it in no way supports the issuance of a preliminary injunction. Goldman's commentary highlights why it should not.

## IV. PLAINTIFF FACES NO IRREPARABLE HARM TO WARRANT A PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary remedy. *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). It is the exception to the general rule that relief be afforded after a trial on the merits. *See Am. Hosp. Assoc. v. Harris*, 477 F. Supp. 665, 666 (N.D. Ill. 1979), *aff'd*, 625 F.2d 1328 (7th Cir. 1980). It is designed to protect plaintiffs from suffering a significant injury that is "not fully compensable or avoidable by the issuance of a final judgment." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740-41 (7th Cir. 2013). For this reason, irreparable injury is "perhaps the single most important prerequisite" for a preliminary injunction. Charles Alan Wright & Arthur R. Miller, 11A Federal Practice and Procedure § 2948.1 (3d ed. 2022). Thus, even if Shein is likely to prevail, a preliminary injunction should be denied if Shein faces no irreparable harm.

### A. Plaintiff Improperly Presumes Irreparable Harm When The Facts Show That The Harm, If Any, Was De Minimis

Shein admits it "currently knows of no specific instances of confusion." Motion at 13-14. It instead vaguely asserts that "consumer confusion and the loss of goodwill" stemming from Temu's conduct have caused it irreparable harm. *Id.* at 16. But "bare assertions" without anything to substantiate them is insufficient. *Bidi Vapor, LLC v. Vaperz LLC*, 543 F. Supp. 3d 619, 633 (N.D. Ill. 2021). There is no showing of harm to justify injunctive relief.

The motion relies primarily on a presumption of irreparable harm. Motion at 14-16. It assumes there is a likelihood of success, which Shein does not have. *See* 15 U.S.C. § 1116(a); *SFG, Inc. v. Musk*, No. 19 C 2198, 2021 U.S. Dist. LEXIS 50614, at *12 (N.D. Ill. Feb. 10,

2021). Even then, the presumption is rebuttable. *See*, *e.g.*, *Bidi Vapor, LLC*, 543 F. Supp. 3d at 632 (rebutting presumption); *Park Ridge Sports, Inc. v. Park Ridge Travel Falcons*, No. 20 C 2244, 2022 U.S. Dist. LEXIS 97970, at *37-39 (N.D. Ill. Jan. 5, 2022) (same).

One cannot presume irreparable harm when any harm here was plainly de minimis. The referral links and the Google Ads advertisements were largely ignored by consumers. The posts in the Twitter accounts received very little traffic (with a substantial portion likely related to this litigation). Wu Decl. ¶ 14. As for Google Ads, the ones that referred to "Shein" in the headline appeared only 68,135 times, but only resulted in only 1,257 clicks and led to de minimis sales. *Id.* ¶ 23. To put these clicks in context, Temu had 58.5 million users visit Temu's website in October 2022, averaging out to 1.98 million daily users. *Id.*

There cannot be irreparable harm without meaningful consumer engagement. *A La Carte v. Culinary Enters.*, No. 97 C 3958, 1997 U.S. Dist. LEXIS 12755, at *19-21 (N.D. Ill. Aug. 21, 1997) (no irreparable harm where plaintiff found only "a few instances of actual confusion, but has not proven . . . substantial confusion affecting consumer's purchasing decisions"); *Lorillard Tobacco Co. v. Engida*, 213 F. App'x 654, 656 (10th Cir. 2007) (irreparable harm must be "both certain and great"); *Overstock.com, Inc. v. Nomorerack.com, Inc.*, No. 2:13-CV-1095, 2014 U.S. Dist. LEXIS 89620, at *25-26 (D. Utah June 30, 2014) (for companies with millions of customers, approximately 210 consumer complaints does not suggest irreparable harm).

This is a far cry from the "massive consumer confusion" Shein claims. Motion at 15. It is one thing to presume irreparable harm when confusion is "especially likely." *Kraft Foods Grp. Brands, LLC*, 735 F.3d at 741. It is another when the record shows otherwise. *See MB Fin. Bank, N.A. v. MB Real Estate Servs., L.L.C.*, No. 02 C 5925, 2003 U.S. Dist. LEXIS 10578, at *59-60 (N.D. Ill. June 20, 2003).

