## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., a private limited company organized in the country of Singapore, | CASE NO. 1:22-cv-07119 |
| | Judge: Hon. Franklin U. Valderrama |
| Plaintiff, | Magistrate Judge: Hon. Jeffrey Cummings |
| v. | |
| PDD HOLDINGS INC., a Cayman Islands corporation, and WHALECO, INC., a Delaware corporation, | JURY TRIAL DEMANDED |
| Defendants. | |

### FIRST AMENDED COMPLAINT

Plaintiff Roadget Business Pte. Ltd. ("Roadget" or "Plaintiff"), by and through its attorneys, brings this action to enjoin and seek other relief for the unlawful and infringing conduct of Defendants PDD Holdings Inc. and WhaleCo, Inc. (collectively "Defendants" or "Temu"). Temu has willfully and flagrantly infringed Roadget's exclusive and valuable trademark rights and copyright rights and has engaged in unfair competition and false and deceptive business practices, including by impersonating Roadget's well-known SHEIN brand on social media, trading off of the well-known SHEIN trademarks, and using copyrighted images owned by Roadget as part of Temu's product listings. Temu has used the SHEIN trademarks, and the goodwill associated with that brand, to unlawfully promote Temu's products and services, including its new online retail store, and to trick consumers into downloading Temu's mobile application. Roadget seeks injunctive relief and all other remedies available under the laws of the United States and the State of Illinois. Based on its knowledge of Temu's actions and upon information and belief as to other conduct, Roadget alleges as follows:

1

**NATURE OF ACTION**

1.      This is an action for (i) trademark counterfeiting in violation of the Trademark Act of 1946, 15 U.S.C. § 1114; (ii) trademark infringement in violation of the Trademark Act of 1946, 15 U.S.C. § 1114; (iii) the use of false designations of origin and unfair competition in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a); (iv) the use of false and misleading descriptions and representations in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a); (v) contributory false advertising in violation of Trademark Act of 1946, 15. U.S.C. § 1125(a); (vi) copyright infringement under 17 U.S.C. § 101 *et seq*.; (vii) trademark dilution in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(c); (viii) trademark dilution under the Illinois Trademark Registration and Protection Act, formerly the Anti-Dilution Act, 765 ILCS 1036/65; (ix) deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.; (x) deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.; (xi) unfair competition in violation of Illinois common law; (xii) product disparagement and trade libel under Illinois common law; and (xiii) unjust enrichment.

**THE PARTIES**

2.      Plaintiff Roadget Business Pte. Ltd. is a private limited company organized under the laws of the country of Singapore. Roadget is the owner of the famous SHEIN trademarks in the United States (and worldwide) and owns the website located at https://us.shein.com and the corresponding mobile application.

3.      Defendant PDD Holdings Inc. ("PDD") is a Cayman Islands corporation, with a principal place of business at 28/F, No. 533 Loushanguan Road, Changning District, Shanghai, People's Republic of China and is a publicly traded company listed on the NASDAQ exchange as "PDD". PDD previously operated as Pinduoduo Inc. until it changed its name on or around February 8, 2023.  On information and belief, PDD directly operates an e-commerce platform in China under the "Pinduoduo" brand.

4.      Defendant WhaleCo, Inc. ("WhaleCo") is a Delaware corporation with a principal place of business at 31 St. James Avenue, Boston, Massachusetts 02116. On information and belief, WhaleCo operates an online retail store in the United States under the TEMU brand at https://www.temu.com (the "Temu Website"). On information and belief, while PDD holds out Pinduoduo and TEMU as "sister companies," PDD is in fact heavily involved with the operations of WhaleCo and the marketing for the TEMU brand, including by engaging influencers for influencer marketing.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1337, and 1338(a) and (b), because the claims arise out of federal questions concerning trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, federal unfair competition pursuant to 15 U.S.C. § 1125(a), copyright infringement pursuant to 17 U.S.C. § 101, and dilution pursuant to 15 U.S.C. § 1125(c).

6.      This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to § 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7.      This Court has personal jurisdiction over WhaleCo because WhaleCo offers for sale and sells its products to consumers in Illinois, through its website at https://www.temu.com and its corresponding mobile application. Specifically, WhaleCo purposely directs its business activities toward Illinois residents, through its website and corresponding mobile application, and various unlawful social media accounts and actions, as described below, and WhaleCo derives substantial revenue from its services in Illinois. Additionally, Roadget's claims for trademark infringement, unfair competition, dilution, deceptive trade practices, copyright infringement, and product disparagement arise from acts conducted and harm sustained in the State of Illinois. WhaleCo's conduct continuous and systematic business within the State of Illinois and played an integral part in the infringement of Roadget's trademark rights using counterfeit SHEIN marks in online

advertisements and fraudulent Twitter accounts directed at residents in this judicial district. WhaleCo is committing acts that have wrongfully caused Roadget and its affiliate harm in the State of Illinois.

8.     This Court has personal jurisdiction over PDD because, on information and belief, PDD has purposely directed its business activities towards Illinois residents by, for example, sending one or more emails to influencers who are believed to be located in the State of Illinois and/or to operate businesses out of the State of Illinois, with PDD inducing those influencers to make false and deceptive statements in connection with the promotion of Temu's goods and services to customers and potential customers of Shein (defined below in Paragraph 10) nationwide, including in Illinois, in exchange for monetary payments. This court also has personal jurisdiction over PDD as WhaleCo's parent corporation, insofar as WhaleCo offers for sale and sells products to consumers in Illinois on behalf of PDD. On information and belief, PDD controls and dominates its subsidiary WhaleCo, and does business in Illinois through its subsidiary Whaleco, which merely serves as an agent for PDD in Illinois. On information and belief, Whaleco has no purpose other than to conduct business for PDD, such that WhaleCo's existence is simply a formality, and the sole purpose of WhaleCo is to serve as a U.S.-based agent that manages the operations of PDD's online retail store operating under the TEMU brand.

9.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claims occurred in this district. Particularly, Defendants are targeting consumers, and specifically the customers of Roadget's affiliate, nationwide—including those customers located within this district.

## FACTUAL BACKGROUND

### A.     The SHEIN Brand and Roadget's Valuable Intellectual Property Rights

10.     Roadget's SHEIN trademarks are used to sell a wide variety of products around the world, including in the United States, where the SHEIN-branded goods and services are primarily sold by Roadget's affiliate and licensee, Shein Distribution Corporation ("SDC") through the website at https://us.shein.com (the "SHEIN Website") and through the corresponding mobile

application (the "SHEIN Mobile App"). Roadget and SDC are collectively referred to in this Complaint as "Shein." The SHEIN trademarks are now associated with one of the most popular online fashion and lifestyle retailers in the world. In the U.S., SDC offers a wide range of products under the SHEIN trademarks and domain name, including apparel for women, men, and children, as well as everything from home goods to pet supplies. The immense and diverse products offered in connection with the SHEIN trademarks allow consumers to stay trendy without spending a fortune on apparel and essential goods.

11.     A significant contributor to the success of the SHEIN brand has been online marketing strategies on social media platforms and fashion blogs, appealing to consumers who prefer to shop online. Specifically, the SHEIN brand has partnered with thousands of influencers, celebrities, fashion bloggers and contestants on reality shows, and has started viral trends.

