UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> PDD HOLDINGS INC. and WHALECO, INC., <br><br> *Defendants*. | Civil Action No. 1:22-cv-07119 <br><br> Judge: Hon. Franklin U. Valderrama <br><br> Magistrate Judge: Hon. Jeffrey Cummings <br><br> JURY TRIAL DEMANDED |

**OPPOSITION TO DEFENDANT WHALECO, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

I.  **INTRODUCTION**

Defendant Temu's Motion to Dismiss ("Motion") Plaintiff Roadget Business Pte. Ltd.'s ("Shein") false advertising claims is a disguised motion for summary judgment that completely ignores the plausibility standard for pleadings.[1] Shein's First Amended Complaint explains WhaleCo, Inc.'s ("Temu") false advertising in detail; Temu cannot sustain any argument that the claims are implausible under the alleged facts. As part of its multi-pronged approach to unfairly compete with Shein, Temu disseminated guidelines to social media influencers encouraging them to create posts on their social media accounts stating that clothing sold by Temu is "cheaper" and "way better quality" than clothing sold by Shein ("Influencer Statements"). The influencers are consumers of Temu products and sponsored content creators who target Shein's core consumers. They receive free clothing and other compensation from Temu, including a commission if the ads they post on their social media channels promoting Temu result in consumers downloading the Temu app or buying from Temu. (*Id.* ¶¶ 61, 65-66.) One influencer, Quirico, posted the Influencer Statements on Instagram, where she has over 137,000 followers (i.e., consumers), acknowledging the post as a "Paid partnership with shoptemu." (*Id.* ¶ 65.) That post received over 4,800 likes. (*Id.*) These facts support Shein's claims for direct and contributory false advertising.

Temu's Motion argues that the Influencer Statements cannot support viable claims for direct or contributory false advertising. Specifically, Temu claims (1) its emails with the influencers and their resulting social media posts do not constitute "commercial advertising or promotion" as required by 15 U.S.C. § 1125(a), and (2) that the content of the Influencer Statements is mere puffery. Temu's arguments are farfetched, raise issues of fact, and deliberately misrepresent both its conduct and the law.

On the first issue of "commercial advertising," Temu misrepresents a key Seventh Circuit case, arguing without basis that a promotion must reach "most" consumers in the relevant market, and falsely

---

[1] Temu also seeks to dismiss three state law claims, namely, Count IX (Illinois Uniform Deceptive Trade Practices Act), Count X (Illinois Consumer Fraud and Deceptive Business Practices Act), and Count XII (Product Disparagement and Trade Libel); Shein does not oppose that portion of Temu's Motion.

analogizes its influencer outreach to in-person sales pitches. Temu also baldly proclaims that advertising via paid influencers is not "advertising." That position is not shared by the Federal Trade Commission ("FTC") or even Temu's own influencer partner, who disclosed her commercial relationship with Temu on her social media post as required by the FTC's guidelines for social media influencers.[2]

On the second issue, the Influencer Statements are not mere puffery—grandiose, generic claims about Temu's goods. Rather, they are false factual statements directly comparing Temu to Shein and disparaging Shein, that consumers would reasonably rely on to Shein's detriment. The Influencer Statements also can be proven false for at least two reasons: first, if the same suppliers offer the same products on Temu and Shein, then Temu's statements disparaging Shein's products are necessarily false. Second, if Temu is a real marketplace, as it claims in its Terms of Use, Temu only provides a technology platform to connect sellers and buyers and is in no position to know whether the products offered by third-party sellers are of good quality or not, much less whether they are of higher quality than Shein's products. Temu is either lying about Shein or lying that it is a marketplace in its Terms of Use. *See*, *e.g.*, Section 1.3 of Temu's Terms of Use ("As a marketplace, we do not own or sell the Products listed on the Temu platform.").[3] Further, whether Temu's claims are puffery is a factual issue to be decided later, as confirmed by nearly all of Temu's cited authority, which decided that issue *after* the pleading stage.

Finally, Temu contends that Shein's claim for contributory false advertising claim is "novel" and not actionable. Not so: the Second, Third, and Eleventh Circuits have recognized such claims, as have several district courts in other circuits. While Temu argues that the Seventh Circuit has "not adopted" or recognized such a claim, it conveniently omits that the Seventh Circuit has never even faced the issue.

