**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., a private limited company organized in the country of Singapore, | CASE NO. 1:22-cv-07119 |
| Plaintiff, | Judge: Hon. Franklin U. Valderrama |
| v. | Magistrate Judge: Hon. Jeffrey Cummings |
| PDD HOLDINGS INC., a Cayman Islands corporation, and WHALECO, INC., a Delaware corporation, and DOES 1-60, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF ROADGET BUSINESS PTE. LTD.'S MOTION FOR A TEMPORARY RESTRAINING ORDER

## <u>TABLE OF CONTENTS</u>

**Page**

**No table of contents entries found.**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Performance Supply, LLC*,
    458 F. Supp. 3d 181 (S.D.N.Y. 2020) .................................................................... 15

*In re Aimster Copyright Litig.*,
    252 F. Supp. 2d 634 (N.D. Ill. 2002), *aff'd on other grounds*, 334 F.3d 643
    (7th Cir. 2003) ................................................................................................... 12, 13

*Allstar Mktg. Grp. v. AFACAI*,
    2020 WL 6781948 (S.D.N.Y. Nov. 18, 2020) ........................................................ 14

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ................................................................................. 10

*Antsy Labs, LLC v. Individuals*,
    2022 WL 17176498 (N.D. Ill. Nov. 23, 2022) ....................................................... 14

*Autozone, Inc. v. Strick*,
    543 F.3d 923 (7th Cir. 2008) ................................................................................... 9

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ............................................................................... 10

*Bryant v. Gordon*,
    483 F. Supp. 2d 605 (N.D. Ill. 2007) .................................................................... 11

*CAE, Inc. v. Clean Air Eng'g, Inc.*,
    267 F.3d 660 (7th Cir. 2001) ............................................................................... 8, 9

*Coach, Inc. v. Treasure Box, Inc.*,
    No. 3:11 CV 468, 2013 WL 2402922 (N.D. Ind. May 31, 2013) ............................ 8

*Dexia Credit Loc. v. Rogan*,
    602 F.3d 879 (7th Cir. 2010) ................................................................................... 7

*Eli Lilly & Co. v. Natural Answers, Inc.*,
    233 F.3d 456 (7th Cir. 2000) ............................................................................. 8, 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) .............................................................................................. 11

*Flava Works, Inc. v. Gunter*,
    689 F.3d 754 (7th Cir. 2012) ................................................................................. 12

*GC2 Inc. v. Int'l Game Tech. PLC*,
　255 F. Supp. 3d 812 (N.D. Ill. 2017) ...................................................................13

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
　286 F. Supp. 2d 284 (S.D.N.Y. 2003) ...................................................................9

*H-D U.S.A., LLC v. SunFrog, LLC*,
　311 F. Supp. 3d 1000 (E.D. Wis. 2018) ................................................................8

*Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*,
　497 F. Supp. 3d 319 (N.D. Ill. 2020) ..................................................7, 11, 13, 15

*Illusions Too Reality v. City of Harvey*,
　No. 02 C 7272, 2003 WL 260335 (N.D. Ill. Feb. 4, 2003) .....................................7

*Incredible Techs., Inc. v. Virtual Techs., Inc.*,
　400 F.3d 1007 (7th Cir. 2005) ............................................................................11

*Kraft Foods Holdings, Inc. v. Helm*,
　205 F. Supp. 2d 942 (N.D. Ill. 2002) ..................................................................14

*MasterCard Int'l Inc. v. Trehan*,
　629 F. Supp. 2d 824 (N.D. Ill. 2009) ..................................................................14

*Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*,
　128 F.3d 1111 (7th Cir. 1997) ..............................................................................8

*Microsoft Corp. v. Rechanik*,
　249 Fed. App'x 476 (7th Cir. 2007) ......................................................................9

*Monster Energy Co. v. Jing*,
　2015 WL 4081288 (N.D. Ill. July 6, 2015) ..........................................................11

*Natural Thoughts, Inc. v. Performance Touch, LLC*,
　2018 WL 2618315 (S.D. Cal. July 27, 2018) .......................................................11

*Ohio State Univ. v. Thomas*,
　738 F. Supp. 2d 743 (S.D. Ohio 2010) ................................................................15

*Packman v. Chicago Trib. Co.*,
　267 F.3d 628 (7th Cir. 2001) ................................................................................8

*Promatek Indus., Ltd. v. Equitrac Corp.*,
　300 F.3d 808 (7th Cir. 2002) ..........................................................................7, 10

*S.E.C. v. Cherif*,
　933 F.2d 403 (7th Cir. 1991) ................................................................................8

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
    978 F.2d 947 (7th Cir. 1992) ....................................................................................8

*Suites By Carlson, Inc.* v. *3 AM, LLC*,
    2014 WL 5431621 (D. Minn. Oct. 24, 2014) ..........................................................15

