# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROADGET BUSINESS PTE. LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**WHALECO, INC. et al.**<br><br>Defendants. | **CIVIL ACTION NO. 1:22-cv-07119**<br><br>Judge: Hon. Franklin U. Valderrama<br><br>Magistrate Judge: Hon. Jeffrey Cummings |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR CIVIL CONTEMPT

I.  **INTRODUCTION**

Plaintiff's motion for contempt of TRO is without merit and should be denied. There is no fact in Shein's opening motion—not even an allegation—that Temu has failed to follow any of the "unambiguous commands" of the Court's TRO. Not one. This is for a simple reason: Temu has taken serious and ongoing steps to comply with the TRO. On this basis alone, the Court can deny Shein's motion. Lacking any "unambiguous commands" for which Shein can concoct a purported violation, Shein instead contents itself, as it must, with more vague and obscure allegations, where the link between the "command" in the TRO and the alleged violative conduct at issue is, to put it bluntly, non-existent. Specifically, Shein bases its motion on six storefronts and a single product listing—each of which is operated by a third-party seller, not Temu, which only provides a digital portal for the third-party sellers to market their products to consumers. None of the third-party storefronts or products include any uses of the SHEIN mark. Tellingly, Shein's motion papers do not contain a single fact, not one, showing that Temu had any involvement whatsoever, of any kind in creating the third-party storefronts or product listing about which Shein now complains, nor could they. Indeed, if Shein were legitimately concerned about the marks and brands used by the third-party sellers, Shein would have communicated with those third parties directly about Shein's concerns, or, given that the Court put the burden on Shein to police the use of its marks, Shein would have given reasonable notice to Temu of any alleged infringement prior to racing to Court waving around a contempt motion. Shein's motion contains no indicia that Shein has done so (and indeed Shein had not), laying bare Shein's motivations to try to get this Court to penalize Temu for conduct involving irrelevant marks by third parties not before the Court.

At bottom, Shein's motion seeks to hold Temu legally responsible for third-party sellers who promote products that do not use the SHEIN marks but use names and logos that cannot be reasonably found to infringe Shein's rights. On this shaky foundation, Shein purports to ask the

1

Court to find Temu in contempt of Court—a serious finding reserved only for situations where a party fails to take diligent steps to abide by a court order and violates the order's "unambiguous command." The most eloquent and telling part of Shein's motion is the total absence of any attempt to identify a single "unambiguous command" of this Court that Temu has not followed. Shein cannot, and therefore does not. Instead, Shein's opening motion is filled with hazy allegations attempting to sweep within the ambit of the TRO a variety of third-party stores that share nothing with Shein or its marks other than an alphabetic letter, at most.

Shein's motion is silent on another important point that Shein apparently wants to keep from the Court: Shein and Temu are significant competitors in the online marketplace. Shein is attempting to use the guise of an intellectual property infringement lawsuit and its present contempt motion to mask what is, at its core, anti-competitive behavior and an attempt to hinder Temu's legitimate and lawful competition against Shein. Temu respectfully requests that the Court deny Shein's contempt motion. To the extent any fees or sanctions are awarded here, Temu respectfully suggests that Shein should be obligated to pay Temu's fees for responding to such a serious motion that has such a thin factual basis.

## II.  PROCEDURAL BACKGROUND

On July 31, 2023, the Court granted Shein's motion for an emergency temporary restraining order. Dkt. 97. In its July 31, 2023 ruling, the Court held that "it is Roadget's and not Temu's responsibility to police acts of infringement on Temu platforms." Dkt. 97 at 27. The Court emphasized that "nothing in this [TRO] order shifts this responsibility onto Temu." *Id.* The TRO went into effect on August 11, 2023. *See* Dkt. 110, 144. The TRO prohibited Temu from, among other things, "any and all uses of the trademarks (the 'SHEIN Marks')" and other unspecified marks that are "confusingly similar" to Shein's marks, including "any other names or

2

words (or combination of letters or words) consisting of or confusingly similar to the SHEIN Marks, including . . . spellings that are visually or phonetically similar." *See* Dkt. 110 at 3, ¶ 1(i).