### B. The Four-Month Delay In Seeking This Preliminary Injunction Disproves Any Irreparable Harm To Justify Injunctive Relief

Shein delayed for nearly four months before seeking a preliminary injunction. It discovered the "imposter" Twitter accounts on October 8, 2022 and the Google Ads in question on October 26 and 27, 2022. Chiao Decl. Ex. 9. Shein did not commence the underlying action until December 16, 2022, and did not seek injunctive relief until February 3, 2023.

This delay disproves irreparable harm. It is "common sense" that a delay means there is no "impending irreparable harm or an emergency of any sort." *Park Ridge Sports v. Park Ridge Travel Falcons*, No. 20 C 2244, 2020 U.S. Dist. LEXIS 200094, at *33 (N.D. Ill. Aug. 20, 2020); *see also Traffic Tech, Inc. v. Kreiter*, No. 14 C 7528, 2015 U.S. Dist. LEXIS 169248, at *49 (N.D. Ill. Dec. 18, 2015). As a rule-of-thumb, "courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex, S.r.L. v. Camaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998).

There is no excuse for Shein's four-month delay. It claims to have "recently discovered" the Google Ads incidents, but Exhibit 9 reveals that "recently" means October 2022. Shein admits that it learned of the fake Twitter accounts on October 8, 2022 and that the accounts have been long-removed. *See* Motion at 5, 16 n.16. This is not a case where delay is justified by investigative efforts; if anything, Shein's inability to identify any other incidents to complain about confirms there is no irreparable harm to address.

Shein's four-month delay here warrants denial. *See, e.g.*, *Shaffer v. Globe Prot., Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983) (two months); *Park Ridge Sports*, 2020 U.S. Dist. LEXIS 200094, at *32 (three months); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, No. 86 C 6159, 1987 U.S. Dist. LEXIS 781, at *7 (N.D. Ill. Jan. 30, 1987) (three months); *Tranchita v. Callahan*, 511

F. Supp. 3d 850, 882 (N.D. Ill. 2021) (four months); *Arjo, Inc. v. Handicare USA, Inc.*, No. 18 C 2554, 2018 U.S. Dist. LEXIS 183037, at *29 (N.D. Ill. Oct. 25, 2018) (four months).

### C. Plaintiff Has Not Established Any Real Risk Of Future Harm; The Facts Indicate That The Complained-Of Activity Has Already Ceased

A preliminary injunction is inappropriate without a "presently existing actual threat" of future harm. *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788-89 (7th Cir. 2011). If there is no likelihood of continuing unlawful conduct, then there is no irreparable harm and an injunction should not be granted. *Omron Healthcare v. Kaiser*, No. 93 C 1108, 1993 U.S. Dist. LEXIS 2752, at *6-7 (N.D. Ill. Mar. 4, 1993).

It is telling that Shein's motion cannot point to any incident more recent than October 2022. The three fake Twitter accounts were taken down months ago, and the posted referral links expired within days. Wu Decl. ¶¶ 7, 13. There is no evidence of any further imposter accounts; that scheme failed since the referral links did not garner consumer interest let alone result in rewards. The two Google Ads campaigns were active for two and four days in October, respectively, the last of which for both campaigns was October 27, 2022. *Id.* ¶¶ 19-20. Neither party has been able to recreate these ads, which suggests Google's algorithm now recognizes "Shein" as a trademark and prevents its insertion into ads. *Id.* ¶ 25. There is no threat to enjoin.

Shein theorizes about secret infringement somewhere on the Internet that is somehow unfindable. Motion at 2, 21-22. This is rank speculation. The theories are just "oblique references to the continuing threat of future loss." *Arjo, Inc.*, 2018 U.S. Dist. LEXIS 183037, at *27-28. An injunction should not be granted "simply to prevent the possibility of some remote future injury." *Michigan*, 667 F.3d at 788. Shein suggests that there may be Temu ads on Yahoo and Bing. Motion at 2, 21. But Temu has never purchased ads on these search engines. Wu

Decl. ¶ 15 n.1. More importantly, any infringement that even a motivated competitor cannot find is unlikely to cause any significant consumer confusion.