12.     The popularity of the SHEIN brand among consumers has skyrocketed in the last several years. In May 2021, the SHEIN Mobile App became the most downloaded shopping mobile application in the U.S. on both iOS and Android, overtaking even downloads of Amazon's mobile application. In May 2022, that same mobile application became the most downloaded mobile application in the U.S. in *any category*, outperforming both TikTok and Instagram. The SHEIN brand also has a significant presence on social media, with over 26 million followers on Instagram, 5.5 million followers on TikTok and over 500,000 followers on Twitter (collectively, the "Genuine SHEIN Social Media Accounts"). A screen capture of the official Twitter account for the SHEIN brand, @SHEIN_Official is shown below and attached as Exhibit 1 (the "Genuine SHEIN Twitter Account"):



13.     SDC offers a wide variety of SHEIN-branded goods for sale in the United States through the SHEIN Website and the SHEIN Mobile App. The SHEIN brand is extraordinarily popular, particularly with young adult consumers. A screen capture of the SHEIN Website is attached as Exhibit 2.

14.     Through the substantial growth of the SHEIN brand over the last several years, the brand has developed global name recognition and goodwill. A significant component of the success of the business associated with the SHEIN brand has been the investment in building brand recognition, including through the methods of reaching consumers outlined above, as well as through registration of various intellectual property rights.

15.     For example, Roadget owns the following "SHEIN" trademarks registered on the U.S. Principal Register:

| Mark/Name/AN/RN | Full Goods/Services |
| --- | --- |
| SHEIN (Stylized)<br><br>**SHEIN**<br><br>RN: 6224013<br>SN: 88776666<br><br>Registered 12/15/2020 | (Int'l Class: 14)<br>Jewelry; costume jewelry; necklaces; earrings; bracelets; rings; jewelry brooches; watches; hat jewelry; jewelry pins for use on hats; pins being jewelry; precious metals, unwrought or semi-wrought; jewelry accessories, namely, jewelry clips for adapting pierced earrings to clip-on earrings; jewelry findings; jewelry boxes, jewelry charms, alarm clocks, split rings of precious metal for keys |

| Mark/Name/AN/RN | Full Goods/Services |
|---|---|
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 6649062<br>SN: 87857183<br><br>Registered 2/22/2022 | (Int'l Class: 25)<br>Scarves; dresses; kimonos; shirts; tank tops; camisoles; blouses; t-shirts; knitwear, namely, knit tops, knit bottoms; sweaters; jumpers; coats; vests; parkas; capes; sweatshirts; lingerie; negligees; swimwear; jackets; blazers; leggings; jumpsuits; pants; trousers, shorts; shoes; shoes, namely, flats and pumps; heels; sandals; boots; shawls; socks; bikinis; night gowns; pajamas; bathrobes; gloves; bras; bustiers; rainwear; aprons; belts for clothing; hats |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5689042<br>SN: 87857147<br><br>Registered 3/5/2019 | (Int'l Class: 09)<br>Cell phone cases; eyeglasses; digital photo frames; bathroom scales; sunglasses; downloadable computer software in the nature of applications for purchases of clothes and fashion accessories; spectacle cases; spectacle frames; remote control apparatus for the control of televisions which the remote is designed to control; counters, namely, thread counters |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5944948<br>SN: 87857222<br><br>Registered 12/24/2019 | (Int'l Class: 16)<br>Posters; printed matter, namely, photographs in the field of fashion; paper; steel pens; drawing materials, namely, brushes; ink, namely, ink for pens, stamping ink; stationery; gummed tape for stationery or household use; stamps in the nature of stamp pads and ink stamps; seals; coasters of paper |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5893349<br>SN: 87857249<br><br>Registered 10/22/2019 | (Int'l Class: 24)<br>Bed liners in the nature of mattress covers; table liners in the nature of textile tablecloths; bed sheets; towels of textile; silk fabrics for printing patterns; travelling rugs; lap robes; pillowcases; fitted furniture covers of textile; linen cloth; canvas for tapestry or embroidery |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5893350<br>SN: 87857258<br><br>Registered 10/22/2019 | (Int'l Class: 26)<br>Hair clips; hair accessories, namely, jaw clips; hair pins; hat pins; belt buckles; bobby pins; hat ornaments not of precious metal, namely, hat trimmings |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 6649063<br>SN: 87857188<br><br>Registered 2/22/2022 | (Int'l Class: 35)<br>Advertising agency services; advisory in business management; import and export agency services; providing online marketplace for buyers of products and services; organization of exhibitions for commercial or advertising purposes; employment agency services; relocation services for companies; compiling indexes of information on the internet for commercial or advertising purposes; business auditing; sponsorship services, namely, sponsorship search, financial sponsorship search |

| Mark/Name/AN/RN | Full Goods/Services |
|---|---|
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5893348<br>SN: 87857247<br><br>Registered 10/22/2019 | (Int'l Class: 21)<br>Battery-powered applicators for applying cosmetics to eyelashes; daily used enamel plastic wares, namely, basins in the nature of receptacles, bowls, plates, pots, cups; daily use glassware, namely, cups, plates, pots, butter crocks; daily use chinaware, namely, basins in the nature of receptacles, bowls, plates, pots, coffee services in the nature of tableware, butter crocks, candle jars, trash cans; basting brushes; beverage glassware for serving liqueur; boxes for dispensing paper towels for household use; toothbrushes; toothpicks; combs |
| SHEIN (Stylized)<br>**SHEIN**<br>RN: 5840545<br>SN: 87857225<br><br>Registered 8/20/2019 | (Int'l Class: 18)<br>Bags, namely, suit bags; pocket wallets; rucksacks; attaché cases; handbags; travelling trunks; key cases; bags for sports; umbrellas; imitation leather; wallets; purses; knapsacks; suitcases; beach bags; all-purpose sports bags; book bags; travel cases; shopping bags, namely, leather shopping bag, textile shopping bag; travel kits, namely, travel cases sold empty; string bags for shopping |
| SHEIN<br>RN: 6861756<br>SN: 88107563<br><br>Registered 10/4/2022 | (Int'l Class: 25)<br>Bandanas; Beachwear; Belts; Blazers; Blouses; Bodysuits; Camisoles; Coats; Dresses; Footwear; Gloves; Headwear; Jackets; Jeans; Jumpsuits; Kimonos; Leggings; Lingerie; Loungewear; Pants; Robes; Rompers; Scarves; Shirts; Shorts; Skirts; Sleepwear; Socks; Sweaters; Sweatshirts; Swimwear; T-shirts; Tights; Tops as clothing; Underwear; Vests |
| SHEIN<br>RN: 6861757<br>SN: 88107571<br><br>Registered 10/4/2022 | (Int'l Class: 35)<br>On-line retail store services featuring clothing, clothing accessories, hair accessories, bags, purses, footwear, headwear, jewelry, sunglasses, belts for clothing, makeup, bedding, and cell phone cases and accessories |
| SHEIN (Stylized)<br>***SheIn***<br>RN: 5256688<br>SN: 86526588<br><br>Registered 8/1/2017 | (Int'l Class: 14)<br>Jewelry; costume jewelry; necklaces; earrings; bracelets; rings; brooches; watches; hat ornaments of precious metal; pins being jewelry<br><br>(Int'l Class: 18)<br>Wallets; handbags; purses; knapsacks; suitcases; beach bags; all-purpose sports bags; book bags; travel utensils made of leather, namely, travel cases; shopping bags, namely, leather shopping bag, textile shopping bag; travel kits, namely, travel cases; string bags for shopping<br><br>(Int'l Class: 25)<br>Scarves; dresses; kimonos; shirts; tank tops; camisoles; blouses; T-shirts; knitwear, namely, knit tops, knit bottoms; sweaters; jumpers; coats; vests; parkas; capes; sweatshirts; lingerie; negligees; swimwear; jackets; blazers; leggings; jumpsuits; pants; trousers; shorts; shoes; flats; pumps; heels; sandals; boots; shawls; socks; bikinis; night gowns; pajamas; bathrobes; gloves; bras; bustiers; rainwear; aprons; belts for clothing; hats<br><br>(Int'l Class: 26) |

| Mark/Name/AN/RN | Full Goods/Services |
|---|---|
| | Hair clips; hair accessories, namely, jaw clips; hair pins; hat pins; belt buckles; Bobby pins; hat ornaments not of precious metal |
| | (Int'l Class: 35) Online retail store services in the fields of clothing, accessories, footwear, and jewelry |

Copies of these trademark registrations are attached as Exhibit 3 (the "SHEIN Marks").