---

[2] *See* https://www.ftc.gov/business-guidance/resources/disclosures-101-social-media-influencers. It is "well-established" that the Court can take judicial notice of FTC guidelines. *See Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000) ("executive and agency determinations are subject to judicial notice"); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from official website of the FDIC).
[3] *See* https://www.temu.com/terms-of-use.html. The Court "may take judicial notice of undisputed material hosted on a party's public website" without converting a motion to dismiss into one for summary judgment. *See Newbold v. State Farm Mut. Auto. Ins. Co.*, 2015 U.S. DIST LEXIS 194101, *11 n. 7 (N.D. Ill. Jan. 23, 2015) (citing *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F. 3d 937, 944 n. 3 (7th Cir. 2010).

2

Temu's (false) influencer advertising supports a contributory false advertising claim under established law, and Temu cites no analogous law to the contrary.

The Court should allow the merits of Shein's claims to proceed and deny Temu's Motion.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion "test[s] the sufficiency of the complaint," and does not decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering such motions, courts must accept as true all facts in the complaint and construe all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012). The factual allegations need not be detailed to defeat such a motion, but they must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A complaint will survive such motions "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## III. SHEIN HAS SUFFICIENTLY PLED ALLEGATIONS TO SUPPORT ITS CLAIMS FOR TEMU'S DIRECT AND CONTRIBUTORY LIABILITY FOR FALSE ADVERTISING BASED ON THE INFLUENCER STATEMENTS.

### A. The Influencer Statements Were Made in Commercial Advertising and Promotion.

Temu's false statements to influencers constitute "commercial advertisement [and] promotion" under 15 U.S.C. § 1125(a)(1)(B). The FTC agrees, advising influencers who endorse a product through social media to use words such as "advertisement" and "ad" clearly and conspicuously in their posts.[4]

Temu ignores FTC guidelines,[5] and instead advances an overly narrow construction of

---

[4] It is notable that that Temu itself requested the influencers' permission to "repost the original content you generated for this campaign on Temu's marketing channels such as websites, social media accounts, paid advertisements, and email marketing for a period of 6 months" (Dkt. 33-3, p. 8), underscoring that Temu always viewed these posts as commercial advertisements.
[5] Shein "may and should rely on FTC guidelines" to support its Lanham Act false advertising claim. *Manning Int'l v. Home Shopping Network*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001) ("plaintiff may and should rely on FTC guidelines as a basis for asserting false advertising under the Lanham Act."); *see also B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973, 975 (7th Cir. 1999) (remanding with instructions to reconsider FTC regulations that "sp[oke] directly to the type of promotions at issue here" and noting that "as the administrative agency charged with preventing unfair trade practices, the [FTC's] assessment of what constitutes deceptive advertising commands deference from the judiciary.")

3

"advertisement" while ignoring the realities of modern commercial "promotion" on social media.[6] But the Seventh Circuit supports a broader interpretation of the phrase. *See Neuros Co. v. Kturbo, Inc.*, 698 F.3d 514, 522 (7th Cir. 2012) (noting "[i]f 'advertising or promotion' just meant 'advertising,' then 'promotion' would do no work in the statute" and that a "classic advertising campaign is not the only form of marketing embraced" by the statute). *Neuros* defined "promotion" broadly as "a systematic communicative endeavor to persuade possible customers to buy the seller's product," and recognized that, in some industries, such promotion "takes a form other than publishing or broadcasting." *Id*. at 522-23. Indeed, in *Hytera Commc'ns Corp., Ltd. v. Motorola Sols., Inc.*, cited by Temu, the court reiterated that "the specifics of an industry can dictate the relevant promotional scheme." 2022 U.S. Dist. LEXIS 152051, *61 (N.D. Ill. Aug. 24, 2022) (citing *Neuros*, 698 F.3d at 522).

Temu argues that its conduct is not "commercial advertising or promotion" because it only emailed individual influencers, and mischaracterizes *Neuros* as holding that "promotion **requires** [a] 'systematic communicative endeavor" targeted to "most" of the consumers in market." (Motion, at 8 (citing 698 F.3d at 522-23 (emphasis added).) Temu plucks the word "most" out of context from *Neuros* to create a new "require[ment]" out of thin air. In *Neuros*, the defendant's defamatory road show *happened to* visit "most of the [] companies" in the relevant market, but *Neuros* never held that a "systematic communicative endeavor" (which Temu no doubt conducted here) must target or even reach "most" consumers in the market. Indeed, *Neuros* cites cases that involved disseminations to a meaningful amount of the relevant market, but certainly not "most" of the consumers in that market.[7] Most contextual advertising sent by a company with a global consumer reach would fail such an arbitrary requirement.