*Sylvan Learning, Inc. v. Learning Solutions, Inc.*,
    795 F. Supp. 2d 1284 (S.D. Ala. 2011)...................................................................15

*Tempur-Pedic N. Am., LLC v. Mattress Firm., Inc.*,
    2017 WL 2957912 (S.D. Tex. July 11, 2017)..........................................................14

*TracFone Wireless, Inc.* v. *Washington*,
    978 F. Supp. 2d 1225 (M.D. Fla. 2013) ..................................................................15

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)................................................................................................10

*UMG Recordings, Inc. v. Grande Commc'ns Networks*,
    384 F. Supp. 3d 743 (W.D. Tex. 2019)...................................................................13

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ..................................................................................12

*Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-cv-907-J-39MCR, 2017 WL
    2901695, at *2, 32 (M.D. Fla. Jan. 17, 2017) ........................................................15

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
    18 F.3d 502 (7th Cir. 1994) ....................................................................................11

**Statutes**

15 U.S.C. § 1115(a) ..........................................................................................................8

15 U.S.C. § 1116(a) ........................................................................................................13

15 U.S.C. § 1127................................................................................................................9

17 U.S.C. § 410(c) ..........................................................................................................11

## I.     INTRODUCTION

When faced with a preliminary injunction, many parties re-evaluate and cease their infringing conduct. Not Temu. Temu has *doubled down* on its rampant and flagrant infringement of the SHEIN marks and copyrighted works and must be stopped. As detailed in the Second Amended Complaint (Dkt. #64), Plaintiff Roadget Business Pte. Ltd. ("Roadget") has uncovered more extensive violations of its IP rights by Temu's wholesale copying of copyrighted images and designs, and use of counterfeit SHEIN marks on the Temu website and mobile app, with the sale of competing products. The latest ongoing violations include Temu's use of counterfeit marks on (i) clothing designs (SAC ¶¶ 192-97); (ii) product labels used in images for listings that do not sell genuine SHEIN apparel (*id.* ¶¶ 136-40); (iii) webpage titles falsely advertising that "Shein" and affiliate-branded products can be purchased "On Temu" (*id.* ¶¶ 163-74); (iv) a counterfeit storefront called SHINE that uses an intentional misspelling and well-known phonetic mispronunciation of SHEIN and displays product images copied from Shein's website (*id.* ¶¶ 215-20); and (v) in Temu-generated search term recommendations (*id.* ¶¶ 175-91). *See* Declarations of T. Wei ¶¶ 44-48, G. Chiao ¶¶ 18-25, and N. Boyajian ¶¶ 27-81. Roadget and its licensee Shein Distribution Corporation (collectively "Shein") have notified Defendants WhaleCo, Inc. ("WhaleCo") and PDD Holdings Inc. ("PDD") (collectively, "Defendants" or "Temu") of *thousands* of infringing product listings. Wei Decl. ¶ 23. But many of those listings persist because Temu has either ignored, relisted, or unduly delayed acting on those notices, to maximize sales of products similar to those sold by Shein. *See id.* ¶¶ 25-36. Pervasive infringement detailed here and in the pending motion for preliminary injunction (Dkt. #24, 53-1) is causing Roadget irreparable harm, and warrants immediate injunctive relief.

## II.     BACKGROUND

### A.   Defendants Actively Infringed Shein's IP to Divert Consumers Away from Shein and Drive Sales to Temu's Ecommerce Site

Plaintiff owns numerous U.S. trademark and copyright registrations associated with SHEIN, one of the most popular online fashion and lifestyle retailers in the world. Chiao Decl. ¶ 5, 7. The registered trademarks include SHEIN and affiliate brands SHEIN CURVE, ROMWE, DAZY, EMERY ROSE, SHEGLAM, and LUVLETTE (the "SHEIN Marks"), to promote the sale of trendy, affordable apparel and goods offered to the U.S. market through the SHEIN website (https://us.shein.com) and mobile app (collectively, the "SHEIN Website"). Wei Decl. ¶¶ 4-9, 11. SHEIN clothing and accessories include the copyrighted designs and images identified in the SAC. *Id.* ¶ 14.

PDD, directly or indirectly through WhaleCo, owns and operates Temu, which Defendants misleadingly hold out as an online marketplace that sells inexpensive clothing and household goods. Boyajian Decl. ¶¶ 2-5. Seller storefronts on Temu are first curated and vetted by Defendants. *Id.* ¶ 9, Ex. 7. Verified sellers on Defendants' sister Pinduoduo ecommerce site are automatically qualified to sell on Temu. *Id.* ¶ 11, Ex. 9. Pinduoduo sellers, in turn, are notorious infringers. The U.S. Trade Representative ("USTR") has for the past 5 years blacklisted Pinduoduo due its "unresponsiveness" and "ineffectiveness" in addressing "large volumes of counterfeit goods" on the site, which has become "exacerbated" due to "delays in takedowns, lack of transparency with penalty mechanisms and decisions rejecting takedown requests," and other systemic issues. *Id.* ¶ 7, Ex. 5.