On August 18, 2023, Shein filed a Motion for Civil Contempt arguing Temu was in violation of the TRO. Dkt. 124. Temu, for its part, filed a Motion to Amend the TRO based on unspecified language contained in the TRO regarding "confusingly similar" marks and an open-ended list of unspecified variations/misspellings of Shein's alleged marks that created uncertainty as to Temu's obligations under the TRO and the Court's holding that it is Shein's responsibility to police any acts of infringement on the Temu platform. Dkt. 148.

### III. THE COURT SHOULD DENY SHEIN'S MOTION GIVEN TEMU'S COMPLIANCE WITH THE TRO

#### A. Legal Standard for Contempt

The Seventh Circuit follows a four-step framework for civil contempt that requires a showing that: (1) there was an "unambiguous command"; (2) the party violated that command; (3) the violation was "significant"; and (4) the party failed to "reasonably and diligently comply" with the order. *Prima Tek II, L.L.C. v. Kierk's Plastic Indus.*, 525 F.3d 533, 542 (7th Cir. 2008). A party seeking an order of contempt must show the above enumerated steps through clear and convincing evidence. *Id.* "Civil contempt usually is not appropriate unless 'those who must obey' an order 'will know what the court intends to require and what it means to forbid.'" *Longshoremen v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 76, (1967).

Contempt is a "severe remedy that should not be resorted to" if there is any "**fair ground of doubt** as to the wrongfulness of the defendant's conduct." *Pressure Specialist, Inc. v. Next Gen. Mfg.*, 449 F. Supp. 3d 863, 868 (N.D. Ill. 2020) (emphasis added); *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) ("This standard reflects the fact that civil contempt is a 'severe

remedy,' and that principles of 'basic fairness requir[e] that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt.") (citations omitted).

### B. Shein's Allegations of Contempt

Shein claims that the TRO "enjoin[s] Temu from using the SHEIN Mark and 'any other names or words . . . consisting of or confusingly similar to the SHEIN Marks, including any misspellings of the SHEIN Marks,'" like "SHINE" and "SHEEN" and "'reproducing, publishing, distributing, importing, or publicly displaying any image, material, content, or design that is the same or substantially similar to the copyrighted works (the 'SHEIN Copyrights') identified in Appendix A of the TRO." Dkt. 125 at 9 (quoting Dkt. 110 at ¶1 (i), (viii)).

*First*, Shein claims Temu has violated provision 1(i) of the TRO through the maintenance of six "new" infringing storefronts "with names such as 'Shien Kitchenware', 'Shien Shoes', and more than one storefront including each of 'Shine' and 'Sheen' in the name." Dkt. 125 at 10. Shein argues the use of these store names is likely to cause confusion because Shein sells products in the same general product categories as these sellers. *Id*. As evidence, Shein claims that one of the stores sells a pajama similar to one offered by Shein. *Id*.

*Second*, Shein argues that Temu has violated provision 1(viii) of the TRO through displaying and advertising a single product listing for clothing that used one of Shein's copyrighted works. *Id*. According to Shein, Temu's alleged oversight of these seven instances demonstrates that Temu is "unwilling to take steps to reasonably and diligently comply with the TRO." *Id*. at 11.

### C. Shein's Allegations of Contempt Are Without Merit

Courts routinely deny motions for contempt of an injunction in cases where the enjoined party made good faith and reasonable efforts to comply with the court's order, as Temu did here. For example, in *Hillstone Restaurant Group Inc. v. Houston's Hot Chicken Inc.*, the court denied

4

plaintiff's motion for contempt where plaintiff claimed that defendants violated the TRO by continuing to use HOUSTON'S HOT CHICKEN and related design marks on social media pages, signage, and displays. No. CV-22-02004-PHX-MTL, 2023 U.S. Dist. LEXIS 1956, at *21 (D. Ariz. Jan. 4, 2023). The court assessed defendants' evidence of compliance, including evidence that they had replaced all of the noncompliant signage in each of their restaurants to remove the prohibited marks, changed the names of each of their entities, provided notices of the changes to at least some of their franchisees, and deleted thousands of social media posts to remove the prohibited content. *Id*. at *22-23. The court found that defendants demonstrated "a sincere, reasonable effort to come into full compliance with the Agreement and TRO" and denied the motion for contempt. *Id*. at *23.