This situation is different from *Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*, 497 F. Supp. 3d 319 (N.D. Ill. 2020) (Valderrama, J.). There, this Court granted a preliminary injunction even though the defendant took down the website that contained references to the plaintiff's trademark. As this Court found, however, that defendant said it would reinstate the website during the course of the litigation and had a prior history of failing to prevent infringement on its website. *Id.* at 334-35. Here, Temu was responsible for neither the imposter accounts, nor the specific Google Ads displayed. And neither party has been able to recreate the ads on Google.

## V. PLAINTIFF CAN GET RELIEF TO ADDRESS ANY FUTURE INCIDENTS WITHOUT ANY NEED FOR A PRELIMINARY INJUNCTION

Preliminary injunctions are only granted when "traditional legal remedies are inadequate to remedy the harm." *Camelot Banquet Rooms, Inc. v. U.S. SBA*, 24 F.4th 640, 644 (7th Cir. 2022). As a general rule, courts will first consider the adequacy of monetary damages before delving into injunctive relief. *See* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1. An injunction arises out of "necessity." *See Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986). No injunction is necessary when a plaintiff can (and does) avail itself of "self-protective measures without judicial intervention." *Id.*

Shein has shown the effectiveness of "self-protective measures" on both Twitter and Google. Shein complained to Twitter and had the three imposter accounts promptly removed. Motion at 16 n.16. Shein complained to Google and now there are no ads that refer to "Shein," despite efforts by both parties to find one. Wu Decl. ¶¶ 24-25. Shein was able to stop the complained-of activities without the need for any judicial intervention.

These same measures remain available should there be any new instances. Twitter's policies still allow a trademark holder to report alleged infringement.[6] Google still has a Trademark Complaint Form an owner can submit to prevent infringing ads on its search pages.[7] These "takedown tools" are "simple, available measures to protect [intellectual] property" that render injunctive relief wholly unnecessary. *Perfect 10, Inc. v. Rapidshare A.G.*, No. 09-CV-2596, 2010 U.S. Dist. LEXIS 146053, at *25-26 (S.D. Cal. May 18, 2010) (plaintiff's "lack of interest in self-help measures" resulted in denial of preliminary injunction).

## VI. THE BALANCE OF HARDSHIPS DOES NOT SUPPORT A PRELIMINARY INJUNCTION

Even if Shein could meet the threshold requirements (which it cannot), the question remains whether equity supports a preliminary injunction. *Valencia v. City of Springfield*, 883 F.3d 959, 965-66 (7th Cir. 2018). Beyond irreparable harm, inadequate remedies, and likely success, the Court must also be convinced that the balance of hardships to plaintiff, defendant, and the public interest tips in favor of injunctive relief. *Id.* at 966. Because Temu is more likely to prevail on merits of the Lanham Act claims, the balance must tip heavily in Shein's favor for this Court to grant a preliminary injunction. *Id.* (sliding scale approach to balancing).

Conclusory rhetoric aside, Shein's motion has little to do with any hardship it faces. The record shows that consumer engagement was minimal, the complained-of activities have already stopped, and there is no reason to believe they will recur. If Shein was truly concerned about harm, it would not have waited four months to bring a preliminary injunction motion. *See*

---

[6] Twitter, *Trademark Policy* (Mar. 2019), https://help.twitter.com/en/rules-and-policies/twitter-trademark-policy.

[7] Google, *Help for Trademark Owners*, https://support.google.com/adspolicy/answer/2562124; Google, *Trademark Help for Advertisers*, https://support.google.com/adspolicy/answer/2562645.

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 1987 U.S. Dist. LEXIS 781, at *8 (delay "tips in favor of [defendant]"). It cannot be a mere coincidence that Shein only moved for a preliminary injunction after Temu became the most downloaded shopping app in the fourth quarter of 2022, with a greater number of installs than Shein in November and December 2022. Wu Decl. ¶ 3. The timing suggests that Shein fears competition, not infringement.