16.     The trademark registrations for the SHEIN Marks are valid and subsisting.

17.     The SHEIN Marks serve as unique source identifiers for the online retail store services and products offered and sold through the SHEIN Website and the SHEIN Mobile App.

18.     The SHEIN Marks have become well known by Illinois and U.S. consumers through extensive investments in advertising. As a result of the success and popularity of the SHEIN brand and through extensive promotional efforts, the SHEIN Marks are famous, distinctive, and widely recognized by the general consuming public of both the State of Illinois (or of a geographic area within this State), and the United States.

19.     To further protect the investment in the SHEIN brand, Roadget also owns a number of copyrights, including the following copyrights registered with the U.S. Copyright Office for promotional images on the SHEIN Website and/or the SHEIN Mobile App:

| Copyright Reg. Number | Deposit Copy of Work | |
|---|---|---|
| VA0002320444 |  | |

| Copyright Reg. Number | Deposit Copy of Work |
|---|---|
| VA0002320442 |  |
| VA0002320439 |  |
| VA0002325368 |  |

Copies of copyright registration certificates for the above registrations are attached as Exhibit 4, and are collectively referred to as the "SHEIN Registered Copyrights."

20.     In addition to the many images that have been registered with the U.S. Copyright Office, Roadget owns several copyright applications for other images that are, or have been, displayed on the SHEIN Website and/or the SHEIN Mobile App that are pending with the U.S. Copyright Office, including the following:

| Copyright Appl. Number | Deposit Copy of Work | |
|---|---|---|
| Pending case number 1-11856789081 |  | |
| Pending case number 1-11857010711 |  | |
| Pending case number 1-11857095562 |  | |

21.    The copyright applications referenced in Paragraph 18 are collectively referred to

herein as the "SHEIN Copyright Applications."[1]

---

[1] Roadget is not currently asserting the SHEIN Copyright Applications in this First Amended Complaint, but intends to further amend this Complaint once these applications mature to registration.

22.     The copyright registrations for the SHEIN Registered Copyrights are valid and enforceable.

23.     The images associated with the SHEIN Registered Copyrights and the SHEIN Copyright Applications (collectively, the "SHEIN Copyrights") are included as part of product listings on the SHEIN Website and/or the SHEIN Mobile App.

**B.     Defendants and Their Wrongful Conduct**

24.     Temu launched its U.S. online shopping website called TEMU on September 1, 2022, which is available at https://www.temu.com and through a mobile application. Like the SHEIN Website and the SHEIN Mobile App, the TEMU-branded website and app offer a wide variety of products for sale, including apparel and footwear, beauty and health, home and garden, electronics, office products, and pet supplies.

25.     On information and belief, Temu entered the U.S. market with the specific intent to directly compete with Shein. In fact, as soon as Temu launched in the U.S., multiple independent publications compared Temu to Shein and one even called Temu "a Shein imitator," as shown below:



(Exhibit 5 RetailWire, https://retailwire.com/discussion/will-temu-have-shein-like-success-as-it-goes-online-in-the-u-s/.)

PINDUODUO · SHEIN · TEMU

# Temu, a Shein imitator, lands in the US. Will it be able to stir up the market?

 Rebbeca Ren  posted on September 2, 2022 8:29 am

(Exhibit 6, PingWest, https://en.pingwest.com/a/10723.)

DIRECT-TO-CONSUMER

## Shein's New Rival, Explained

Pinduoduo is a giant in China but relatively unknown in America. It's looking to change that with a new app, Temu, that sells ultra-cheap clothing, with thousands of new items added daily. Sound familiar?

(Exhibit 7 Business of Fashion, https://www.businessoffashion.com/articles/direct-to-consumer/sheins-new-rival-explained/.)

26.     The characterization of Temu as "a Shein imitator" has turned out to be prescient, with Temu actively and deliberately imitating and *pretending to be* Shein using imposter social media accounts and posts to divert consumers and business away from purchasing SHEIN-branded goods in favor of purchasing goods from Temu.

27.     Before Temu launched in the U.S., Temu was aware of the well-known SHEIN brand, and the extensive investment in that rapidly growing brand. On information and belief, Temu has actual knowledge of the SHEIN Marks and the images associated with the SHEIN Copyrights, and has visited the SHEIN Website, the SHEIN Mobile App, the Genuine SHEIN Twitter Account and the Genuine SHEIN Social Media Accounts on multiple occasions, while developing, planning to launch, and since launching its online retail store in the U.S.

28.     On information and belief, Temu considers Shein to be one of the biggest competitors – if not *the* biggest competitor – for the newly-introduced TEMU brand. On information and belief, Temu's chief marketing strategies include persuading customers of SDC to purchase products from Temu instead of purchasing SHEIN-branded products, and attempting to persuade loyal customers of Shein to switch their loyalty to Temu—and Temu has decided to

13

carry out these marketing strategies by actively deceiving consumers and by pretending to be Shein through online platforms such as Twitter. Competing with Shein is central to Temu's marketing strategies, and its infringement of the SHEIN Marks and its use and reproduction of the images associated with the SHEIN Copyrights are willful, tactical, and strategic choices, deliberately made by Temu in an effort to divert consumers of Shein to Temu.

29.     Instead of Temu fairly competing by, for example, offering comparable products at a lower price or by offering a more diverse array of products for selection and purchase by consumers, Temu has deliberately been engaging in unfair competition by exploiting the SHEIN brand and pretending to be Shein online to promote Temu's own brand, products, and services. Temu's unlawful activity includes trademark infringement, counterfeiting, copyright infringement, false advertising, and unlawful business practices, with the intent to divert customers for SHEIN-branded goods and deceive them into downloading Temu's app or buying from Temu instead.

### i.     Temu's Fraudulent Twitter Accounts

30.     Temu has embarked on a deliberate scheme of impersonating, or aiding and abetting the impersonation of, Shein.

31.     To accomplish this goal, Temu and/or third parties acting at Temu's direction and on its behalf have created and operated or controlled, directly or indirectly, false, fake, and fraudulent Twitter accounts that incorporate the SHEIN Marks and that have pretended to be Shein in the eyes of consumers, such as @SHEIN_DC, @SHEIN_USA_, and @SHEIN_NYC (the "Imposter Twitter Accounts"), as shown below, and attached as Exhibit 8:







32.     Temu has used the Imposter Twitter Accounts to falsely suggest that it is associated with the SHEIN brand or that it *is* "SHEIN" (i.e., the official Twitter outlet/handle for Shein), by using spurious marks that are identical to or substantially indistinguishable from the SHEIN Marks (the "Counterfeit SHEIN Marks").