---

[6] *See* https://www.ftc.gov/business-guidance/resources/disclosures-101-social-media-influencers.
[7] *See* 698 F.3d at 523 (citing *Coastal Abstract Serv. v. First Am. Title. Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) (statements made "only to one of two or three national refinancing companies"); *Seven-Up*, 86 F.3d at 1384-85 (statements made to agents of eleven *independent* soft drink bottlers out of an unknown universe of independent and non-independent soft drink bottlers); *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1114 (8th Cir. 1999) (alert sent to five companies where "information from the ALERT [then] circulated more widely . . . largely through [defendant's] own efforts"); *Medscript Pharmacy*, 77 F. Supp. 3d at 795 ("significant portion" of compounding pharmacies); *Dynamic*, 2009 WL 10674326, *1, *3 (single interview with one trade magazine).

*Neuros*, in reversing a trial judgment dismissing Lanham Act claims, summarized a range of prior Seventh Circuit holdings interpreting "commercial advertising or promotion," explaining that (i) "three person-to-person communications at trade shows did not" suffice, 698 F.3d at 521 (citing *Sanderson v. Culligan Intl Co.*, 415 F.3d 620, 624 (7th Cir. 2005)); (ii) print ads "read by millions (or even thousands in a trade magazine)" are advertising, but "person-to-person pitch[es] by an account executive" are not, *id*. (citing *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001); and (iii) letters sent to plaintiff's business partners falsely warning them about patent infringement liability did not suffice. *Id*. (citing *ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, 316 F.3d 731, 733 (7th Cir. 2003). "[P]erson-to-person" in these prior cases referred to in-person exchanges. *See Sanderson*, 415 F.3d at 624 (three "oral statements and handouts" to individual franchisees or distributors); *First Health*, 269 F.3d at 804 (distinguishing "face-to-face communication" from advertising). *Neuros* also warned against narrowly construing the statutory phrase because "methods of advertising and promotion are changing with innovations in communications media . . . ." *Id.* at 522.

*Organ Recovery Sys. v. Pres. Sols., Inc.*, is particularly instructive here. 2012 U.S. Dist. LEXIS 92430 (N.D. Ill. July 4, 2012). In that case, the plaintiff ORS alleged (like Shein does here) that defendant PSI sent the same letter containing false statements to many recipients around the country. *Id*., *7. While the Seventh Circuit has defined "commercial advertising or promotion" as "promotional material disseminated to anonymous recipients," the court clarified the Seventh Circuit never held "that 'anonymous' must mean that a corporation cannot know the identities of the recipients of the communications." *Id*. at *10 (quoting *Gov't Payment Serv., Inc. v. LexisNexis VitalChek Network, Inc.*, 2012 U.S. Dist. LEXIS 73943 at *15 (N.D. Ill. May 29, 2012).) ORS sufficiently alleged that the letters constituted "commercial advertising or promotion" by alleging the letter was received by many "potential ORS customers throughout the country," and that it was a mass, unsolicited communication. *Id*. Indeed,

5

the court found that "even if PSI's letter was specifically targeted—which would mean that PSI knew the identities of all recipients based on its mailing list—ORS has alleged that the letters were a generalized solicitation rather than an individualized communication." *Id*. at *12.

Moreover, ORS alleged that a second defendant BTL "sent a broadcast email to 'Organ Procurement Professionals'" containing false statements, and the court found the *single* email was sufficient to "support a claim that BTL engaged in advertising or commercial speech". *Id*. at *13-*15 (denying motion to dismiss based on BTL's email); *see also Medscript Pharmacy, LLC v. My Script, LLC,* 77 F. Supp. 3d 788, 795 (N.D. Ill. 2014) ("[c]onstruing the amended complaint liberally," finding it plausible that the false statements were made to "a significant portion of the compounding pharmacy industry," and denying a motion to dismiss on that basis).