PDD runs the Temu platform as it does Pinduoduo, using a business model that encourages the sale of cheap counterfeit designs and infringement of well-known brands. An independent firm has verified evidence that certain products and sellers are the same for both platforms. *Id.* ¶ 10, Ex. 8.

Temu achieved rapid growth by targeting and impersonating its primary competitor Shein through listing products that are identical or similar to the products sold on the SHEIN Website, as evidenced by the thousands of listings that unlawfully reproduce Shein's copyrights, and using counterfeit SHEIN Marks on Temu webpages, listings, and products. Though previously unknown to most U.S. consumers,

Temu reportedly gained a 57% increase in downloads of its mobile app within the first 3 months of its launch in September 2022 (*Id.* Ex. 14) – when blatant violations of Shein's IP rights occurred on Temu's website and social media posts.[1]

Defendants actively engaged in the infringing conduct and cannot escape liability by claiming Temu merely facilitates the sales of third-party infringers. Unlike true marketplace platforms, Temu does much more than simply host uploaded product photos. Temu closely manages all sales and listings on its platform. Temu reviews the products and product images before they are uploaded and determines what product listings go live on the site. Boyajian Decl. ¶¶ 13-19 & Exs. 2, 10, 12, 13, 17. Temu's so-called "sellers have no pricing power" because Temu determines all pricing. *Id.* ¶ 20, Ex. 12. Temu even stores the inventory, ships products (in Temu packaging) to consumers, and handles all customer service. *Id.* ¶¶ 19, 21, 30 & Exs. 10, 13.  Temu pretends to be a marketplace like Amazon, but it sources products directly from manufacturers, as in a traditional supplier-distributor relationship. *Id.* ¶ 14, Ex. 11.

### B.  New Evidence of Ongoing IP Violations Since this Action Began

1.  <u>Rampant copyright infringement through wholesale copying of products from SHEIN</u>

More than 270 of Shein's copyrighted designs and images were unlawfully reproduced in numerous Temu product listings for the sale of competing products. SAC ¶¶ 84-117; Wei Decl. ¶¶ 14, 22 & Exs. D-E. While not all are specifically alleged in the SAC, Shein has identified *thousands* of infringing listings in notices sent to Temu's DMCA agent. Wei Decl. ¶ 23. Images of stylistically arranged and modeled apparel/accessories are identical to copyrighted images on the SHEIN website, suggesting the images were copied directly from Shein, or slightly altered from the original Shein images (but are still substantially similar to the copyrighted works). SAC ¶¶ 134-35; Wei Decl. ¶ 22, Ex. E.

---

[1] Plaintiff believes, and intends to prove through discovery, that Temu was able to obtain a significant market increase by misappropriating Shein's IP and highly confidential trade secrets (namely, Shein's vendor and supplier list, internal sales targets/projections, and daily gross merchandise values), which Temu used to develop a competing ecommerce site offering virtually the same products at Shein at similar or cheaper prices. SAC ¶¶ 198-213.

2. <u>Repeated failures to expeditiously remove infringing listings, maximizing unlawful sales</u>

Temu routinely ignores DMCA notices to continue generating sales from infringing listings. In many instances, Temu has either failed to take down or significantly delayed taking down listings by waiting weeks or months. Continued infringement occurred even after Temu represented that it took down the infringing material when it did not. Wei Decl. ¶¶ 25-42 & Exs. F-I. While Shein's investigation is ongoing, it is aware of at least 2 listings (with 2 infringing images) identified in a DMCA notice sent in November 2022 (and in subsequent pleadings) that continued to display infringing images as of July 4, 2023, *id.* ¶¶ 26-28; another 2 listings (with 11 infringing images) that were active for months after notice (despite prior confirmation by Temu of their removal), *id.* ¶¶ 29-33, 35, Ex. I at 5, 8-11; and 4 listings that merely replaced the initial infringing images with near identical images (i.e., 18 derivative works infringing 9 copyrighted product photos), *id.* ¶¶ 37-39, 42-43.

Temu also recommends listings that infringe Shein's copyrights, even with knowledge of infringing images identified in DMCA notices. For instance, after Temu had (belatedly) removed a product listing identified in a DMCA notice, a virtually identical image reappeared in multiple new listings – including by the same anonymous seller who posted the original listing. *See* Wei Decl. ¶ 42. Temu's website actively recommended the new infringing listings (by the same seller and others) to consumers on an old listing page even after the prior infringing material was taken down. *See id.* ¶ 43, Ex. I.