Just so here. Temu has made significant good faith efforts to substantially comply with the TRO. This substantial compliance is not vitiated by the alleged violations Shein claims even assuming arguendo that they amounted to violations (they do not). *See also Degla Grp. for Invs., Inc. v. Boconcept USA, Inc*., No. CV 09-05278 MMM (AGRx), 2010 U.S. Dist. LEXIS 152099 (C.D. Cal. Sep. 30, 2010) (citing *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982)) ("'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply."); *Conopco, Inc. v. 3DO Co.*, No. 99 cv 10893 (JSM), 1999 U.S. Dist. LEXIS 20510 (S.D.N.Y. Dec. 7, 1999) (finding defendant not in contempt of TRO prohibiting broadcast of an infringing commercial where defendant made reasonable efforts to cancel the commercial and had no control over third-party Nintendo who independently aired commercials; "[i]nability to stop every airing was not contempt").

5

Out of all the provisions of the TRO, Shein only complains that Temu should be held in contempt for two provisions that Temu allegedly violated with six "confusingly similar" storefront names and one new product listing. *See* Dkt. 125 at 4-7. Shein does not complain of any other violations because it cannot. In other words, Shein implicitly admits that Temu is in active and ongoing compliance with all of the other aspects of the TRO.

Temu addresses its ongoing compliance efforts and each allegedly infringing instance in turn.

1. **Temu Has Reasonably and Diligently Complied with the TRO**

Shein has the burden to come forward with clear and convincing evidence that Temu has failed to reasonably and diligently comply with the unambiguous commands of the TRO. Shein flunks this requirement.

In fact, Temu has taken extensive and diligent steps to comply with the TRO in good faith. Prior to the TRO issuing, Temu removed all of the storefronts and products claimed to be infringing or "counterfeit" in Shein's injunction motion papers. Declaration of Yao Wu ("Wu Decl.") at ¶ 9. Since the TRO issued, Temu has received additional takedown notices from Shein and has been expeditiously reviewing and processing them. *Id.* at ¶ 10.

On August 11, 2023, the Court entered the TRO. Dkt. 110. As written, the TRO contains a requirement that Temu remove "any and all uses of the trademarks (the 'SHEIN Marks')" and other unspecified marks that are "confusingly similar" to Shein's marks, including "any other names or words (or combination of letters or words) consisting of or confusingly similar to the SHEIN Marks, including . . . spellings that are visually or phonetically similar." *See* Dkt. 110 at 3, ¶1 (i). The TRO extended this indefinite prohibition to product listings (*see id.*, at ¶1 (ii)), advertisements (*see id.*, at ¶1 (iii), (vii), and social media (*see id.*, at ¶1 (iv)).

Temu installed a company-wide process and undertook significant burden and expense to

6

comply with the Court's Order. Wu Decl. at ¶ 8. Temu blocked "Shein," "Romwe," "Sheglam," "Luvlette," "Dazy," and "Emery Rose," as well as misspellings of these marks it identified in good faith, from being automatically suggested on its website through the search bar. *Id.* at ¶ 11. Temu blocked the following words from appearing in the product listings/description and advertising: Shein, Shien, Sheiin, Sheain, Sheen, She Glam, Sheglam, Romwe, Dazy, Emery Rose, and Luvlette. *Id.* at ¶ 13. Temu added "Shein" (and a list of misspellings that it attempted to generate in good faith), "Sheglam," "Luvlette," "Shein Curve," "Dazy," "Romwe," and "Emery Rose" to a list of negative keywords to prevent them from appearing in Google and Bing search ads relating to Temu. *Id.* at ¶ 23.