Temu, on the other hand, will suffer great harm if a preliminary injunction is issued. It brands Temu with a scarlet-letter that will "place [it] under an ongoing microscope in a competitive marketplace." *Ameritox, Ltd. v. Millennium Health, LLC*, No. 13-cv-832, 2015 U.S. Dist. LEXIS 79675, at *7-8 (W.D. Wis. June 19, 2015); *Nw Indus., Inc. v. B.F. Goodrich Co.*, 301 F. Supp. 706, 710-11 (N.D. Ill. 1969). Broadly enjoining Temu from acts of infringement, misleading statements, and unfair competition saddles Temu with the risk of judicial contempt as it competes, without identifying "clearly, explicitly, and specifically" what acts are prohibited. *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 842 (7th Cir. 2013). Disfavored in the Seventh Circuit, such "obey the law" injunctions violate the principle that injunctions should prohibit no more than the violation itself, are redundant of existing obligations, and problematic particularly when there has yet to be a "proven wrong," such as here in the preliminary injunction context. *Id.* at 841. This is especially salient here, where it is not clear what Temu actually did wrong when (like Shein) it simply uses referral programs and Google Ads.

An injunction here is not in the public interest. The public benefits from a competitive marketplace. *Platinum Home Mortg.*, 149 F.3d at 726. While preventing consumer confusion is also in the public interest, it must not be taken too far; trademark enforcement "should not interfere with the traditional policies of a competitive market." *Id.* Given how clearly Temu identifies itself in its ads, website, and app, any confusion is negligible, at most limited to initial

interest, and instantly ameliorated once the user is directed to Temu. *Best Vacuum, Inc. v. Ian Design, Inc.*, No. 04 C 2249, 2005 U.S. Dist. LEXIS 9795, at *53-54 (N.D. Ill. Jan. 18, 2005).

Shein claims that it only asks Temu to "compete *fairly and legally*." Motion at 16. Such an argument, as one district court put it, is "vapid," and fails to justify an injunction when there is no real threat of infringement. *Ameritox, Ltd.*, 2015 U.S .Dist. LEXIS 79675, at *7-9. It has the perverse effect of justifying injunctions against the innocent and ignores the practical harms such orders inflict. Overzealous enforcement directed at marketplace threats that Shein cannot even find runs counter to the public interest, especially when it results in competitive double-standards targeted at new entrants. *See Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 801 (N.D. Ill. 2011) (unclean hands when movant seeks to enjoin same behavior it engages in).

If an injunction is issued, Rule 65(c) requires a bond to protect a party wrongfully enjoined. *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 908-09 (7th Cir. 1986); Fed. R. Civ. P. 65(c). Shein argues it need not obtain a bond because it will likely succeed. Motion at 18. But Shein cannot avoid the obligation to protect Temu by simply declaring itself likely to win. When setting the amount of the bond at the hearing, courts should "err on the high side." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000). This is so, because it is so difficult to quantify the harm to a new competitor though the risk of derailing that entrant is high. *Glaxo Grp. Ltd. v. Leavitt*, 481 F. Supp. 2d 434, 435 (D. Md. 2007) ($3 million bond to protect new pharmaceutical drug entrant); *Philip Morris Inc. v. Star Tobacco Corp.*, 879 F. Supp. 379, 389 (S.D.N.Y. 1995) ($5 million bond to protect company expanding into cigarette market).

## VII. PLAINTIFF HAS NOT ESTABLISHED GOOD CAUSE FOR EXPEDITED DISCOVERY AGAINST TEMU

Expedited discovery is "not the norm"—the plaintiff must show good cause to receive it. *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000); *Hard*

*Drive Prods. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012). In assessing good cause, courts look at the following factors: (1) whether a preliminary injunction is pending; (2) the purpose for requesting expedited discovery; (3) the breadth of the discovery the party seeks; (4) the burden on the opposing party to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *In re Clearview AI, Inc.*, No. 21 C 135, 2021 U.S. Dist. LEXIS 238264, at *9 (N.D. Ill. May 6, 2021).