33.     Temu has been attempting to impersonate Shein by using the Counterfeit SHEIN Marks with the Imposter Twitter Accounts, including through the use of the Counterfeit SHEIN Marks in the handles for the Imposter Twitter Accounts and through providing links in the profile sections of the Imposter Twitter Accounts to authentic domain names owned by Roadget, such as <shein.com>, and through the use of the same profile icons and profile photos in the Imposter Twitter Accounts as the Genuine SHEIN Twitter Account.

34.     Temu has even gone so far as to intentionally and deliberately create the false impression that the Imposter Twitter Accounts have as many followers as the Genuine SHEIN Twitter Account in its efforts to impersonate Shein, by displaying in the profile section of the Imposter Twitter Accounts the number of followers of the Genuine SHEIN Twitter Account using the same formatting that Twitter uses to display the real statistic for each account – even though

the Imposter Twitter Accounts only have a few followers. An example of this is highlighted below in a side-by-side comparison chart:



| Genuine SHEIN Twitter Account (Exhibit 1) | Temu's Imposter Twitter Account (Exhibit 8) |
|---|---|

35. Temu has also attempted to impersonate Shein and trick consumers into believing Temu is associated with that brand by retweeting authentic posts from the Genuine SHEIN Twitter Account and using authentic hashtags associated with the SHEIN brand, such as #SHEIN, #SHEINforall, and #SHEINSS22:



36.     Temu created and has used the Imposter Twitter Accounts and the Counterfeit SHEIN Marks to unlawfully promote its own fledgling e-commerce website and mobile application and to trick consumers into downloading the Temu mobile application.

37.     Temu has lured consumers, including customers or potential customers of Shein, into viewing and interacting with the Imposter Twitter Accounts through the use of the Counterfeit SHEIN Marks. Temu then took advantage of this attention with posts on the Imposter Twitter Accounts that are intended to divert consumers from buying SHEIN-branded products to using Temu instead for their purchases (the "Deceptive Twitter Posts"). In some cases, the Deceptive Twitter Posts have told consumers to join Temu while prominently using and displaying the Counterfeit SHEIN Marks, and while "winking" at those consumers about its appreciation for "supporting the new twitter [account] of SHEIN":



38.     Other Deceptive Twitter Posts have deceived consumers into downloading the Temu application by embedding innocuous links in them that only display the Counterfeit SHEIN Marks. Those posts, which do not have any Temu branding, direct consumers to "Download APP from link":



Those links, however, did not direct consumers to download the SHEIN Mobile App, but instead directed them to *Temu's* website to download *the Temu app*, as shown in the screen capture below:



39. The Counterfeit SHEIN Marks used by Temu on the Imposter Twitter Accounts are identical to and confusingly similar to the SHEIN Marks in appearance, sound, meaning, and commercial impression.

40. The Counterfeit SHEIN Marks, as used by Temu on the Imposter Twitter Accounts, falsely suggest that Temu is affiliated with, or is, Shein.

41. Temu created and has used the Imposter Twitter Accounts to trade off the recognition and goodwill of the SHEIN Marks in order to capture the attention of actual and potential customers of SHEIN-branded goods, and to divert those people into becoming customers of Temu.

42. Consumers who encountered Temu's Imposter Twitter Accounts would be likely to falsely believe that those accounts were operated by Shein. As a result, such consumers may believe that Temu's website and mobile application, which appear to have been advertised and promoted by "SHEIN" on the Imposter Twitter Accounts, is sponsored by, or associated with, Shein.

43.     On information and belief, Temu has earned significant profits from this wrongful conduct, with ongoing ripple effects that continue to this day. Temu's U.S.-based website and mobile application did not even exist a mere six months ago – and the TEMU brand was completely unknown to U.S. consumers at that time. Temu deliberately and strategically launched its website and mobile application in the U.S. while riding off the coattails of the SHEIN brand. Temu did this, for example, by, directly or indirectly, impersonating the SHEIN brand through the Imposter Twitter Accounts, and by using those accounts to direct consumers to buy products on Temu.com and/or to download the Temu mobile application, all the while suggesting to consumers that "SHEIN" (i.e., the Imposter Twitter Accounts, whom consumers believe to be associated with the SHEIN brand) is actively promoting the newly-launched Temu website and mobile application. On information and belief, this unlawful conduct caused U.S. consumers who would otherwise never have heard of Temu to purchase goods through Temu's website or mobile application, instead of purchasing SHEIN-branded goods through the SHEIN Website or the SHEIN Mobile App. Moreover, on information and belief, at least some of those diverted consumers (who only heard of Temu by virtue of its wrongful and infringing conduct) later spread the word to other U.S. consumers about their purchases through Temu. On information and belief, Temu would not be as successful or recognized today if Temu's fraudulent misuse of the SHEIN brand was not foundational to Temu's initial launch in the U.S.

44.     Temu's infringement of the SHEIN Marks has been knowing and willful. Temu was on constructive notice of the SHEIN Marks by virtue of their federal registrations. Further, because Temu considers the SHEIN brand to be its biggest competition, Temu had actual knowledge of Roadget's trademark rights in the SHEIN Marks, regardless of their status of registration. In fact, Temu has actively tried to hire at least some employees of Roadget and/or its affiliate(s).

45.     Temu has deliberately used counterfeit imitations of the SHEIN Marks on its Imposter Twitter Accounts. Temu knows it never asked Roadget for permission to use any of the SHEIN Marks. Temu also knows that Roadget would never agree to allow a company like Temu,

which directly competes with Shein, to use Roadget's SHEIN Marks to pretend to be "SHEIN" on social media. These days, social media is where businesses and brands can most efficiently reach their consumers. Temu knows this, which is why Temu deliberately created the Imposter Twitter Accounts – to confuse and divert consumers of SHEIN-branded goods away from Shein, to instead purchase from Temu.

46.     On November 1, 2022, Roadget sent Temu a letter demanding that it immediately and permanently cease and desist from any further infringement of Roadget's intellectual property rights. A copy of that letter is attached as Exhibit 9. Temu ignored that letter.

47.     On November 18, 2022, Roadget resent the demand letter to Temu and began contacting Temu's trademark counsel via email and telephone. Despite repeated follow-ups with Temu's counsel, Temu and its counsel have continued to ignore Roadget.

### ii.     Temu's Infringement of the SHEIN Registered Copyrights

48.     Without the permission or authorization of Roadget, Temu has also used and continues to use copyrighted images owned by Roadget in connection with the sale and distribution of goods on Temu's website.