Temu's false statements to influencers and the influencers' false statements on behalf of Temu are actionable commercial advertisement and promotion. Shein has alleged a "systematic communicative endeavor to persuade possible customers to buy the seller's product," namely the impersonal dissemination of a set of false, boilerplate content in the form of posting guidelines to "numerous" trend-setting influencers, who are themselves consumers, each with potentially hundreds of thousands of followers who are also actual or potential consumers. *See Underground Sol'ns, Inc. v. Palermo*, 2014 U.S. Dist. LEXIS 132441, *3 (N.D. Ill. Sept. 22, 2014) (holding that presentations given by defendant "to a large group of industry members for the purpose of directing customers to select [his client's] products" over a competitor's products is "'advertising or promotion'" under the Lanham Act); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996) (holding that Coca-Cola's sales presentation to eleven independent bottlers was "specifically intended to influence consumers to buy [Coca-Cola's] product," and "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the soft drink industry"). Disseminating uniformly false material to

6

even a limited set of prominent influencers, intending that these influencers pass that material on in substantially the same form to their hundreds of thousands of followers, is no different than the disseminations in *Organ Recovery*, *Underground Solutions*, and *Seven-Up*. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116 (9th Cir. 2021) (holding that "there can be little doubt" that paid influencer posts "are in fact advertisements"); *see also Dynamic v. Blossom Footwear, Inc.*, 2009 WL 10674326, *1, *3 (C.D. Cal. Apr. 28, 2009) (denying motion to dismiss false advertising claim where defendant allegedly "willfully . . . made false and disparaging statements about the quality of Plaintiff's products" to a trade magazine, who then paraphrased the statements to its consumers in a published article). Likewise, Shein's allegations, which must be taken as true at this stage, are generalized solicitations comparable to the emails in *Organ Recovery* that were "not specifically targeted to any [recipient] individually" but instead "generic communication[s] to a large group, and each recipient was provided with the same material." 2012 U.S. Dist. LEXIS 92430, *14.

Second, Temu claims that the Lanham Act distinguishes between "generalized solicitations" and "individualized communications." (Motion, at 7 (citing *Rovanco Piping Sys. v. Perma-Pipe Int'l Holdings, Inc.,* 2022 U.S. Dist. LEXIS 40559, *20 (N.D. Ill. Mar. 8, 2022).) This is a red herring, as generalized solicitations can be disseminated through one-on-one communications.

Temu claims that it only interacted with influencers over email, so the Influencer Statements are mere "person-to-person communications" that do not suffice as "commercial advertising or promotion" under the Lanham Act. (*See* Motion at 6-7.)[8] But Temu did more than communicate with influencers over email; Temu devised a sophisticated and "systematic communicative endeavor to persuade possible customers to buy" Temu's products. *Neuros*, 698 F.3d at 522. The endeavor *began* with Temu's emails

---

[8] Temu's misreading of a "person-to-person" limitation, if one exists, as "one-to-one" rather than "face-to-face," would exclude modern computerized email blasts from the definition of commercial advertisement or promotion. For example, an email campaign bcc'ing thousands of individuals in a single email would be actionable, but the same campaign sent as thousands of individual emails would avoid liability, as each is a one-to-one or "individualized" communication.

to influencers, who are themselves Temu consumers (*see* Dkt. 33, ¶¶ 65-66), and then continued with instructions to influencers to post the Influencer Statements on social media—including at least Quirico and Rainha who collectively shared the statements with their combined 140,000 followers (i.e., the "anonymous recipients" to whom Temu's promotional material was disseminated). (*Id.*; *see Neuros*, 698 F.3d at 521.) And those are just the anonymous recipients Shein was able to find.[9]

Temu cites no cases holding that advertising via influencers—and giving those influencers false statements to include in their social media posts—is not "commercial advertising or promotion" under the Lanham Act. The cases Temu cites involve isolated, *face-to-face* sales pitches, which Temu improperly equates with mass scripted emails to influencers. *See* Mot. 7-8; *Control Sol'ns, LLC v. Oshkosh Corp.*, 2011 U.S. Dist. LEXIS 32894, *11-12 (N.D. Ill. Mar. 28, 2011) (claim based "on a single instance of an in person 'sales pitch'"); *Johnson Controls, Inc. v. Exide Corp.*, 152 F. Supp. 2d 1075, 1081-82 (N.D. Ill. 2001) ("misrepresentations made to a single customer [when] negotiating a transaction" is not "commercial advertising or promotion"); *Hytera*, 2022 U.S. Dist. LEXIS 152051, at *61-63 (false statements to a "handful of dealers" in "person-to-person communications" are not advertising, in contrast with the facts with *Neuros* because "here, there [was] no such allegation of widespread promotion."). Both *Control Sol'ns* and *Johnson Controls* predate current case law regarding influencer advertising, and, unlike in *Hytera*, "widespread promotion" is indeed alleged here—including via Quirico and Rainha collectively posting the false statements to their 140,000 followers. (Dkt. 33 ¶¶ 61, 64-67.) While Shein has met the pleading standard, Shein is unable to identify more instances of "widespread promotion" at this time because only Temu and the social media companies know which influencers shared the statements online, how many online users saw the statements, and which of those users visited Temu's website and/or purchased goods from Temu.