3. <u>False and misleading use of SHEIN Marks on Temu webpage titles to advertise products sold on Temu that are not genuine SHEIN-branded products</u>

Despite representing under oath that it no longer does this, *see* Declaration of Yao Wu (Dkt. #59-4) at ¶ 9, Temu continues to display counterfeit SHEIN marks in webpage titles advertising "Shein – Buy Shein Plus Size Dresses, Shein Clothing And Shein Bathing Suits Online With Free Shipping On Temu[.]" *See* Boyajian Decl. ¶¶ 58-63. Further, Temu's testimony that search result webpage titles simply auto-populate the title with terms queried by users is false. Here, it advertised "Shein Plus Size Dresses,

Shein Clothing and Shein Bathing Suits" on Temu, even though the search for "shein" did not include these other terms. This type of infringing use also occurs on Temu's mobile app which, for instance, displayed Shein's LUVLETTE mark to falsely advertise "luvlette bras on Temu" (*id.* ¶¶ 67-69):



4.  Counterfeit SHEIN Marks on product labels, product images, and actual product designs

Shein's ROMWE mark appears on counterfeit jacket designs displayed in the product listing, and in the listing title for "'Romwe Limited' Print":



Wei Decl. Ex. C (ROMWE registrations). The jacket design is a knockoff of a design sold on the SHEIN Website. Chiao Decl. ¶¶ 19-20. The counterfeit ROMWE mark was printed on a physical jacket purchased from and delivered by Temu. Boyajian Decl. ¶ 30. Temu continued to publicly display the listing and product images even after it deactivated sales for this item. *Id.* ¶¶ 28-29, 32.

In addition, Temu copies product images from the SHEIN Website containing the stylized SHEIN mark into its listings, but those listings are not for genuine SHEIN-branded goods, for example:



| Product Image on Temu | Actual Item from Temu |
|---|---|

*See* Wei Decl. Ex. A at 3 (Trademark Reg. No. 6,649,062, stylized SHEIN mark for clothing); Boyajian Decl. ¶ 35.

While the SHEIN Mark was not on tags of the physical items purchased from these listings, some products came with tags bearing a QR code that directs to the SHEIN Website. Boyajian Decl. ¶ 35 & Ex. 25. These illicit uses of the SHEIN Mark on clothing tags and product labels falsely suggest that the product and Temu are associated with Shein, and that Temu is selling genuine SHEIN-branded products.

5. <u>SHINE – the counterfeit SHEIN store on Temu</u>

Blatant infringement is exemplified by the SHINE storefront on Temu, which posts virtually identical images of products sold on the SHEIN Website and used a deliberate misspelling reflecting a common U.S. mispronunciation of SHEIN in a similar style designed to mimic the kerning (spacing) and font used with the genuine stylized SHEIN Mark:

| Genuine Stylized SHEIN Mark | Counterfeit SHINE |
|---|---|
| SHEIN | SHINE |

Product images displayed on the counterfeit SHINE webpage appear to have been copied directly from the SHEIN Website. Boyajian Decl. ¶¶ 45-47; Chiao Decl. ¶¶ 24-25, Ex. V.

6. <u>Infringing uses of SHEIN Marks in auto-completed search terms on Temu</u>

Temu further infringes Shein's trademarks by causing its product search tool to auto-complete search terms that incorporate the SHEIN Marks and recommend "shein" branded products, even when that term is not used in the user-generated query. For instance, the Temu search bar has generated

recommended queries for "#sheincute," a popular hashtag used to promote genuine SHEIN products on social media. Chiao Decl. ¶ 23. Temu's search tool recommended a user search for "new shei**ncute shirts**" when a user typed "new shei" into the search bar. Boyajian Decl. ¶ 83. Typing "shei" into the search bar prompted Temu to recommend "shei**n glasses**," while typing "shein" into the search bar caused Temu-generated recommendations for, among others, "shein **retail clothing,**" and most blatantly, "shein **icon grunge off shoulder ruched crop tee,**" an item sold on the SHEIN Website. *Id.* ¶¶ 84-85; Chiao Decl. ¶ 21. Temu clearly designed its search tool to suggest to consumers that SHEIN-branded products can be purchased from Temu, when in fact they cannot. Chiao Decl. ¶ 17. Temu also programmed its search tool to make similar recommendations based on the marks of other Shein brands like EMERY ROSE, ROMWE and DAZY. Boyajian Decl. ¶ 78-80 & Ex. 41.