Pending resolution of Temu's Motion to Amend the TRO, Temu has removed the six stores raised in Shein's Motion for Contempt (although it believes those stores are not infringing and do not fall within the scope of the TRO). Wu Decl. at ¶ 19. Until and unless the TRO is amended, Temu will block from its platform the stores with these terms in the name: Shein, Shien, Shine, Sheiin, Shein Curve, Sheain, Sheen, She Glam, Sheglam, Romwe, Dazy, Emery Rose, and Luvlette. *Id.* But as detailed in the Motion to Amend the TRO, Temu in good faith did not initially believe that a store like, for example, "Shine Girl" (with a distinct logo) is or should be within the TRO's scope. *Id.*

Moreover, as detailed in the Motion to Amend the TRO, Temu requests further Court guidance on the precise list of terms and misspellings within the TRO's scope. Indeed, as Jessie Stricchiola, a leading search engine optimization expert and author *The Art of SEO: Mastering Search Engine Optimization* (O'Reilly, 1st ed. 2009, 2d ed. 2012, 3d ed. 2015) opines, "given the nature of web technologies and user behaviors, the language in the TRO is overly broad for its intended purpose and, as written, makes it extremely difficult (if not impossible) for the

7

Defendants to be in compliance with a high degree of accuracy." Declaration of Jessie Stricchiola ("Stricchiola Decl.") at ¶ 22. Jonathan Hochman, a leading internet marketing expert, concurs: "For clear implementation of the TRO, it is necessary to have a closed form list of search terms that can be programmatically blocked." Declaration of Jonathan Hochman ("Hochman Decl.") at ¶ 7.

Temu has also taken steps to fully comply with aspects of the TRO that require Temu to remove images of certain clothing products. Wu Decl. at ¶ 20. Specifically, the TRO covers over 35 asserted copyrights, which comprise images of various clothing products (the "Asserted Copyright Images"), with some alleged copyrights containing multiple images. *Id.* Temu's software cannot always identify identical or similar images with 100% accuracy. *Id.* Thus, as an additional measure aimed at proactively identifying and taking down content with the Asserted Copyright Images, Temu posted a prominent announcement on its seller portal, which reaches all of Temu's merchants, to not include anywhere on the store front, listings, or other store materials any of the Asserted Copyright Images. *Id.* at ¶ 21. Further, although, as detailed above, Temu had already included these terms for automatic removal from store names, listings, product designs, and/or other content on the platform, it has also posted on the seller portal that sellers may not use or display any of the following terms until further notice: Shein, Shien, Sheiin, Sheain, Sheen, She Glam, Sheglam, Romwe, Dazy, Emery Rose, and Luvlette. *Id.* at ¶ 22.

Shein fails to satisfy a required element of contempt with clear and convincing evidence, *i.e.*, that Temu failed to reasonably and diligently comply with the TRO. Like in *Hillstone*, the Court can reject Shein's motion on this basis alone. And the complained-of instances, as detailed below, fall short of showing any disobedience of a clear Court order.

8

## 2. The Six Storefronts Are Neither New Nor Confusingly Similar

An additional independent basis exists to deny Shein's motion: Shein has failed to meet its burden to show that Temu has violated an unambiguous command. Thus, Shein flunks yet another requirement of the contempt test.

Shein claims that Temu is in violation of the TRO in part because of the alleged "new" instances of six storefronts whose store names feature misspellings prohibited by the TRO. Dkt. 125 at 4. These storefronts are not "new," and their store names do not violate the TRO. Thus, not only is there no "unambiguous command," there is no violation. As detailed in Temu's Motion to Amend the TRO, none of the stores use the mark SHEIN or any logo designs allegedly similar to Shein's logo (shown below):

**SHEIN**

Rather, they use common English words, like "SHINE" or "SHEEN," or pinyin translations of Chinese words unrelated to Shein or its alleged intellectual property. The six identified storefronts and their logos are listed below:

1. SHINE GIRL with the following logo design, which bears no resemblance to Shein's logo above:



2. Shienkitchenware selling kitchenware items with the following distinct logo, which also bears no resemblance to Shein's logo above:

9



3. Shien Shoes with the below distinct logo, which bears no resemblance to Shein's logo above. Shien Shoes is not a play on the name SHEIN but a translation of the company's Chinese business name 诗恩鞋.