The purpose of Shein's discovery requests is not to assist with its pending preliminary injunction motion, but to find a basis for that motion. It is one thing to need expedited discovery to respond to a known, existing threat. But, Shein does not know if there is a threat—it has found no recent examples of alleged infringement across the internet and social media accounts. Courts are reluctant to allow expedited discovery for the purposes of "uncover[ing] all of the relevant facts related to the claims and defenses." *Aon PLC v. Infinite Equity, Inc.*, No. 19 C 7504, 2020 U.S. Dist. LEXIS 72661, at *4 (N.D. Ill. Apr. 23, 2020).

The discovery requests are overbroad and burdensome. The requests are not limited to the Twitter accounts and Google ads contained in the Complaint and preliminary injunction motion. Shein wants expedited discovery so it can fish for more examples of alleged infringement to add to an amended complaint. Motion at 20. And, while these requests are nominally limited to ads and social media accounts that bear Shein's marks, the requests will obligate Temu to search all documents related to any ads and social media accounts. *See* Motion Ex. B, ECF No. 24-4; *id*. Ex. C, ECF No. 24-5; *In re Clearview AI, Inc.*, 2021 U.S. Dist. LEXIS 238264, at *11 ("Equally burdensome would be to require the [d]efendant[] to compile all of the websites from which [it] collects images, and to sift through all the images collected").

The timing of these expedited requests warrants denial. Shein's delay in seeking such discovery belies its stated immediate need for documents. *See Orlando v. CFS Bancorp, Inc.*,

No. 2:13-CV-261, 2013 U.S. Dist. LEXIS 202864, at *7-8 (N.D. Ind. Oct. 10, 2013) (expedited discovery motion denied because of plaintiff's "unexplained and unwarranted delay"). If Shein brought these requests to aid the preliminary injunction hearing, that only highlights the dearth of evidence to support such a motion. To the extent the expedited discovery will take place after the preliminary injunction hearing, there is no reason to expedite. Shein's primary concern for expediency appears to be spoliation. Motion at 20-23. But, Temu's documents are protected through a litigation hold. And, there is no risk of disappearing evidence from Google and Twitter, because Temu already stipulated to expedited discovery against them.

## VIII. CONCLUSION

This motion ultimately has nothing to do with "competing lawfully." Temu complies with the law. None of the incidents were the result of any decision by Temu to disobey the law. It did not create the Twitter accounts and its rewards program rules clearly prohibit trademark infringement. Temu also did not control the specific ads that appear on Google Ads; it did not have the granular ability to prevent Google's algorithm from inserting specific keywords into the ads that were displayed after specific searches.

What should matter is "competing fairly." Both Temu and Shein operate referral programs. Temu is no more responsible for third-party fraudsters who seek to game the programs than Shein would be. Both Temu and Shein also advertise using Google Ads. No legitimate interest is served by hindering Temu's ability to do so, while Shein continues to run ads on Google that say "Shop temu store" in the headline but link to Shein products instead.

There is no basis for a preliminary injunction: there is no irreparable harm to prevent; Shein has proven it can handle any problems without judicial intervention; and there is no merit to the claims against Temu for trademark infringement. Even with a basis, the injunction would unfairly advantage Shein while inhibiting Temu's ability to compete—to the public's detriment

all while wasting judicial resources. The Court should deny the motions for preliminary injunction and for expedited discovery in their entirety.

Dated: February 24, 2023

Respectfully submitted,

By: /s/ Steven P. Mandell
Steven P. Mandell
MANDELL MENKES LLC
333 W. Wacker Dr., Suite 450
Chicago, Illinois 60606
Telephone: (312) 251-1000
Email: smandell@mandellmenkes.com

Victor H. Jih (*pro hac vice*)
Russell L. Kostelak (*pro hac vice*)
Ryan Benyamin (*pro hac vice*)
Kelly H. Yin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1900 Avenue of the Stars, 28th Floor
Los Angeles, California 90067
Telephone: (323) 210-2999
Email: vjih@wsgr.com
Email: rkostelak@wsgr.com
Email: rbenyamin@wsgr.com
Email: kyin@wsgr.com

Qifan Huang (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Email: qhuang@wsgr.com

*Counsel for Defendant WhaleCo, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a copy of the foregoing document has been served on February 24, 2023 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

/s/ Steven P. Mandell
Steven P. Mandell