49.     Specifically, without the permission or authorization of Roadget, and with access and knowledge of the material covered by U.S. Copyright No. VA0002320444, Temu has directly reproduced, distributed, and displayed the copyrighted image with the sale and distribution of a "Girls Casual Patchwork Striped Embroidered Pullover T-Shirt." A comparison of the copyrighted material and Temu's product listing is below and attached as Exhibit 10:

| Copyrighted Material | Temu's Product Listing |
|---|---|



50.     Without the permission or authorization of Roadget, and with access and knowledge of the material covered by U.S. Copyright No. VA0002320442, Temu has directly reproduced, distributed, and displayed the copyrighted image with the sale and distribution of a "Girls Khaki Belt Tunic Trench Coat." A comparison of the copyrighted material and Temu's product listing is below and attached as Exhibit 10:

| Copyrighted Material | Temu's Product Listing |
|---|---|



51.     Without the permission or authorization of Roadget, and with access and knowledge of the material covered by U.S. Copyright No. VA0002325368, Temu has directly reproduced, distributed, and displayed the copyrighted image with the sale and distribution of a "2pc Boys Autumn Long Sleeve Set Kids Fashion Sports Casual Set." A comparison of the copyrighted material and Temu's product listing is below and attached as Exhibit 10:

| Copyrighted Material | Temu's Product Listing |
|---|---|
|  | |

52.     Without the permission or authorization of Roadget, and with access and knowledge of the material covered by U.S. Copyright No. VA0002320439, Temu has directly reproduced, distributed, and displayed the copyrighted image with the sale and distribution of "Girls' Casual Skinny Buttoned Trousers Flared." A comparison of the copyrighted material and Temu's product listing is below and attached as Exhibit 10:

| Copyrighted Material | Temu's Product Listing |
|---|---|
|  | |

53.     Without the permission or authorization of Roadget, and with access and knowledge of images on the SHEIN Website and/or the SHEIN Mobile App, Temu has also reproduced, distributed, and displayed works that are subject to currently pending copyright applications at the U.S. Copyright Office, namely pending Case Nos. 1-11856789081, 1-11857010711, and 1-11857095562. Roadget intends to amend this Complaint once the Copyright

Office acts on these copyright applications. A comparison of that material and Temu's product listings is below and attached as Exhibit 10:



| Pending Copyright Applications | Temu's Product Listings |

| Pending Copyright Applications | Temu's Product Listings |
|---|---|
|  | |

54.     Temu is using copyrighted images that are owned by Roadget, without a license from Roadget.

55.     Temu's infringement has at all times been knowing and willful. As a direct competitor, Temu has knowledge of the SHEIN Website and the SHEIN Mobile App, and it actively monitors each of same to sell competing (and sometimes identical) products. Moreover, Roadget sent Temu a cease-and-desist letter addressing infringement of the SHEIN Copyrights. (*See* Exhibit 9.) Temu ignored that letter and continued to infringe the SHEIN Copyrights.

56.     On or around November 8, 2022, SDC, as Roadget's affiliate and licensee, sent a Copyright Infringement Notice to the Designated Agent to receive Notifications under the DMCA for the Temu Website pursuant to the instructions on the Temu Website at https://www.temu.com/intellectual-property-policy.html. (*See* Exhibit 11.) While the registration certificates for the SHEIN Registered Copyrights identify the owner of those copyrights as Guangzhou Shein International Import & Export Co. Ltd., those registrations were assigned to Roadget after they issued. In the DMCA takedown notice of Exhibit 11, an individual acting on behalf of Roadget's affiliate and licensee, SDC, certified that he had "the authority to act ***on behalf of the owner***" of the copyrights at issue (emphasis added) (*i.e.*, Roadget).

57.     As of this filing, at least one of the webpages containing infringing images listed in that Copyright Infringement Notice is still available on the Temu Website. Thus, at least in part, Temu ignored that notice, as well as the notice given by the initial Complaint in this case (Dkt. No. 1) and continued to infringe the SHEIN Copyrights.

58.     On information and belief, Temu or its agents posted the images associated with the SHEIN Registered Copyrights on the Temu Website.

59.     On information and belief, Temu intends to continue using the images associated with the SHEIN Copyrights without the authorization of Roadget.

60.     Temu is intentionally using the infringing images to profit off the original, creative works over which Roadget has exclusive rights.

### iii.     Temu's Unlawful Influencer Pitch

61.     On information and belief, Temu has also been disseminating false and deceptive statements regarding Shein products to influencers and inducing them to make such statements in connection with the promotion of Temu's goods and services to their followers in exchange for monetary payments. In particular, Temu is providing influencers with social media guidelines (the "Influencer Guidelines") that contain the following statements to use for posting (the "Influencer Statements"):

> "Shein is not the only cheap option for clothing! Check Temu.com out, cheaper and way better quality"; and

> "Looking for clothes better than Shein but cheaper than revolve? Check Temu.com out."

A copy of the Influencer Guidelines is attached as Exhibit 12.

62.     For example, Temu sent Influencer 1[2] an email on October 6, 2022 attaching the Influencer Guidelines, containing the Influencer Statements that were intended to be used with

---

[2] Influencer 1 has worked for both the SHEIN and TEMU brands and publicizing the identity of Influencer 1 could jeopardize Influencer 1's relationship with either brand. Plaintiff will provide the identity of Influencer 1 when so requested by the Court or as required by law, and on a confidential basis.

posts to be made on Instagram and YouTube. A copy of the email chain and its attachments are collectively attached as Exhibit 13. On information and belief, the email attached as Exhibit 13 is representative of numerous emails sent by Temu to influencers, each of which is likely to contain the same or similar content. However, the identities of the individuals to whom Temu sent those numerous emails are known only to Temu, and Plaintiff expects that discovery will identify the identities of these email recipients.

63.     The Influencer Statements are false and misleading because the clothes sold on Temu.com are not less expensive and not of "way better quality" than those sold on the SHEIN Website and/or through the SHEIN Mobile App.

64.     On information and belief, some influencers have posted the Influencer Statements on social media at the direction of Temu.

65.     For example, on October 1, 2022, around the time Temu launched, Catherine Quirico ("Quirico"), a popular influencer, posted the Influencer Statements on Instagram, a platform where she has over 137,000 followers. The post was liked by over 4,800 people and almost 200 users commented on the post. Quirico also acknowledges in the post that she has a "Paid partnership with shoptemu".



A true and correct copy of the Quirico Instagram post is attached as Exhibit 14.

66.     As another example, on January 18, 2023, Maureen Rainha ("Rainha"), using the social media account, @couponingwithmaureen, with over 2,000 followers on Instagram, posted a similar advertisement featuring the Influencer Statements:



A true and correct copy of the Rainha Instagram post is attached as Exhibit 15.

67.     Temu had no reason to believe that the Influencer Statements were true at the time they were distributed to influencers or disseminated to the public.

68.     On information and belief, Roadget has been harmed by the Influencer Statements. By disseminating the Influencer Statements to the influencers, Temu committed false advertising by telling the influencers that Temu products are cheaper and higher quality than SHEIN-branded products. Roadget was also harmed by the Influencer Statements because Temu induced influencers to further disseminate the Influencer Statements.

### iv. Temu's Unlawful Advertising

69.     On information and belief, beyond using Twitter in relation to the Imposter Twitter Accounts, Temu used other channels to carry out its scheme of infringement and to deceive U.S. customers.

70.     Roadget discovered advertisements on Google in the U.S. (and worldwide) that use the SHEIN Marks deceptively to promote the Temu Website:

(*See* Exhibit 16, collectively, the "Infringing Ads").

71.     The Infringing Ads prominently display "SHEIN" in the headline of the ad in a larger, bolded, and colored font, with the mark "Temu" only being mentioned in tiny gray font within the body of the ad and within the URL for the Temu Website at the top of the ad, as shown above.

72.     Consumers who see any of these Infringing Ads that incorporate the SHEIN Marks are likely to be deceived into believing that Temu is SHEIN, is associated with the SHEIN brand, or that SHEIN-branded products are offered for sale through the Temu Website.