---

[9] Shein cannot identify more social media posts reflecting the Influencer Statements without discovery because of the difficulty "searching for social media posts and the fact that many internet search engines do not" index such posts." (Dkt. 33, ¶ 108.)

8

In short, Temu's statements made through influencers are clearly advertising; even Quirico labeled it as a "paid partnership with Temu." (Dkt. 33, ¶ 65.) To hold otherwise would be to deny the reality that the fashion industry uses influencer-based advertising *because* of its commercial reach. *See Ariix*, 985 F.3d at 1116 (9th Cir. 2021) (even if "social media posts [lack] the indicia of a traditional advertisement, there can be little doubt that [paid influencer] posts are in fact advertisements").

### B. The Influencer Statements Are Not "Mere Puffery" And This Is A Factual Question.

Temu's Influencer Statements are not "mere puffery," but that is a factual issue that cannot be decided at this early pleading stage. *Dyson, Inc. v. SharkNinja Operating LLC*, 2019 U.S. Dist. LEXIS 56028, at *12-13 (N.D. Ill. Mar. 31, 2019) (noting "[w]hether an advertisement conveys a given message and whether that message is false are questions of fact") (citing *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 13-14 (7th Cir. 1992)); *BASF Corp. v. Old World Trad. Co.,* 41 F.3d 1081, 1091 (7th Cir. 1994) ("The meaning of a given ad[] is a question of fact").[10]

While some "highly subjective" or "exaggerated commercial statements" can be "deemed puffery as a matter of law," courts should account for "all the information available to consumers and the context in which that information is provided and used." *Evolve BioSystems, Inc. v. Abbott Labs.*, 2022 U.S. Dist. LEXIS 50858, *12-13 (N.D. Ill. Mar. 22, 2022) (noting this is a "fact-intensive" inquiry). Claims cannot be mere puffery (1) "if they can be tested—if they make 'objective claims' that describe 'specific or absolute characteristics of a product capable of testing'"; or (2) "if reasonable consumers could rely on them in their purchasing decisions—if they are 'specific' enough to induce 'consumer reliance.'" *Id*. *14-*16 (noting Abbott's "commercial statements do not exist in a vacuum" and holding those statements "cannot be considered mere puffery, at least at the pleading stage").

---

[10] *See also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (noting that, under analogous California Unfair Competition Law, dismissal on puffery grounds is a "rare situation[,]" and reversing grant of motion to dismiss).

9

The same is true here. Unlike the cases Temu cites, where the advertiser claimed to be generally superior to *all* competitors without reference to specific attributes of its product, the Influencer Statements deliberately compare Temu to one competitor—Shein—expressly claiming that Temu is "cheaper than Shein" and that Temu offers "way better quality [products] than Shein." (Dkt. 33, ¶ 61.) In its Motion, Temu suggests that the "cheaper" claim is "too vague to need verification," offering several possible connotations for what its claim could mean. But as the McCarthy section Temu cited notes, the crucial question is whether "the statement contains a provably false factual connotation." 5 McCarthy on Trademarks and Unfair Competition § 27:109 (5th ed.) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). If any one of Temu's suggested connotations—e.g., that Temu products cost less than those sold by Shein, or that, for any product sold by Shein, a comparable Temu product is sold for less—can be proven false, then Temu's "cheaper" claim is not mere puffery. The same goes for Temu's claim to have "way better quality" products than Shein. At this stage, Temu has failed to establish that these false statements are the type of "highly subjective" or "exaggerated commercial" claims that courts routinely hold to be puffery. Rather, consumers here could plausibly understand Temu's statements as conveying the factual assertion that Temu's prices for goods comparable to those sold by Shein are always lower, or that Temu's goods are made from higher quality materials, or would last longer, than comparable goods sold by Shein—and consumers could reasonably rely on these falsehoods in deciding where to buy goods. *Evolve*, 2022 U.S. Dist. LEXIS 50858, *15-*16.