## III.   CONTINUING IP VIOLATIONS WARRANT A TRO AGAINST TEMU

### A.  Legal Standard

"[T]he standards for a TRO and a preliminary injunction are functionally identical." *Illusions Too Reality v. City of Harvey*, No. 02 C 7272, 2003 WL 260335, at *4 (N.D. Ill. Feb. 4, 2003). To obtain injunctive relief, a plaintiff must establish "a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the relief" is denied. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). If these conditions are satisfied, the court must consider "any irreparable harm an injunction would cause the nonmoving party" and "any consequences to the public from denying or granting the injunction." *Id.* These factors are weighed on a sliding scale: "the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor." *Id.* A plaintiff "'need not show that it definitely will win the case,'" and can make a "'strong showing'" of likely success by demonstrating how it "'proposes to prove the key elements of its case.'" *Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*, 497 F. Supp. 3d 319, 327 (N.D. Ill. 2020) (Valderrama,

J.). The court may consider evidence that may be inadmissible at trial, such as hearsay. *See Dexia Credit Loc. v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010); *S.E.C. v. Cherif*, 933 F.2d 403, 412 n.8 (7th Cir. 1991).

### B. Plaintiff Is Likely to Succeed on the Merits of Its Claims for Trademark Infringement and False Designation of Origin

"To prevail on a Lanham Act claim, a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Here, there is no dispute that the registered SHEIN Marks are valid and protectable trademarks. 15 U.S.C. § 1115(a); Wei Decl. Ex. A (attaching U.S. trademark registrations). Further, as described in more detail below, each instance of Temu's use of the SHEIN Marks has created a likelihood of confusion.[2] Temu used counterfeit marks that are identical (or in one instance, substantially similar) to the SHEIN Marks to promote the same goods[3] copied from the SHEIN Website to sell on its competing site. Temu's infringements were directed at the U.S. fashion and lifestyle market (i.e., same area and manner of concurrent use).[4] The SHEIN marks are strong, as evidenced by the popularity of SHEIN's mobile app and social media following. *See* Chiao Decl. ¶ 7. It is also clear that Temu is *intentionally* trying to "palm off" products on its site as genuine SHEIN products, or falsely suggest an affiliation with Shein, by copying images and clothing designs from Shein and using counterfeit SHEIN Marks to promote infringing goods.[5] Moreover, because SHEIN is known for affordable fashion

---

[2] The Seventh Circuit has set forth seven factors to consider in determining whether a likelihood of confusion exists: "(1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the complainant's mark, (6) any evidence of actual confusion, and (7) the defendant's intent (or lack thereof) to palm off its product as that of another." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461-62 (7th Cir. 2000). No one factor is dispositive, and while courts may assign varying weight to each factor, the similarity of the marks and the defendant's intent are particularly important. *Id.* at 462.

[3] *Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2013 WL 2402922, at *5 (N.D. Ind. May 31, 2013) (identical products "clearly favors consumer confusion"); *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1033 (E.D. Wis. 2018) (likelihood of confusion is "self-evident" where the marks and products are identical or nearly so).

[4] This factor assesses whether a relationship exists "in use, promotion, distribution, or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 681 (7th Cir. 2001) (finding likelihood of confusion because the parties "sell and market their products and services through many of the same channels").

[5] This "refers to the intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else." *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997). Intent to confuse may be inferred in some cases where the senior mark has attained significant consumer recognition. *Cf. Sands, Taylor &*

and the goods offered on Temu are also inexpensive, the likelihood of confusion is greater because the "more widely accessible and inexpensive the products" are, it is "more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *CAE, Inc*., 267 F.3d at 683.

More specifically, the counterfeit SHEIN Marks shown on clothing tags in images displayed on Temu are identical to the stylized SHEIN mark, and are inherently confusing.[6] *See Microsoft Corp. v. Rechanik*, 249 Fed. App'x 476, 479 (7th Cir. 2007) (without analyzing each factor, finding "[t]he logos and labeling on [defendant's] counterfeit software closely resembled Microsoft's marks, so [defendant's] products were likely to confuse consumers) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("Where . . . one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."); *Gucci Am., Inc. v. Duty Free Apparel, Ltd*., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("the Court need not undertake a factor-by-factor analysis . . . because counterfeits, by their very nature, cause confusion").

Similarly, the ⬛SHINE mark uses the same or strikingly similar font as the stylized SHEIN mark, and is deliberately exploiting the SHEIN brand by using a word that misspells "Shein" and sounds identical to a common mispronunciation of "Shein." Chiao Decl. ¶ 10; *Autozone, Inc. v. Strick*, 543 F.3d 923, 930 (7th Cir. 2008) ("Oil Zone" and "Wash Zone" visually similar to "AutoZone" where the words were in the same font and similar style). "'[T]he test is not whether the public would confuse the *marks*, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier market is connected.'" *Id.* Here, the marks are not only similar, but are also used to market similar goods where the SHINE store

---

*Wood Co. v. Quaker Oats Co*., 978 F.2d 947, 963 (7th Cir. 1992) (noting "this is not a case where the senior user's trademark is so well-known that the" infringer's choice of an identical mark among infinite possibilities "itself supports an inference" of bad faith).