4. SHINE & SHEEN is a store that sells nail products under the below distinct logo. Neither the products, nor the logo, are similar to Shein's mark.

Shine
&
Sheen

5. SHINE SHINE sells bathroom accessories and uses the below distinct logo. The logo also bears no resemblance to Shein.

10



6. SHEEN, whose name is based on the common English term "sheen" and whose distinct logo below also bears no resemblance to Shein's logo:



In sum, the connection between the marks reflected above and Shein's alleged marks is not only vague and ambiguous, it comes nowhere near reflecting a violation of an "unambiguous command" of the TRO. It reflects nothing more than Shein's own subjective view. In Shein's apparent view, Temu can be held to the legal penalty of contempt if Temu fails to read Shein's mind about which of thousands of products on the Temu website might run afoul of Shein's subjective and liberal interpretation of what is a "confusingly similar" variation of the asserted marks under the TRO. And, as Ms. Stricchiola notes, "[b]ased on the six storefront examples provided by the Plaintiff, it appears there is also a need for a determination as to whether the words in storefront names, such as 'SHEEN' and 'Shine Girl' (which contain real English language words, not misspellings of SHEIN) are legitimate exclusions based on the Court's criteria set forth in the TRO language. This presents another issue of ambiguity in the keyword set." Stricchiola Decl. at ¶ 21.

11

While reserving all rights, Temu contacted the six sellers requesting that they change their storefront names in light of Shein's trademark claims and the TRO. Dkt. 149 at ¶ 6. Temu did so out of an abundance of caution only and not because Temu believed that Shein had raised valid or legitimate issues of concern about compliance with the TRO or intellectual property law generally. Tellingly, every one of these sellers denied any infringement and insisted on their right to keep their current name. As also detailed in Temu's pending Motion to Amend the TRO (Dkt. 148), these six storefronts have been on the Temu platform for months without any concern or complaint from Shein or anyone else. Dkt. 149 at ¶ 5.

Shein's motion implies that no adjudication or showing of likelihood of confusion is needed for the Court to shut down independent third-party stores under such distinct names and logos. In effect, Shein claims the right to stop the use of any word it arbitrarily deems to be a "confusingly similar" "misspelling" of SHEIN and will apparently run into Court any time Shein identifies any such words waving around allegations of contempt. But as the Court's analysis of the previous SHINE store confirms[1], that alone hardly suffices—to find infringement, the Court considered the words, fonts, colors, use of Shein's photos, similarity of product listings, and claims of Temu's involvement, and an alleged intent to confuse. Dkt. 97 at 8-18.

In opposing this motion, Temu has closely examined each of these storefronts and their listings and reasonably believes that the storefront names are not confusingly similar to the SHEIN marks. Wu Decl. at ¶ 19. In addition to Shein's failure to come forward with clear and convincing evidence that the sellers' ***marks in their entirety*** (not just the ***words***) are confusingly similar to

---

[1] The third-party SHINE store the Court found infringing in the TRO was nothing like the above stores. It used SHINE in font/logo similar to Shein's mark and sold highly-similar products. The seller has since renamed it to "Meet the better self." Dkt. 79 at 12.

any of its asserted marks, Shein will not be able to provide evidence sufficient to tip the other likelihood-of-confusion factors in its favor such that a likelihood of confusion exists. Temu has also evaluated the six sellers' track record and determined that each is a well-regarded small and medium-sized enterprise ("SME") merchant. Dkt. 149 at ¶ 5. Temu vehemently disagrees that these storefronts constitute infringement of the SHEIN trademark. Without waiver of Temu's rights to claim that no infringement occurred, Temu has removed the six storefront names pending its Motion to Amend the TRO. Wu Decl., ¶ 19.