73.     Consumers are likely to be deceived and/or confused by Temu's Infringing Ads because of how similar they look when compared to the advertisements for the SHEIN brand disseminated by Roadget and/or its affiliates or licensees. A comparison of Temu's Infringing Ads and a Genuine Shein Advertisement is shown below (and reflected in Exhibits 16 and 17):

| | |
|---|---|
| Genuine Shein Advertisement: | **Ad** · https://us.shein.com/ ⋮<br><br>**SHEIN Official Online Store - Free Shipping**<br><br>New Trends in Clothes. High Quality, Up to 85% Off. Free Shipping Available! Free Return. Browse a wide range of Hot Sale Clothes. Big Savings, Limited Time Only. Free Return. Size Guide. 15% Off First Order. Customer Service Focused. Quick & Secure Checkout. |
| Temu's Infringing Ads: | **Ad** · https://www.temu.com/ ⋮<br><br>**SHEIN - Starting From $0.99**<br><br>Awesome Price With Good Quality Here On Temu. New Users Can Enjoy Free Shipping As A Plus. Unbelievably Low Price For High-Quality Storage On Temu. Free 90-Day Returns...<br>The Treat-Yourself Sale · Men's Clothing · Kids' Fashion · Women's Fashion · Baby Products<br>Deal: 30% off For Everything<br><br>广告 · https://www.temu.com/ ▾<br><br>**SHEIN - Don't Miss These Great Deals**<br><br>Awesome Price With Good Quality Here On Temu. New Users Can Enjoy Free Shipping As A Plus. Unbelievably Low Price For High-Quality Storage On Temu. Free 90-Day Returns...<br>The Treat-Yourself Sale · Kids' Fashion · Kids' Collection · Jewelry And Accessories<br>Deal: 30% off For Everything |

(*Compare* Exhibit 16 to Exhibit 17).

74.     When consumers click on the Infringing Ads they are directed to the Temu Website, where no SHEIN-branded products are offered for sale.

75.     On information and belief, customers and potential customers who wish to visit the SHEIN Website are lured into viewing and interacting with the Temu Website instead.

76.     On information and belief, Temu is diverting consumers from visiting the SHEIN Website and/or from buying SHEIN-branded products and luring those consumers into buying Temu's products through the unlawful use of the SHEIN Marks.

## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING
## (15 U.S.C. § 1114)

77.　　Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

78.　　Plaintiff owns the SHEIN Marks.

79.　　The SHEIN Marks are fanciful and arbitrary and are associated in the minds of the public and consumers with Plaintiff.

80.　　Defendants are using marks that are identical to or indistinguishable from genuine SHEIN Marks in association with the promotion of its online retail store services, without Plaintiff's approval, authorization, or consent.

81.　　Defendants' use of the Counterfeit SHEIN Marks with the Imposter Twitter Accounts and Infringing Ads has been likely to cause confusion in the minds of the public, leading the public to falsely believe that Defendants' online retail store services originate from Plaintiff and/or that Plaintiff has approved, sponsored, or otherwise associated itself with the goods and services offered for sale and/or distributed by Defendants.

82.　　Defendants' use of the Counterfeit SHEIN Marks without Plaintiff's authorization or consent constitutes a willful and intentional infringement of the SHEIN Marks.

83.　　Defendants' conduct is intended to exploit the strong reputation and goodwill that is exclusively associated with the SHEIN Marks, to take an unfair competitive advantage of the SHEIN Marks' goodwill without any expenditure of Defendants' own resources.

84.　　Plaintiff has no control over the quality of the goods or services marketed and/or sold by Defendants. Because of the likelihood of confusion as to the source of Defendants' goods and/or services, or as to whether Defendants' goods and/or services are sponsored or endorsed by, or affiliated with, Plaintiff, in view of Defendants' blatant use of the SHEIN Marks in the Imposter Twitter Accounts and Infringing Ads to lure in consumers, and hype up Defendants using the Imposter Twitter Accounts, Plaintiff's valuable goodwill in the SHEIN Marks is at the mercy of, and being irreparably harmed by, Defendants.

85.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

86.     Plaintiff has no adequate remedy at law.

87.     As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

**COUNT II**
**FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1114)**

88.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     Defendants are using marks that are identical to or indistinguishable from genuine SHEIN Marks in association with the promotion of its online retail store services, without Plaintiff's approval, authorization, or consent.

90.     Defendants' use of the Counterfeit SHEIN Marks with the Imposter Twitter Accounts and Infringing Ads has been likely to cause confusion in the minds of the public, leading the public to falsely believe that Defendants' online retail store services originate from Plaintiff and/or that Plaintiff has approved, sponsored, or otherwise associated itself with the goods and services offered for sale and/or distributed by Defendants.

91.     Defendants' use of the Counterfeit SHEIN Marks without Plaintiff's authorization or consent constitutes a willful and intentional infringement of the SHEIN Marks in violation of 15 U.S.C. § 1114.

92.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

93.     Plaintiff has no adequate remedy at law.

94.     As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT III
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATIONS OF ORIGIN
### (15 U.S.C. § 1125(a)(1)(A))

95. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

96. Defendants' use of the Counterfeit SHEIN Marks constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that Defendants' online retail services, as well as variety of goods for sale, are associated with or sponsored by Plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

97. Upon information and belief, Defendants intentionally adopted and used the Counterfeit SHEIN Marks to create consumer confusion and traffic off the reputation and goodwill associated with the SHEIN Marks.

98. Plaintiff has no control over the quality of the goods or services marketed and/or sold by Defendants. Because of the likelihood of confusion as to the source of Defendants' goods and/or services, or as to whether Defendants' goods and/or services are sponsored or endorsed by, or affiliated with, Plaintiff, in view of Defendants' blatant use of the SHEIN Marks in the Imposter Twitter Accounts and Infringing Ads to lure in consumers and hype up Defendants using the Imposter Twitter Accounts and Infringing Ads, the valuable goodwill in the SHEIN Marks is at the mercy of, and being irreparably harmed by, Defendants.

99. Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff. Among other things, Defendants' actions have caused and are continuing to cause monetary harm (through lost sales) as well as harm to Plaintiff's brands, goodwill, and reputation.

100. Plaintiff has no adequate remedy at law.

101. As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

<u>**COUNT IV**</u>
**FEDERAL FALSE ADVERTISING**
**(15 U.S.C. § 1125(a)(1)(B))**

102.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

103.    Upon information and belief, Defendants intentionally created the Imposter Twitter Accounts and the Infringing Ads to mislead consumers. Defendants also disseminated the Influencer Statements to an audience of influencers, including Influencer 1, Quirico, Rainha, and others, thereby falsely stating to that audience that the clothes sold on Temu.com are less expensive and of "way better quality" than those sold on the SHEIN Website and/or through the SHEIN Mobile App. The Imposter Twitter Accounts, Infringing Ads and Influencer Statements were false or misleading, and had the capacity to deceive, and that deception had a material effect on the purchasing decision of the audience of influencers and others. The Imposter Twitter Accounts, Infringing Ads and Influencer Statements also have a material effect on interstate commerce by persuading consumers (including the influencers) to purchase from Defendants instead of Shein. As a result of Temu disseminating the Imposter Twitter Accounts, Infringing Ads and Influencer Statements to at least the influencers, Plaintiff has been injured, or is likely to be injured by the Influencer Statements.