Indeed, Temu's claims are capable of being proven false for at least two reasons: first, if the same suppliers sell the same products on Temu and Shein, those products by definition would not have a difference in quality. The more salient question is whether Temu or PDD knew, believed or intended that the same products offered on Shein would be offered on Temu at the time the statements were made. This is an issue for discovery. Second, Temu states in its Terms of Use that it is a platform that "allow[s]

10

third parties to set up online stores or otherwise sell products" and that Temu "do[es] not own or sell the Products listed on the Temu platform."[11] If Temu is a real marketplace, as claimed, it would be in no position to know whether the products offered by third-party sellers are of "way better quality" than the products offered by Shein.

In support of its puffery argument, Temu cites *Martin v. Wendy's Int'l, Inc*., 183 F. Supp. 3d 925, 934 (N.D. Ill. 2016) (dismissing a false advertising claim where the product was advertised as "record-breaking," which was found to be "just a way to say 'best' or 'greatest'"). *Martin* is clearly inapposite: Temu did not claim to be "record-breaking," and the Influencer Statements are not akin to Temu claiming to be "the greatest or best." Rather, in the Influencer Statements, Temu claims its goods are less expensive, and of "way better quality," than similar or comparable Shein goods. In the other cases Temu cites, the false statements made no comparison with any specific competitor. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (affirming dismissal because "any implication that [defendant] has comparable services to attorneys at lower rates are general assertions of superiority rather than factual misrepresentations"); *Segerdahl Corp. v. Am. Litho, Inc*., 2019 U.S. Dist. LEXIS 4634, *9 (N.D. Ill. Jan. 10, 2019) (granting motion to dismiss, where generic claims of offering "greater security, better quality and shorter turn-time," without comparing to any particular competitor, were puffery—noting the court doubted the defendant's supposition "that customers are comparing with all industry rivals to verify whether [the plaintiff] truly offer[ed] 'a level of flexibility not found anywhere else'"); *Saltzman v. Pella Corp.*, 2007 U.S. Dist. LEXIS 19650, *11-*12 (N.D. Ill. Mar. 20, 2007) (granting motion to dismiss, because defendant's claims that its product was "durable," "maintenance free," and "manufactured to high quality standards" were puffery given the "subjective and non-

---

[11] *See* https://www.temu.com/terms-of-use.html.

11

quantifiable nature of these claims"). Had Temu stated that its products were generally affordable and well-made, or "better" than Shein's, the cases it cites might be relevant (at a later procedural stage).

Instead, Temu's claims expressly compare Temu against Shein in two specific ways—in relative cost and relative product quality—neither of which are "subjective and non-quantifiable." The parties sell similar or comparable goods, and the prices of those products can be quantified and compared. Further, in context—i.e., in the fashion industry, at the prices at which the parties are selling their products—claiming to have "way better quality" products is not a purely subjective claim. Rather, it suggests to consumers that Temu's goods are either made from higher quality materials or would last longer. Both connotations are neither subjective nor non-quantifiable—these are claims that are capable of being disproven. *See Netquote, Inc. v. Byrd,* 504 F. Supp. 2d 1126, 1129 (D. Colo. 2007) (denying motion to dismiss where "MostChoice's advertising about the poor quality of NetQuote's leads implied that NetQuote's leads generally were of poor quality."); *see also SFEG Corp. v. Blendtec, Inc.*, 2017 U.S. Dist. LEXIS 12413, *44-*48 (M.D. Tenn. Jan. 30, 2017) (denying motion for summary judgment on puffery grounds, noting that "representations that a product is as good as or better in all respects than a competitor's is not always puffery as a matter of law[,]" and that "[c]ontext must also be considered").