[6] A counterfeit mark is "a spurious mark which is identical with or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

displays products copied directly from the SHEIN Website.

The counterfeit ROMWE jacket is also certain to cause confusion among consumers where the ROMWE mark appears both in the product description (referring to a "Romwe Limited" jacket) and on the actual design. ROMWE, like SHEIN, is a distinctive mark,[7] and is well-known among consumers as a SHEIN-affiliated brand. Chiao Decl. ¶¶ 9-12.

Moreover, Temu's continued display of counterfeit SHEIN Marks on webpage titles advertising "Shein – Buy Shein Plus Size Dresses, Shein Clothing And Shein Bathing Suits Online With Free Shipping On Temu," is intentionally deceptive and likely to confuse consumers into falsely believing that SHEIN dresses, clothing, and bathing suits are sold on Temu, and that SHEIN is affiliated with Temu. *See Promatek*, 300 F.3d at 812 (holding that by placing the trademarked term in its metatags, defendant diverted consumers to its site, reaping the goodwill associated with plaintiff's mark); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 465 (7th Cir. 2000) (holding that the defendant's use of "Prozac" as a metatag on its site was "significant evidence of intent to confuse and mislead," and citing/quoting *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999) ("Using another's trademark in one's metatags is much like posting a sign with another's trademark in front of one's store")); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived"). Defendants' conduct is even more egregious because they claimed to have ceased doing so in opposing Plaintiff's motion for preliminary injunction, but while they appeared to have stopped this practice in April and May, as of June 20, 2023 they resumed the use of counterfeit SHEIN marks to falsely advertise "Buy Shein" for products that consumers can purchase (e.g., through the "Quick Look" checkout process) without discovering that they

---

[7] A mark is "inherently distinctive" if it is fanciful, arbitrary or suggestive. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69 (1992).

come from Temu's anonymous sellers, not Shein. Boyajian Decl. ¶¶ 51, 61-64 & Exs. 32. Even if purchasers were aware that the "Buy Shein" products were offered by Temu's purported sellers, the likelihood of confusion remains because Temu falsely affiliates its services and the platform itself with Shein. *See Holbrook*, 497 F. Supp. 3d at 331 (ruling the unauthorized use of plaintiff's exact mark on defendant's website would likely cause "at least 'initial interest confusion'").

Temu's display of SHEIN Marks in recommended search terms is no different, and is likely to confuse consumers by falsely associating SHEIN and affiliate brands with Temu, particularly because the search bar populates the counterfeit marks with terms for the types of products sold by Shein. *See Natural Thoughts, Inc. v. Performance Touch, LLC*, 2018 WL 2618315, at *4 (S.D. Cal. July 27, 2018) (finding defendant's website's use of plaintiff's mark as an auto-filled search term "could mislead a consumer" as to the product's source and the defendant's affiliation with plaintiff).

Accordingly, while discovery is ongoing and evidence of actual confusion has not yet been produced, *see Monster Energy Co. v. Jing*, 2015 WL 4081288, at *3 (N.D. Ill. July 6, 2015) ("[E]vidence of actual confusion is not required to prove *likelihood* of confusion, so this factor is neutral"), the balance of factors weighs heavily in favor of finding a likelihood of confusion.

## C. Plaintiff Is Likely to Succeed on the Merits of Its Claims for Copyright Infringement

Plaintiff owns copyright registrations that "constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c); Wei Decl. Ex. D. A side-by-side comparison of Shein's copyrighted works and the product images and product designs displayed on Temu show substantial similarity (if not virtual identicality) between the copyrighted works and the Temu product listings. *Id.* ¶ 22, Ex. E.[8] Infringement

---

[8] To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Copying may be inferred where the 'defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.'" *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). Substantial similarity is determined by a "side-by-side comparison of the works." *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007) (citing *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1 (7th Cir. 1994)). "[T]wo works are substantially similar if 'the ordinary observer, unless he set out to detect

of Shein's copyrights therefore cannot be reasonably disputed.

Temu is liable for the reproduction and public display of the infringing product images and designs on its website because it actively *reviewed* and *selected* the product images and listings prior to upload. Boyajian Decl. ¶¶ 12-17 & Exs. 2, 10-12. These facts prove Shein's likely success on its direct liability claim because Temu is "actively involved in the infringement." *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732, 736 (9th Cir. 2019) (holding conduct volitional where the third party "exercised control" or "selected any material for upload, download, transmission or storage," and affirming the jury finding that Zillow's moderation efforts proximately caused the copying).