Moreover, claiming expansive rights over the use of words like SHINE and SHEEN is untenable under trademark law given the ubiquity of those words and their variations. A basic trademark search for SHINE quickly reveals over 500 results in the beauty space (Class 3) and over 300 results in clothing (Class 25). Dkt. 150 at ¶ 2. For SHEEN, there are 56 results in these two classes of goods. *Id*. at ¶ 3. Shein essentially claims the TRO gives it broad rights, but it is well-established that trademarks in a "crowded field" are instead "correspondingly weak and narrow." 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 11.85-.87 (4th ed. 2012); *see also Eastland Music Grp. LLC v. Lionsgate Ent. Inc.*, 707 F.3d 869, 871-72 (7th Cir. 2013). The TRO never conferred on Shein rights it does not have under the law. Nor did the TRO give Shein unlimited power to both prevent those businesses from using marks that have not been demonstrated to infringe the SHEIN trademark and simultaneously seek a finding of contempt and sanctions against Temu—a marketplace platform that never selected these names in the first place.

   **3. The Single Product Listing Is Not a "Continuing" Violation of the TRO**

Shein also points to a single product listing that it claims "continues" to infringe its copyrights. Dkt. 125 at 6-7. This is not accurate.

Shein previously provided a takedown request for the following listing for the "Striped Print Color Block Cami Top Sexy Sleeveless Button Front V Neck Summer Vest":



In response, Temu took down this listing on July 11, 2023. Ji Decl. at ¶ 5.

Now, Shein runs into Court, claiming contempt, because a *different* seller, with a *different* Goods ID, using a *different* URL, posted a similar image on Temu's website, as set out below:



Ji Decl. at ¶ 6. The Goods IDs clearly distinguish this product listing from the product listing that Shein raised and Temu removed in July. *Id*. at ¶ 7.

Notably, prior to running into Court crying contempt about the latest posting, Shein did not at any time provide any request to Temu to take down the above-referenced image, about which it now asks the Court to hold Temu in contempt. Ji Decl. at ¶ 8. That said, once Temu learned of this new product listing (Goods ID 601099512240009), it took it down on August 19, 2023. *Id*. at ¶ 9. There is no "continued" infringement, and Temu acted promptly to take the listing down, again signifying Temu's good faith effort to comply with the TRO.

This kind of ambush tactic is not only unjust and unfair to Temu, it was expressly rejected by the Court, which put the burden of policing Temu's site for any infringement upon **Shein**, not Temu. *See* Dkt. 97 at 27 ("it is Roadget's and not Temu's responsibility to police acts of

14

infringement on Temu platforms . . . nothing in this [TRO] order shifts this responsibility onto Temu.").

Temu is doing the best it can to comply with the TRO. Even though the obligation for policing the images and names rests with Shein, Temu has gone above and beyond its obligations by taking its own independent steps to try to catch what it can. Nevertheless, the current technology cannot always identify identical or similar images with 100% accuracy. Wu Decl., ¶ 20; Ji Decl. at ¶ 14. The removal and monitoring of potentially infringing images is a common occurrence in today's internet and particularly on content platforms like Temu. Hochman Decl. at ¶ 9. Neither Temu nor its experts are aware of any software that would identify and monitor infringing content with 100% accuracy. *Id.* at ¶ 9; Stricchiola Decl. at ¶¶ 18-19.[2]