104.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff. Among other things, Defendants' actions have caused and are continuing to cause monetary harm (through lost sales) as well as harm to Plaintiff's brands, goodwill, and reputation.

105.    Plaintiff has no adequate remedy at law.

106.    As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

34

## COUNT V
## CONTRIBUTORY FALSE ADVERTISING
## (15 U.S.C. § 1125(a))

107.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

108.    On information and belief, Defendants disseminated the Influencer Statements to third-party influencers, including Influencer 1, Quirico, Rainha, and others, who are believed to have published the Influencer Statements. Apart from Influencer 1, Quirico, and Rainha, however, the identities of all of the other influencers to whom Defendants disseminated the Influencer Statements are known only to Defendants. Moreover, because of difficulty of searching for social media posts and the fact that many internet search engines do not regularly index social media posts, Plaintiff is currently unable to identify additional examples of social media posts reflecting the content of the Influencer Statements without conducting discovery into third parties like Instagram, YouTube, and others. The Influencer Statements were false or misleading to consumers, and had the capacity to deceive consumers, where that deception had a material effect on the consumer's purchasing decision. The Influencer Statements have a material effect on interstate commerce by persuading consumers to purchase from Defendants instead of SHEIN-branded products. As a result of the Influencer Statements, Plaintiff has been injured, or is likely to be injured by the Influencer Statements.

109.    Defendants directly engaged with the third-party influencers' false advertising by drafting the false and misleading statements and, on information and belief, contracting with third party influencers to publish and disseminate those statements to consumers.

110.    Defendants contributed to the third-party influencer's conduct by knowingly inducing the third-party influencers to publish false and misleading representations of fact, and by materially participating in that conduct by drafting the false and misleading representations of fact, and by encouraging third-party influencers to disseminate the Influencer Statements via social media posts.

111.    Through its relationship with the third-party influencers, Defendants had direct control over the false and misleading Influencer Statements posted by the influencers.

112.    Defendants' inducement of third parties to post false and misleading statements has injured Plaintiff.

113.    Defendants' aforesaid acts have caused, and unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff. Among other things, Defendants' actions have caused and are continuing to cause monetary harm (through lost sales) as well as harm to Plaintiff's brands, goodwill, and reputation.

114.    Plaintiff has no adequate remedy at law.

115.    As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT VI
## COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 101 *et seq.*)

116.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

117.    Plaintiff is the exclusive owner of the SHEIN Registered Copyrights for images of Plaintiff's products. (Exhibit 4.) The copyright registrations associated with same are valid and enforceable.

118.    Defendants had access to the SHEIN Registered Copyrights by virtue of the SHEIN Website and/or SHEIN Mobile App, which are publicly available.

119.    Defendants directly copied and/or created derivative works from the SHEIN Registered Copyrights for its infringing products offered for sale by Defendants.

120.    In copying the SHEIN Registered Copyrights, Defendants have violated the copyright laws of the United States, under 17 U.S.C. § 101 et seq.

121.    While Plaintiff is not asserting the SHEIN Copyright Applications at this time, Plaintiff intends to amend this pleading once those applications mature to registration.

122. By reason and as a direct result of these acts of copyright infringement by Defendants, Plaintiff has suffered great and irreparable damage, the full extent of which is currently unknown, while Defendants position itself for unjust enrichment at Plaintiff's substantial expense. Plaintiff is suffering, and will continue to suffer, great and irreparable damage unless and until Defendants is enjoined by this Court.

## COUNT VII
## FEDERAL TRADEMARK DILUTION
## (15 U.S.C. § 1125(c))

123. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

124. Through the longstanding and widespread use of the SHEIN Marks in the United States, the SHEIN Marks have become impressed upon the minds of the relevant trade and consuming public as identifying the SHEIN brand, owned by Roadget. As a result, the SHEIN Marks are famous, distinctive, and widely recognized by the general consuming public in the United States, and the SHEIN Marks were famous and distinctive prior to Defendants' acts set forth above. Defendants' acts have diluted the distinctive quality of the famous SHEIN Marks, in violation of 15 U.S.C. § 1125(c).

125. Defendants engaged in the aforesaid acts with the intent to trade off Plaintiff's reputation and/or to cause dilution of the famous SHEIN Marks.

126. Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

127. Plaintiff has no adequate remedy at law.

128. As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT VIII
## TRADEMARK DILUTION UNDER THE
## ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT
## (765 ILCS 1036/65)

129.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

130.    Through the longstanding and widespread use of the SHEIN Marks in Illinois and in the United States, the SHEIN Marks have become impressed upon the minds of the relevant trade and consuming public as identifying the SHEIN brand, owned by Roadget. As a result, the SHEIN Marks are famous, distinctive, and widely recognized by the general consuming public in the State of Illinois, and/or within a geographic area in the State of Illinois. The SHEIN Marks were famous and distinctive prior to Defendants' acts set forth above. Defendants' acts have diluted the distinctive quality of the famous SHEIN Marks, in violation of the Illinois Trademark Registration and Protection Act, formerly known colloquially as the "Anti-Dilution Act," 765 ILCS 1036/65.

131.    Defendants engaged in the aforesaid acts with the intent to trade off Plaintiff's reputation and/or to cause dilution of the famous SHEIN Marks.

132.    Defendants' aforesaid acts are greatly diminishing and blurring the source-identifying capability of the SHEIN Marks.

133.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

134.    Plaintiff has no adequate remedy at law.

135.    As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial, insofar as Defendants willfully intended to cause dilution of the SHEIN Marks, and Plaintiff is entitled to the remedies set forth in 765 ILCS 1036/65.

## COUNT IX
### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510)

136.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

137.    On information and belief, Defendants' acts of creating and disseminating the Infringing Ads, and creating and operating the Imposter Twitter Accounts, as described above, and using the Counterfeit SHEIN Marks with those accounts to trick consumers into buying products from Defendants or downloading Defendants' mobile application, were made with the intent to cause a likelihood of confusion, or of a misunderstanding as to the source, ownership and/or association with SHEIN-branded goods and services.

138.    On information and belief, Defendants have willfully engaged in the deceptive trade practices complained of herein.

139.    Defendants' acts constitute unlawful and unfair competition in violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510, in that such acts were and are unlawful, unfair, deceptive, and/or fraudulent business acts.

140.    On information and belief, Defendants have willfully engaged in the deceptive trade practices complained of herein.

141.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

142.    Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure Plaintiff, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its intellectual property.

143.    Defendants have unjustly gained revenue and profits by virtue of its wrongful acts that it otherwise would not have obtained and to which it is not entitled.

144.    Plaintiff has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

145.    Plaintiff has no adequate remedy at law for the wrongful actions of Defendants.

**COUNT X**
**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505)**

146.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

147.    On information and belief, Defendants' acts of creating and disseminating the Infringing Ads, and creating and operating Imposter Twitter Accounts, as described herein, and using the Counterfeit SHEIN Marks with those accounts to trick consumers into buying products from Defendants or downloading Defendants' mobile application, have been made with the intent of causing a likelihood of confusion, or of a misunderstanding as to the source, ownership and/or association with SHEIN-branded goods and services.

148.    Defendants knew, or in the exercise of reasonable care should have known, that the posts on its Imposter Twitter Accounts relating to its association with Plaintiff were false and/or misleading.

149.    Defendants' acts constitute a violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510.

150.    On information and belief, Defendants have willfully engaged in the deceptive trade practices complained of herein.