Every other case Temu cites on puffery was decided at a later procedural stage, confirming that these issues are factual in nature and not properly adjudicated on the pleadings. *See Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1008-09 (7th Cir. 2004) (affirming summary judgment that Rosewood did not falsely advertise that it "provided a 'high quality' of care for its residents," deeming this puffery because "[t]he phrase 'high quality' is highly subjective"); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) (affirming summary judgment, and notably not discussing puffery at all); *Smith-Victor Corp. v. Sylvania Elec. Prods.*, 242 F. Supp. 302, 308-09 (N.D. Ill. 1965) (denying puffery defense on summary judgment where certain numerical claims could be disproven); *Pizza Hut, Inc. v. Papa John's*

12

*Int'l, Inc.*, 227 F.3d 489, 498-99 (5th Cir. 2000) (affirming post-trial that "Better Pizza" is mere puffery because it "is a general statement of opinion regarding the superiority of its product over all others"—the same goes for "Better Ingredients"); *Icon Health & Fitness, Inc. v. Nautilus Grp., Inc.*, 2004 U.S. Dist. LEXIS 31511, *66, *71-*73 (D. Utah Dec. 21, 2004) (granting summary judgment that Icon's claim that its exercise machine using a cable system offers "pure resistance that's better than rods" is "mere puffery"); *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 926 (3d Cir. 1990) (affirming post-trial that "Better than HMO" is innocuous puffery). Temu improperly seeks to cut off these claims before the facts can be discovered and heard.

### C. Shein Has Sufficiently Pled Facts to Support A Claim for Contributory False Advertising, Which is Recognized under the Lanham Act.

Contributory false advertising under the Lanham Act is a widely accepted claim that Shein has adequately pled. Temu misleadingly argues that the Seventh Circuit has "not adopted" or "recognized" such a claim, but omits that the Seventh Circuit has never even faced the issue.[12] In fact, no federal circuit court has ever expressly rejected a Lanham Act claim for contributory false advertising. Further, in a case of trademark infringement and counterfeiting, the Seventh Circuit has expressly stated that a defendant "can bear contributory liability" under 15 U.S.C. § 1125, by treating Lanham Act claims "as a species of tort" and turning "to the common law to guide [its] inquiry" on the boundaries of liability. *Hard Rock Cafe Licensing Corp. v. Concession Servs.*, 955 F.2d 1143, 1148-51 (7th Cir. 1992). The same common

---

[12] The Lanham Act expressly "recognizes" claims brought pursuant to section 43 of the Lanham Act, including claims for false designation of origin, false advertising, infringement, counterfeiting, and dilution. Contributory liability, like vicarious liability, is simply a common law theory of derivative tort liability, not a claim that requires recognition. *See, e.g.*, *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-30 (2005) ("Although the Copyright Act does not expressly render anyone liable for infringement committed by another . . . these doctrines of [contributory and vicarious] liability emerged from common law principles and are well established in the law."); *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1083 (S.D. Cal. 2020) (holding "it is possible for a party to allege a claim for false advertising under the theory of contributory liability"). Indeed, the Lanham Act does not expressly "recognize" a "contributory infringement" claim either, yet the Supreme Court held that lower courts "correctly discerned" that defendants could still be held contributorily liable for trademark infringement by others, which Temu does not dispute. *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 854 (1982).

law principles of secondary liability would similarly apply to other "species of tort" such as false advertising or false designation of origin claims.

The three federal appeals courts that have addressed the issue—the Second, Third, and Eleventh Circuits—each applied contributory liability principles to false advertising claims. *Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, L.P.*, 380 F.3d 126, 133 (2d Cir. 2004); *Allen Organ Co. v. Galanti Organ Builders, Inc.*, 798 F. Supp. 1162, 1172 (E.D. Pa. 1992) (applying *Inwood* test to a false advertising claim under section 43(a)), *aff'd*, 27 U.S.P.Q.2d (BNA) 1398 (3d Cir. 1993); *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277-78 (11th Cir. 2015). Many district courts in other circuits have also denied motions to dismiss contributory false advertising claims.[13] Courts facing contributory false advertising claims often follow *Duty Free Americas,* which required plaintiffs to allege that (i) a third party directly engaged in false advertising causing injury, and (ii) defendant knowingly caused or induced that conduct, or materially participated in it. 797 F.3d 1248, 1277–78. Shein has alleged both of those elements: that third parties posted the Influencer Statements in a "systematic communicative endeavor" orchestrated by Temu, in which Temu claimed its products were "cheaper" and "way better quality" than SHEIN-branded goods, and that Shein was harmed. (Dkt. 33, at ¶¶ 61-68, 108.) Shein also alleged that Temu knowingly induced the influencers to publish these false claims—and that Temu caused this by creating the Influencer Statements and enabling their widespread dissemination. (*Id.* at ¶¶ 68, 108, 110.)