Temu is also contributorily liable because it engaged in "conduct that encourage[d] or assist[ed] the infringement"[9] by providing the platform and software (e.g., the image editing tool) that enabled sellers to reproduce and post infringing listings on the Temu website. It also knew of infringing product images and designs based on the notices Shein sent to Temu, and continued to display and provide access to infringing works by failing to remove the infringing listings and/or significantly delaying takedowns. *See In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 651 (N.D. Ill. 2002) (holding that defendant materially contributed to online infringement by providing the "software and the support services necessary for individual Aimster users to connect with each other," and had actual knowledge of infringement based on notices), *aff'd on other grounds*, 334 F.3d 643 (7th Cir. 2003). Indeed, while Temu claims to "have a strict policy against the listing or sale of products that violates a third-party's trademark, copyright or patent rights," and "strive[s] to respond quickly by removing or disabling access to the allegedly infringing material" identified in a notice of infringement,[10] in practice it does the opposite. Many infringing listings

---

the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Wildlife Express*, 18 F.3d at 509.

[9] The Seventh Circuit defines contributory infringement as "personal conduct that encourages or assists the infringement." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012) (citing *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)).

[10] *See* Temu's Intellectual Property Policy, at https://www.temu.com/intellectual-property-policy.html.

identified in DMCA notices were ignored for weeks or even months before eventual deactivation. Wei Decl. ¶¶ 25-41. These facts demonstrate that Shein is likely to prove contributory infringement.[11]

Shein is also likely to succeed on its vicarious liability claims. Temu has the right and ability to supervise the infringing activity—it controls access to the marketplace, where sellers and product listings are vetted and curated by Temu before they are posted. Temu's IP policy says it can (and supposedly will) remove infringing material and terminate repeat infringers. Further, Temu has a direct financial interest in the infringing images/designs as evidenced by actual sales on the Temu Website, and they also serve as a "draw" for consumers who are lured to the Temu site based on the display of apparel and accessories that are virtually identical to the products sold by Shein. *See In re Aimster Copyright Litig.*, 252 F. Supp. 2d at 654-55; *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 825 (N.D. Ill. 2017) (direct financial interest based on sales without a license); Wei Decl. Ex. 4 (181 units of infringing products sold under listings displaying 4 asserted works).

### D. Plaintiff Has No Adequate Remedy at Law and Is Suffering Irreparable Harm

Wholesale infringement of Plaintiff's marks and extensive portfolio of copyrights is causing severe and irreparable harm. First, Temu is actively stealing the goodwill of the SHEIN marks, diluting their source-identifying value and likely causing massive consumer confusion that Shein is affiliated with Temu. This type of harm is both severe and difficult to quantify. *See Holbrook*, 497 F. Supp. 3d at 334 ("Courts consider consumer confusion and the loss of goodwill to be irreparable because of 'the difficulty of quantifying the likely effect on a brand.'"). For that reason, Congress expressly amended the Lanham Act in 2020 to grant plaintiffs "a rebuttable presumption of irreparable harm . . . upon a finding of

---

[11] *See, e.g., UMG Recordings, Inc. v. Grande Commc'ns Networks,* 384 F. Supp. 3d 743, 766-68 (W.D. Tex. 2019) (denying defendant's motion for summary judgment on the issue of contributory infringement where the defendant-service provider could have, but failed to take "one simple measure at its disposal—terminating the internet services of repeat infringers—to prevent further damages to copyrighted works" and instead continued to provide service to customers who it had identified as repeat infringers).

likelihood of success on the merits" for Lanham Act violations in the context of motions for preliminary injunctions. 15 U.S.C. § 1116(a). Here, without an injunction, Temu will continue to falsely trade on SHEIN's marks and goodwill to sell competing (and often inferior) goods.[12] Indeed, Temu has repeatedly infringed the SHEIN Marks even after Plaintiff sought a preliminary injunction based on imposter Twitter accounts and infringing sponsored ads in violation of Google's advertising policy. *See generally* Dkt. Nos. 24, 38.