---

[2] Although not raised in Shein's motion for contempt, on August 28, 2023, Temu's counsel received an email from Shein's counsel asserting unidentified and unspecified "additional instances of violations of the TRO" in 1,793 pages of documents recently produced by Shein. Ex. A to Declaration of Anna Naydonov ("Naydonov Decl."). Shein's counsel stated that Shein intended to bring these alleged violations to Court's attention in its reply brief in support of the contempt motion. Naydonov Decl., ¶ 2. Raising new issues on reply is improper, and Shein should not be allowed to do so. Regardless, in those specific pages, Temu identified 60 Goods IDs posted by third-party sellers. Ji Decl., ¶ 11. Of those 60 Goods IDs with Asserted Copyrights, 56 had already been removed from the platform *before* Temu received the notification from Shein's counsel as a result of Temu's proactive efforts to comply with the TRO. *Id.* at ¶ 12. Regarding the remaining four Goods IDs, they were taken down on August 29, 2023. *Id.* Far from showing Temu is in contempt of the TRO, these documents instead highlight the lengths Temu has gone to comply with the TRO. To the extent that four out of 60 Goods IDs were not flagged by Temu's software and other proactive efforts to comply with the TRO, that is not surprising. As explained by Mr. Hochman, no security measure is perfect. Indeed, as Mr. Hochman notes, "from time-to-time, sellers on the Temu.com platform may upload infringing images, and although Temu.com proactively and reactively monitors and removes known unwanted content as fast as possible, some unwanted and known content can appear. I am not aware of any software that can detect and block known, unwanted content with 100% accuracy. In the ecommerce industry, common practice is for platforms (such as Temu.com) to diligently moderate the content on their platforms, though some failure rate is inevitable." Hochman Decl. at ¶ 9. And Temu immediately took down the four remaining Goods IDs as soon as it was notified. Ji Decl. at ¶ 12.

15

Even if any of the above instances are considered violations, which they are not, these instances do not evidence substantial disobedience or disregard of the Court or its orders. *See Prima Tek*, 525 F.3d at 542 (finding the violation was not significant where the allegedly violating transactions where less than 1% of total sales); *Clemons v. Trs. Of Ind. Univ. Jane Doe*, No. 1:19-cv-04668, 2020 U.S. Dist. LEXIS 74300, at *5 (S.D. Ind. Apr. 28, 2020).

IV. **CONCLUSION**

For the above stated reasons, Temu respectfully requests that the Court deny Shein's motion.

Dated: September 1, 2023

    Respectfully submitted,

By: */s/ Matthew R. Devine*
Matthew R. Devine (Illinois Bar No. 6282744)
Michael Andolina (Illinois Bar No. 6269334)
Thomas M. Cull (Illinois Bar No. 6331606)
White & Case LLP
111 S. Wacker Dr.
Suite 5100
Chicago, IL 60606
(773) 330-9427
Matthew.Devine@whitecase.com
Mandolina@whitecase.com
Thomas.Cull@whitecase.com

Anna Naydonov
Rosie Norwood-Kelly
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202)-626-3600
Anna.Naydonov@whitecase.com
Rosie.Norwood-Kelly@whitecase.com

Steven P. Mandell (#6183729)
Brian D. Saucier (#6226006)
MANDELL MENKES LLC

16

333 W. Wacker Dr., Suite 450
Chicago, Illinois 60606
Telephone: (312) 251-1000
Email: smandell@mandellmenkes.com
Email: bsaucier@mandellmenkes.com

Victor H. Jih (admitted *pro hac vice*)
Lisa D. Zang (admitted *pro hac vice)*
Russell L. Kostelak (admitted *pro hac vice*)
Ryan Benyamin (admitted *pro hac vice*)
Kelly H. Yin (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1900 Avenue of the Stars, 28th Floor
Los Angeles, California 90067
Telephone: (323) 210-2999
Email: vjih@wsgr.com
Email: lzang@wsgr.com
Email: rkostelak@wsgr.com
Email: rbenyamin@wsgr.com
Email: kyin@wsgr.com


Qifan Huang (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Email: qhuang@wsgr.com

*Counsel for Defendant Whaleco, Inc.*

17

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a copy of the foregoing document has been served on September 1, 2023 via the Court's CM/ECF system on all counsels of record who have consented to electronic service.

<i>/s/ Matthew Devine</i><br>Matthew Devine