151.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

152.    Defendants' aforesaid acts have also caused injury to consumers.

153.    Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure Plaintiff, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its intellectual property.

154.    Defendants have unjustly gained revenue and profits by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled.

155.    Plaintiff has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

156.    Plaintiff has no adequate remedy at law for the wrongful actions of Defendants.

**COUNT XI**
**UNFAIR COMPETITION**
**(ILLINOIS COMMON LAW)**

157.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth herein.

158.    Defendants have unfairly and intentionally used the SHEIN Marks to misrepresent its online retail services as originating from or having the sponsorship, affiliation, or approval of Plaintiff.

159.    Defendants have engaged in such unfair and improper conduct to trade off of, and benefit from, the reputation and goodwill in the SHEIN Marks.

160.    Defendants have derived, and continues to derive, unfair and illicit profits by trading off of the respective reputation and goodwill of the SHEIN Marks.

161.    Through its use of the Counterfeit SHEIN Marks, Defendants have unfairly caused prospective and actual customers of the SHEIN Website and/or SHEIN Mobile App to be confused as to whether Defendants is associated with the SHEIN brand. As a result, Plaintiff has lost sales and profits. Defendants have also harmed the SHEIN brand, goodwill, and reputation.

162.    The acts described above constitute unfair competition under Illinois common law.

163.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

164.    Plaintiff has no adequate remedy at law.

165.    Defendants' conduct was oppressive, fraudulent, and malicious, entitling Plaintiff to an award of punitive damages.

**COUNT XII**
**PRODUCT DISPARAGEMENT AND TRADE LIBEL**
**(ILLINOIS COMMON LAW)**

166.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth herein.

167.    Defendants have contracted with and induced influencers to publish false and misleading representations of fact that have disparaged the goods and services offered by Plaintiff, as well as the overall reputation of Plaintiff's business.

168.    The Influencer Statements made by Defendants to influencers and made, on information and belief, by influencers to their followers, as induced by Defendants, were directed at the quality of products sold under the SHEIN brand.

169.    The acts described above, constitute product disparagement and trade libel under this State's common law.

170.    Defendants' aforesaid acts have caused actual and special damages.

**COUNT XIII**
**UNJUST ENRICHMENT**
**(ILLINOIS COMMON LAW)**

171.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth herein.

172.    Plaintiff has invested substantial time, resources, and money developing, growing, and promoting the SHEIN Marks and the respective goodwill and reputation associated therewith.

173.    Defendants have unfairly and intentionally used the SHEIN Marks to deceive consumers into downloading its mobile application, which directly competes with the SHEIN Website and SHEIN Mobile App.

174.    Defendants have engaged in such unfair and improper conduct in order to trade off of, and benefit from, Plaintiff's reputation and goodwill in the SHEIN Marks.

175.    Defendants have derived, and continue to derive, unfair and illicit profits by trading off of the respective reputation and goodwill of the SHEIN Marks.

176.    By trading off of and using Plaintiff's SHEIN Marks and the respective goodwill and reputation associated therewith to lure customers away from Plaintiff for Defendants' benefit, Defendants have been unjustly enriched.

177.    It would be unjust for Defendants to be permitted to retain the illicit profits they earned through the sales they made from the downloads of the Temu application that originated from consumers viewing posts created by the Imposter Twitter Accounts.

178.    The acts described above constitute unjust enrichment under Illinois common law.

179.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

180.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

1.    That Defendants and their respective agents, servants, employees, attorneys, successors, and assigns, and any and all persons acting in concert or participating with them, or any of their successors or assigns, be preliminarily and permanently enjoined and restrained from directly or indirectly:

   a.    using the SHEIN Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks, in connection with any manner likely to cause other to believes that Defendants' goods and services are connected with Plaintiff or the SHEIN brand;

   b.    making any false or misleading statements regarding Plaintiff or SHEIN-branded goods and services, or the relationship between Plaintiff or its affiliates and Defendants;

   c.    engaging in deceptive trade practices;

   d.    engaging in consumer fraud and deceptive trade practices;

   e.    infringing the SHEIN Registered Copyrights; and

   f.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (e).

2. That this Court find that Defendants have unlawfully, and without authorization, infringed upon and counterfeited the SHEIN Marks, committed false designation of origin, engaged in unfair competition, false advertising, dilution and contributory false advertising, all in violation of the Lanham Act, 15 U.S.C. § 1125, *et seq.*

3. That this Court find that Defendants have unlawfully, and without authorization, infringed the material in the SHEIN Registered Copyrights, i.e., U.S. Copyright Registration Nos., VA0002320444, VA0002320442, VA0002320439, and VA0002325368.

4. That this Court find that Defendants engaged in unfair competition in violation of the common law of the State of Illinois.

5. That this Court find that Defendants engaged in trademark dilution under the Illinois Trademark Registration and Protection Act, formerly the Anti-Dilution Act, 765 ILCS 1036/65.

6. That this Court find that Defendants are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

7. That this Court find that Defendants are in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.

8. That this Court find that Defendants engaged in product disparagement and trade libel in violation of the common law of the State of Illinois.

9. That this Court find that Defendants have been unjustly enriched.

10. That Defendants be required to account to Plaintiff for Defendants' profits from the sale of products or downloads of the Temu application and subsequent sales of products originating from the Imposter Twitter Accounts, the Influencer Statements, the Infringing Ads, or any other advertisement in which Defendants unlawfully used the SHEIN Marks or Roadget's brands.

11. That this case be found exceptional and Plaintiff awarded its attorney's fees pursuant to 15 U.S.C. § 1117(a).

12.     That Plaintiff be awarded damages arising out of Defendants' wrongful acts in a sum equal to three times the actual damages suffered by Plaintiff, as provided in 15 U.S.C. § 1117(b).

13.     That Defendants be found to have intentionally used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services and Plaintiff be awarded its attorney's fees pursuant to 15 U.S.C. § 1117(b).

14.     That Plaintiff be awarded statutory damages in lieu of actual damages, as provided in 15 U.S.C. § 1117(c).

15.     That Defendants be required to disgorge its profits and other ill-gotten gains.

16.     That an accounting be held and judgment rendered for damages sustained by Plaintiff on account of Defendants' false designation of origin, trademark infringement, and unfair competition.

17.     That, pursuant to 17 U.S.C. §§ 504, Plaintiff be awarded its actual damages for Defendants' willful copyright infringement and any of Defendants' profits attributable to the infringement.

18.     That Plaintiff have and recover taxable costs of this action, including reasonable attorney's fees and interest.

19.     That Plaintiff be awarded punitive damages in view of Defendants' wanton and deliberate illegal acts committed with oppression, fraud, or malice.

20.     That Plaintiff be awarded such other and further relief as this Court deems just and proper.

### **JURY DEMAND**

Plaintiff requests a trial by jury as to all issues triable to a jury.

ROADGET BUSINESS PTE. LTD.

Dated: March 1, 2022          By:     /s/ *Barry R. Horwitz*

Barry R. Horwitz
Barry.Horwitz@gtlaw.com

Marc H. Trachtenberg
TrachtenbergM@gtlaw.com
Jacqueline Brousseau
Jacqueline.Brousseau@gtlaw.com
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-456-8400
Facsimile: 312-456-8435

*Counsel for Plaintiff Roadget Business Pte. Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated: March 1, 2023                      <u>/s/ Barry R. Horwitz</u>