---

[13] *See Isk Biocides, Inc. v. Pallet Mach. Grp. Inc*., 2022 U.S. Dist. LEXIS 6450, *15 (E.D. Va. Jan. 12, 2022) (acknowledging viability of claim for contributory false advertising claim and applying the factors from *Duty Free*); *LStar Dev. Grp., Inc. v. Vining*, 2021 U.S. Dist. LEXIS 181972, *16 (E.D.N.C. Sep. 23, 2021) (acknowledging viability of plaintiff's contributory false advertising claim); *Diamond Resorts Int'l, Inc. v. Reed Hein & Assocs., LLC*, 2019 U.S. Dist. LEXIS 205358, *18 (D. Nev. Nov. 25, 2019) (holding plaintiff adequately pled a contributory false advertising claim); *ADT Sec. Servs. v. Sec. One Int'l, Inc*., 2012 U.S. Dist. LEXIS 131724, *9 (N.D. Cal. Sep. 14, 2012) (denying motion to dismiss and holding "[i]n light of other courts' reasoned extension of a claim for contributory false advertising and unfair contribution under the Lanham Act, the Court finds such an extension to be appropriate"); *see also Wyndham Vacation Ownership, Inc. v. Transfer Grp., LLC*, 2021 U.S. Dist. LEXIS 83617, *10 (M.D. Fla. Apr. 30, 2021) (granting default judgment for contributory false advertising claim); *Diamond Resorts U.S. Coll. Dev., LLC v. Newton Grp. Transfers, LLC*, 2022 U.S. Dist. LEXIS 97306, *31 (S.D. Fla. Apr. 4, 2022) (denying summary judgment to defendant on contributory false advertising claim); *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1083 (S.D. Cal. 2020) (holding "it is possible for a party to allege a claim for false advertising under the theory of contributory liability").

Temu's reliance on *Telebrands Corp. v. My Pillow, Inc.*, 2019 U.S. Dist. LEXIS 72832 (N.D. Ill. Apr. 30, 2019) is misplaced. There, My Pillow sought to hold Telebrands liable for advertisements placed by its retail clients, but My Pillow did not allege that Telebrands itself made any materially false statements or that Telebrands participated in the ads placed by those retail clients. *Id.* *6-*9.[14] Likewise, the plaintiff in *Fireblok IP Holdings, LLC v. Hilti, Inc.* "include[d] no allegations to explain how" the alleged contributory false advertiser "ha[d] anything to do" with the website on which the allegedly false statements were made, so the court's reliance solely on *Telebrands* was superfluous. 2021 U.S. Dist. LEXIS 243052, *23 (N.D. Ill. Dec. 21, 2021). Here, unlike both *Telebrands* and *Fireblok*, Shein explicitly alleged Temu's creation and dissemination of the false statements, and how Temu is responsible for their dissemination by the third-party influencers to other consumers. (Dkt. 33 at ¶¶ 61-68, 108-112.) Accordingly, Shein has plausibly stated a claim for contributory false advertising and Temu's motion to dismiss this claim should be denied.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Temu's Motion to Dismiss Count IV (Federal False Advertising) and Count V (Contributory False Advertising).

Respectfully submitted,

ROADGET BUSINESS PTE. LTD.

Dated: April 5, 2023

By: /s/ *Nina D. Boyajian*

Nina D. Boyajian
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel.: 310-586-7700
Fax: 310-586-7800

---

[14] *Telebrands* also derives its conclusion from the "proximate cause" requirement imposed by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). But *Lexmark* requires sufficient proximity between the *injured plaintiff* and the deceived consumer, saying nothing about the proximity between the defendant and the consumer, so *Telebrands*'s extrapolation is unwarranted. *Lexmark* only holds that proximate causation is shown "when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. Whether direct (through false statements) or indirect (through inducing others to make false statements), Temu's "deception of consumers cause[d] them to withhold trade from [Shein]."

15

                Barry R. Horwitz
                Barry.Horwitz@gtlaw.com
                Marc H. Trachtenberg
                TrachtenbergM@gtlaw.com
                Jacqueline Brousseau
                Jacqueline.Brousseau@gtlaw.com
                GREENBERG TRAURIG, LLP
                77 West Wacker Drive, Suite 3100
                Chicago, Illinois 60601
                Telephone: 312-456-8400
                Facsimile: 312-456-8435

*Counsel for Plaintiff Roadget Business Pte. Ltd.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the date set forth below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated: April 5, 2023                                                       /s/ Barry R. Horwitz