Second, Temu is pirating Plaintiff's copyrighted works on a colossal scale. Shein has already specifically notified Temu's DMCA agent of hundreds of links, but the effort is futile because many have been ignored, relisted with slight alterations (but still substantially similar to the copyrighted work), or delayed, taking weeks to take down, if at all. Temu's failure to expeditiously remove infringing content, many still offered for sale, has caused and continues to cause irreparable harm to plaintiff. *See Antsy Labs, LLC v. Individuals*, No. 21 C 3289, 2022 WL 17176498, at *3 (N.D. Ill. Nov. 23, 2022) (screenshots showing defendants "continue to list infringing products for sale satisfies Plaintiffs' burden of showing a risk of irreparable harm sufficient to warrant injunctive relief"). Moreover, even when infringing listings are removed, the pirated works reappear in new listings on the site. Despite dedicating significant resources to policing violations of Plaintiff's rights on Temu's site, Shein's enforcement efforts are overrun by widespread infringement. Injunctive relief is warranted "to remedy the proverbial game of 'whack-a-mole,' whereby Plaintiff identifies a single infringing listing on [the] platform only to have another potentially infringing listing be posted on a merchant's same or other storefront without Plaintiff's knowledge." *Allstar Mktg. Grp. v. AFACAI*, 2020 WL 6781948, at *2 (S.D.N.Y. Nov. 18, 2020) (granting

---

[12] *See, e.g., Tempur-Pedic N. Am., LLC v. Mattress Firm., Inc.*, 2017 WL 2957912, at *11-12 (S.D. Tex. July 11, 2017) (enjoining defendant from using plaintiff's marks on its website "except for allowable comparative advertising"); *MasterCard Int'l Inc. v. Trehan*, 629 F. Supp. 2d 824, 833 (N.D. Ill. 2009) (enjoining the defendant from using plaintiff's marks in metatags and keywords); *Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942 (N.D. Ill. 2002) (preliminarily enjoining the defendant, the operator of websites that used the "King Velveeda" mark, from using VelVeeda, a variation of plaintiff's VELVEETA mark, on its websites, in domain names or in metatags).

preliminary injunction against online marketplace Wish.com); *see also Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-cv-907-J-39MCR, 2017 WL 2901695, at *2, 32 (M.D. Fla. Jan. 17, 2017).

### E. The Balance of Harms and Public Interest Favor Plaintiff

An injunction only requiring Temu to "refrain from engaging in . . . trademark infringement [and] false association," and ignoring and turning a blind eye to rampant copyright infringement, is no hardship to a company of Temu's size with its alleged marketplace model. *See 3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 197-98 (S.D.N.Y. 2020) (holding that such an injunction would "not be a 'hardship'" "given that Defendant sells products unrelated to [Plaintiff's] brand . . . and could continue doing so under a PI."). As this Court ruled in *Holbrook*: "the harm to Plaintiffs as a result of denying an injunction prohibiting Defendants from using misleading language or misusing trademarks [on their website] . . . outweighs the harm to Defendants in granting it. Without the injunction, Defendants could continue to confuse consumers about their affiliation with [Plaintiffs and their trademarks] . . . thereby acquiring goodwill that belongs to Plaintiffs." 497 F. Supp. 3d at 335. In contrast, an injunction "will not harm Defendants . . . as it merely prevents them from engaging in further unlawful behavior." *Id.*

Further, "[t]he public interest would similarly be served because the injunction prevents consumer confusion in the marketplace." *Id.* at 336.

Also, because Plaintiff is likely to prove that Temu's conduct is unlawful and infringing, Plaintiff should not be required to post a bond.[13]

Respectfully submitted,

---

[13] *See TracFone Wireless, Inc.* v. *Washington,* 978 F. Supp. 2d 1225 (M.D. Fla. 2013) ("Because the Court has determined that TracFone has a high probability of succeeding on the merits of its Lanham Act claims, and because Defendants have no legitimate interest in the continued use of the TracFone Trademarks, the Court will not require TracFone to post a bond"); *Country Inns & Suites By Carlson, Inc.* v. *3 AM, LLC,* No. 14-cv-3126, 2014 WL 5431621, *4 (D. Minn. Oct. 24, 2014) (waiving bond, in part due to "a high likelihood of success on the merits"); *Sylvan Learning, Inc. v. Learning Solutions, Inc.,* 795 F. Supp. 2d 1284 (S.D. Ala. 2011) (because plaintiff established a "high" likelihood of success on the merits, no bond was required); *Ohio State Univ.* v. *Thomas,* 738 F. Supp. 2d 743 (S.D. Ohio 2010) (plaintiff prevailed on each preliminary injunction factor, so it was not required to post a bond).

ROADGET BUSINESS PTE. LTD.

Dated: July 7, 2023

By: /s/ *Nina D. Boyajian*

GREENBERG TRAURIG, LLP
Nina D. Boyajian (*pro hac vice*)
boyajiann@gtlaw.com
David H. Marenberg (*pro hac vice*)
marenbergd@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel.: 310-586-7700
Fax: 310-586-7800

Barry R. Horwitz
Barry.Horwitz@gtlaw.com
Marc H. Trachtenberg
TrachtenbergM@gtlaw.com
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-456-8400
Facsimile: 312-456-8435

*Counsel for Plaintiff Roadget Business Pte. Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated: July 7, 2023

/s/ *Nina D. Boyajian*

16